9 0 9 2 3 1 2 3 . 0 0

19TH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

| | | |
|---|---|---|
| ALVIN C. COPELAND | * | DOCKET NO. 464607 |
| VERSUS | * | DIVISION " " D |
| TREASURE CHEST CASINO, L.L.C., and ROBERT J. GUIDRY | * | JURY TRIAL REQUESTED |
| | * | |

FILED: ____________________ ____________________

DEPUTY CLERK

**Petition for Damages**

**NOW INTO COURT**, through undersigned counsel, comes plaintiff Alvin C. Copeland ("Copeland"), who respectfully represents the following:

**The Parties**

1.

Plaintiff Copeland, successor to American International Gaming Association, Inc. ("AIGA"), is a competent major and a resident of the Parish of Jefferson, State of Louisiana.

2.

At all pertinent times, AIGA was a Louisiana corporation with its principal place of business located in the Parish of Jefferson, State of Louisiana; Copeland was the sole shareholder of AIGA, and its net assets were transferred to him upon its dissolution. As detailed below, AIGA was an applicant seeking authorization to conduct gaming activities on a riverboat in accordance with the Louisiana Riverboat Economic Development and Gaming Control Act (hereinafter the "Act"), LSA-R.S. 4:501, *et seq.*

3.

Made defendants are Treasure Chest Casino, L.L.C. ("Treasure Chest"), a Louisiana limited liability company formed on August 27, 1993 that is registered to do and doing business in the State of Louisiana; and Robert J. Guidry ("Guidry"), a person of the full age of majority and a resident of Jefferson Parish, State of Louisiana. Defendant Robert J. Guidry was an original member and manager of Treasure Chest, along with Dick J. Guidry. Upon information and belief, Robert Guidry was also the President of Treasure Chest and/or Treasure Chest Casino, Inc. All of the below-referenced acts by Robert Guidry were

undertaken in the course and scope of his position with Treasure Chest and/or Treasure Chest Casino, Inc., which gave him the actual and apparent authority to perform them; Robert Guidry's actions were also done in furtherance of these companies' business activities.

**Venue**

4.

As detailed below, the events and/or omissions giving rise to this action occurred in substantial part in this judicial district, and accordingly venue properly resides in this Court pursuant to La. Code Civ. Proc. arts 42, 73, and/or 74.

**Allegations Common to All Counts**

5.

As detailed below, on information and belief derived from (1) the factual basis of Robert Guidry's guilty plea in criminal case number 3:98cr00144-0, United States District Court for the Middle District of Louisiana (hereinafter "Guidry's guilty plea"), (2) the Superseding Indictment against Edwin Edwards, Stephen Edwards, Cecil Brown, Andrew Martin, Bobby Johnson, Gregory Tarver, and Ecotry Fuller in criminal case number 98-165, United States District Court for the Middle District of Louisiana, Section B-2 (hereinafter the "Edwards Indictment"), and (3) the Bill of Information for Conspiracy to Commit Extortion charged against Richard D. Shetler in criminal case number 98-142-A-M3, United States District Court for the Middle District of Louisiana (hereinafter the "Shetler Bill"), Copeland avers that there existed a scheme to corrupt the entire process for issuing riverboat gaming licenses under the Act (the "overarching corrupt conspiracy"). As detailed below, Treasure Chest and Robert Guidry joined, participated in, and engaged in overt acts in furtherance of the overarching corrupt conspiracy.

**The Guidry Scheme**

6.

During its existence from 1992 through early 1996, the Louisiana Riverboat Gaming Commission (the "Commission") was composed of seven members, all of whom were appointed by Edwin W. Edwards while he was the Governor of the State of Louisiana. The

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 2 of 221

Act enabled the Gaming Commission to issue rules providing for and determining certain enumerated matters pertaining to riverboat gaming activities.

, 7.

The Act did not give the Commission the authority to grant riverboat gaming licenses. Rather, the Act gave that power to the Riverboat Gaming Enforcement Division of the Gaming Enforcement section of the office of State Police, Public Safety Services, Department of Public Safety and Corrections (the "Division"). Under the Act, the Division was granted the exclusive authority to "Issue, deny, condition, or restrict licenses and permits" to conduct riverboat gaming activities ("licenses"). LSA-R.S. 4:518(2). The Division was authorized to issue no more than 15 licenses. LSA-R.S. 4:525. Pursuant to this authority, the Division was empowered to conduct investigations and hearings, from which it alone was to determine the suitability of the applicant to be awarded a riverboat gaming license.

8.

Although the Act gave the Division the sole power to issue licenses, the Commission nevertheless issued a set of rules providing for the issuance of Certificates of Preliminary Approval ("certificates") by vote of its members. These certificates purportedly demonstrated that the holders thereof were acceptable to the Commission and therefore should be candidates for actual licensure.

9.

On December 11, 1992, AIGA submitted its application to the Commission for a certificate, and submitted a second application form on February 22, 1993 containing supplemental information. The AIGA application proposed a riverboat route and related operations at the Kenner Laketown Harbor Park on the shores of Lake Pontchartrain. In conjunction with its application, AIGA submitted a check in the amount of $30,000.00, comprised of a $25,000.00 application fee and a $5,000.00 evaluation fee. On February 14, 1993, AIGA submitted to the Division the filing fee of $50,000.00 required to fund the Division's background investigation of applicants for a license. The AIGA application was the first submitted to the Commission that proposed to conduct riverboat gaming in Kenner, Louisiana, and was among the first submitted to the Division for approval.

10.

In connection with its application, AIGA retained a sophisticated group of gaming professionals, with extensive prior experience in casino operations in New Jersey and Nevada, both to coordinate activities necessary to obtain a certificate and license and to manage its proposed riverboat gaming operation. Plaintiff incurred approximately $2.2 million in expenses in preparing and processing AIGA's application for a license. Had plaintiff been aware of Guidry and the Treasure Chest's participation in the overarching corrupt conspiracy, plaintiff would not have incurred the expenses associated with the AIGA application.

11.

On or about February 9, 1993, Guidry formed Treasure Chest Casino, Incorporated (hereinafter "Treasure Chest, Inc."). Upon information and belief, Robert J. Guidry was the President and/or Chairman of the Board of Treasure Chest, Inc.

12.

On information and belief derived from the Edwards Indictment, on February 9, 1993 Guidry also paid Stephen Edwards $25,000.00 for legal services relating to the preparation of the Treasure Chest license application. Further, on information and belief, as the New Orleans Times-Picayune reported on December 5, 1994, "A Guidry-owned video poker company has paid Stephen Edwards $20,000," and "Treasure Chest paid $9,000 to a merchandising company of which Stephen Edwards was a director until he sold his interest in a settlement with the Ethics Commission, which was investigating whether the Governor's children could do business with riverboats." On information and belief, as the New Orleans Times-Picayune reported on December 9, 1997, "In all, Guidry paid Stephen Edwards $75,000 for his work in Guidry's various companies."

13.

Treasure Chest, Inc. submitted its application to the Commission on March 8, 1993, approximately three months after the AIGA application was submitted. The Treasure Chest, Inc. application proposed to locate its gaming riverboat at Kenner's Laketown Harbor Park. On March 26, 1993, the Gaming Commission held a public hearing in Baton Rouge, La. on the Treasure Chest, Inc. application to operate a gaming riverboat; this hearing occurred fewer

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 4 of 221

than three weeks after Treasure Chest, Inc. filed its application, thereby granting priority to the Treasure Chest, Inc. application over the application filed substantially earlier by AIGA. Treasure Chest, Inc. later filed a modification to its application for a certificate, which proposed re-locating the Treasure Chest, Inc.'s gaming riverboat from the Laketown Harbor Park site to Rivertown, U.S.A., on the banks of the Mississippi River in Kenner.

14.

On June 4, 1993, a public hearing was held in Baton Rouge, La. at which AIGA made a presentation to the Commission on its application for a certificate.

15.

The Commission held another meeting in Baton Rouge, La. on June 18, 1993. By that date, it had approved eight applications for certificates, although none of these eight approved applications involved proposals to locate a gaming riverboat in Kenner. At this meeting, the Chairman of the Commission stated that he had "been asked by the Governor to make one comment on his behalf, and that is that the City of Kenner has expressed that it really desires only one boat and that boat to be located on the river." In addition, at this meeting, the Commission rescinded the resolution that it had adopted on June 4th, which had stated that "a change of waterway" would be "more than a modification and requires a new application." The Commission then adopted a motion "that would allow subsequent changes to applications or status of those applications leaving basically ... discretion as to whether new or not at the discretion of the Chairman with the consent of the Commission." The Commission then voted on eight applications for certificates and approved seven of them; the Treasure Chest, Inc. application for a certificate for its Rivertown location was one of the applications that was approved. As a result, AIGA's application to operate a gaming riverboat at the Laketown Harbor Park site on the shores of Lake Pontchartrain was never considered or voted on by the Commission.

16.

On information and belief, as the New Orleans Times-Picayune reported on June 5, 1998, Governor Edwards "did more than appoint the members of Louisiana's Riverboat Gaming Commission. He also sent clear messages about which bidders he favored. For

example, Dr. Louis James, a former board member, has said he was called to the Governor's Mansion the day before the board was to award the last seven licenses in 1993. James has said Edwards gave him a typewritten list of about,a dozen casino boats, including three that involved friends of Edwards."

17.

As detailed above, Treasure Chest Casino, L.L.C. was formed on August 27, 1993. On or about August 30, 1993, Boyd Kenner, a wholly owned subsidiary of Boyd Gaming, a publicly traded corporation domiciled in Las Vegas, Nevada, entered into a casino management agreement with Treasure Chest. Under this agreement Boyd Kenner would be paid a management fee representing ten (10%) percent of the Treasure Chest's net operating profit. In addition, on or about August 30, 1993, Boyd Kenner, Boyd Gaming and Treasure Chest entered into a subscription agreement wherein Boyd Kenner agreed to advance to Treasure Chest $10 million cash upon the granting of a riverboat gaming license to Treasure Chest. The commitment to advance those funds was guaranteed by Boyd Gaming. Subsequently, Boyd Kenner acquired a fifteen (15%) percent interest in Treasure Chest in exchange for a cash payment of $15 million.

18.

On November 13, 1993, subsequent to the approval by the Commission of the Treasure Chest, Inc. application for its Rivertown location, Treasure Chest sought permission to modify the previously filed application to move the site of its proposed route and operations to Lake Pontchartrain. The Commission granted this request over AIGA's objections. Despite the fact that it had been Treasure Chest, Inc. that had applied for the Certificate of Preliminary Approval, the Commission issued a certificate to Treasure Chest Casino, L.L.C. on March 15, 1994.

19.

On information and belief derived from the factual basis of Robert Guidry's guilty plea and/or the Edwards Indictment, Andrew Martin ("Martin"), a close friend, confidant, and associate of then-governor Edwin Edwards, held the title of "Executive Assistant" to Edwin Edwards during Edwards' fourth term as Governor. Beginning no later than April, 1994,

Martin solicited bribes and extortion payments on behalf of Edwin Edwards, and further demanded and received from Guidry and/or Treasure Chest monthly net payments to himself, Edwin Edwards, and Stephen Edwards of approximately $30,000.00 each, in exchange for Martin's, Edwin Edwards', and Stephen Edwards' influence and assistance with the Treasure Chest licensing procedure.

20.

On information and belief derived both from the factual basis of Guidry's guilty plea and/or the Edwards Indictment, in or about April 1994, Robert Guidry, following a favorable decision regarding gaming suitability in connection with a video poker company Guidry owned, had conversations with Andrew Martin concerning the status of Guidry's efforts to obtain approval for his riverboat license from the LSP Gaming Division. At that time, Martin told Guidry that the Treasure Chest was not assured of getting LSP approval. Martin, however, stated that he could help Guidry with the licensing procedure pending before the LSP Gaming Division, but indicated by rubbing his fingers together that it would cost Guidry money for the assistance. Martin stated words to the effect that Governor Edwin Edwards owed him favors, and that he (Martin) would "cash in all my green stamps" to help Guidry. Martin further told Guidry that their assistance, to quote the Edwards indictment, "would cost Guidry 3% of gross revenue as per Louisiana statute, to be divided 1% each between Martin, Edwin Edwards, and Stephen Edwards."

21.

On information and belief, at the time Martin first contacted Guidry, the State Police had not set a date for the hearing on Treasure Chest's application, which was a prerequisite for obtaining a license.

22.

On information and belief derived both from the factual basis of Guidry's guilty plea and/or the Edwards Indictment, in or about April or May 1994, Robert Guidry had other conversations with Andrew Martin in which Martin revised his demand on Guidry. Martin, stating words to the effect that, "you only go around once, I gotta get what I can get," stated that he and Edwin Edwards would accept approximately $100,000 per month to be split

between Martin, Edwin Edwards, and Stephen Edwards, and that payments should begin after Edwin Edwards finished his term as Governor. Guidry agreed to this arrangement, provided that Edwin Edwards himself would confirm the deal with Guidry.

23.

On information and belief derived from the factual basis of Guidry's guilty plea and/or the Edwards Indictment, Guidry met with Martin and Edwin Edwards in a hotel meeting room. Guidry and Edwin Edwards had a conversation while Martin guarded the door. Edwin Edwards asked Guidry if he agreed with the deal proposed by Martin. When Guidry indicated he did, Edwin Edwards responded that they had a deal and assured Guidry that Guidry would get his licensing hearing.

24.

On information and belief, as the New Orleans Times-Picayune reported on December 9, 1997, "During Guidry's effort to license the Treasure Chest, Governor Edwards urged State Police to grant the proposal a licensing hearing, State Police sources have said, a critical step in the approval process."

25.

The State Police held a hearing into Treasure Chest's application in Baton Rouge, La. on May 17, 1994. At this hearing, the following exchange took place between Captain Mark Oxley of the Division and Robert Vosbein, counsel for Treasure Chest, who was under oath:

Capt. Oxley: And are you testifying that there are no elected public officials doing business with Treasure Chest?

Mr. Vosbein: That's correct.

This statement was made by Mr. Vosbein as agent for Treasure Chest and/or Guidry; on information and belief, it was based on information supplied to him by Treasure Chest and/or Guidry. Treasure Chest's representations, through its agent Mr. Vosbein, violated LSA-R.S. 27:70 C. in failing to disclose Treasure Chest's relationship with Edwin Edwards, which was prohibited by LSA-R.S. 27:96 A.

26.

At this same hearing, Captain Oxley and Lieutenant Colonel Kenneth Norris of the Division asked Robert Vosbein and Robert Guidry, both of whom were under oath, the following:

Capt. Oxley: Is or was anyone actually involved in the applicant's business operations in any position or manner who is not listed in the application, who has not since been disclosed and who should be disclosed now?

Mr. Guidry: Would you ask that question again please?

Mr. Vosbein: You're talking about this application?

Capt. Oxley: We're talking about Treasure Chest Casino.

Mr. Guidry: Would you ask it again, please?

Capt. Oxley: Yes, sir. Is or was anyone actually involved in the applicant's business operations in any position or manner and who is not listed in the application? Or has there been anyone not since disclosed that should be disclosed to the Division now?

Mr. Vosbein: There is no such person.

Mr. Guidry: I agree with that.

Capt. Oxley: Is there anyone involved in Treasure Chest Casino who could not fulfill the requirements for a finding of suitability to the best of your knowledge?

Mr. Guidry: No, sir, no one.

Mr. Vosbein: Not to the best of my knowledge.

Capt Oxley: To the best of your knowledge, is there any information or material fact that has not been furnished to State Police, that has not otherwise come to light that may yet be uncovered by the Division or others that may tend to cast doubt or reflect negatively on the qualifications of the applicant or anyone with an interest which you should bring forward at this point in time to the attention of the Division?

Mr. Guidry: No, sir, no one.

Mr. Vosbein: Not to my knowledge.

Capt. Oxley: Thank you.

Lt. Booth: Point of clarification, please, Captain. Your first question dealing with disclosures, was that as to persons or firms? I misunderstood the answer.

Capt. Oxley: That was anyone, I suppose you could say person or persons in a legal sense, or in any other sense. And you answered negatively. Correct?

Mr. Guidry: That's right.

Lt. Booth: No individual or entity. Is that correct?

Mr. Vosbein: That's correct.

Lt. Booth: Okay. Thank you.

Mr. Guidry's testimony, which failed to reveal his association with Edwin Edwards as set forth herein, was in violation of LSA-R.S. 27:70 C.

27.

In conjunction with his submittal of the Treasure Chest application for a license, Guidry executed an "Affidavit of Full Disclosure" on February 26, 1993, wherein Guidry averred, in pertinent part:

> ... except as reported in the Application, I have no agreements or understandings with any person or entity and no present intent to pay any sums of money or give anything of value as, including but without limitation, a finder's fee or commission to any person or entity related to the acquisition of any interest in the Application ...

Pursuant to LSA-R.S. 27:70 C., Guidry had a continuing duty to render a full and accurate disclosure of his association with Edwin Edwards as set forth herein. Upon information and belief, Guidry has never disclosed this association, and has therefore violated his duty under LSA-R.S. 27:70 C.

28.

On May 17, 1994, the Division granted a license to Treasure Chest. On information and belief, Treasure Chest would not have received a license but for the overarching corrupt conspiracy.

29.

Plaintiff avers that, but for the overarching corrupt conspiracy, AIGA would have obtained a license to conduct gaming activities on a riverboat pursuant to the Act, and was suitable to obtain such a license; AIGA, in fact, was granted a video gaming owner's license by the State of Louisiana in June 1994 and a gaming license by the State of Colorado in March 1995. Further, had AIGA known of the overarching corrupt conspiracy, it would not have expended the funds necessary to prepare and submit its application.

30.

On information and belief derived from the factual basis of Guidry's guilty plea and/or the Edwards Indictment, in or about December, 1995, Guidry contacted Andrew Martin regarding his problem with obtaining State Fire Marshal approval for his entertainment barge at the Treasure Chest site. Guidry thereafter met with Martin and, at that meeting, Martin told Guidry that he (Martin) could assist with obtaining Fire Marshal approval. In exchange for his help with approval, Martin demanded that he be given a 2% interest in the net profits of the Treasure Chest and a high ranking employment position with the Treasure Chest after leaving office as Edwin Edwards' Executive Assistant. These payments were in addition to the payments Guidry previously agreed to make to Martin, Edwin Edwards, and Stephen Edwards. Guidry agreed to this arrangement. Shortly thereafter, Guidry received Fire Marshal approval for the entertainment barge.

31.

On information and belief derived from the factual basis of Guidry's guilty plea and/or the Edwards Indictment, commencing in February 1996 and continuing through April, 1997, Guidry made monthly cash payments in the approximate amount of $100,000.00, to be split evenly among Edwin Edwards, Stephen Edwards, and Martin, as payment for their influence and assistance with the Treasure Chest licensing procedure before the LSP Gaming Division. From February 1996 through approximately October 1996, Guidry paid the full $100,000.00 to Martin. Thereafter, Guidry began paying the Edwardses their shares directly, and paid Martin his share separately, often by leaving the cash payments in trash cans or dumpsters for Martin to retrieve.

32.

On information and belief derived from the factual basis of Guidry's guilty plea and/or the Edwards Indictment, on or about November 6, 1996, Guidry cashed a check in the amount of $65,000.00. On the same day, during a telephone conversation recorded by the Federal Bureau of Investigation ("FBI"), Guidry and Edwin Edwards made plans to meet each other along with Stephen Edwards. At the meeting, Guidry delivered the cash to Edwin Edwards and Stephen Edwards as part of the payoff agreement.

33.

On information and belief derived from the factual basis of Guidry's guilty plea and/or the Edwards Indictment, on or about November 13, 1996, during a telephone conversation recorded by the FBI, Martin arranged a meeting between himself, Guidry, and Edwin Edwards to take place on the following Monday in Baton Rouge, in order to discuss the proposed arrangement which Martin sought to execute with Guidry regarding employment with the Treasure Chest and to discuss Martin's receipt of a 2% interest in the net profits from the Treasure Chest in exchange for his assistance with the Fire Marshal.

34.

On information and belief derived from the factual basis of Guidry's guilty plea and/or the Edwards Indictment, on or about November 19, 1996, during a telephone conversation, Edwin Edwards told Robert Guidry that Andrew Martin wanted to execute a "contract" to document Guidry's secret obligation to give Martin a 2% ownership in the Treasure Chest in exchange for Martin's assistance in obtaining Guidry's license.

35.

On information and belief derived from the factual basis of Guidry's guilty plea and/or the Edwards Indictment, on or about November 21, 1996, during a telephone conversation, Andrew Martin and Edwin Edwards discussed the arrangement which Martin wanted Robert Guidry to execute. Edwards informed Martin that Guidry had "kept his word" to all of them, referring to Guidry's agreement to pay them secretly. Edwards further warned Martin that they didn't want to push Guidry too hard and thereby anger him, giving him an excuse to change his mind, and according to Edwards, "risk what's happening," which was, to quote the

Edwards Indictment, "a reference to the payoff split in which Guidry was funneling casino proceeds to Edwin Edwards, Stephen Edwards, and Martin as part of their agreed payoff."

36.

On information and belief derived from the factual basis of Guidry's guilty plea and/or the Edwards Indictment, on or about January 9, 1997, Martin expressed to Edwin Edwards his understanding that Robert Guidry had agreed to give him a contract to "go to work for him" (referring to Guidry) after Edwin Edwards left office as Governor of Louisiana. Edwin Edwards made reference to the fact that " . . . if it wouldn't be for Andrew [Martin] he [Guidry] wouldn't have a boat . . .," referring to the Treasure Chest. Martin reminded Edwards that he [Martin] previously approached Edwards on Guidry's behalf for "all my green stamps from all that [sic] times I helped you [Edwards] in the past...." During the conversation, Martin told Edwards that his financial interest in obtaining the payments and 2% of the Treasure Chest from Guidry was his "retirement plan." Edwin Edwards went on to tell Martin that he knew Guidry paid Stephen Edwards $100,000.00 for Guidry's license, and further told Martin that even though Guidry had hired Stephen Edwards, they were "all . . . in the thing together." At that time, Edwin Edwards stated: " . . . it's not a question of whether you or Andrew or Stephen or me. This is something we worked out all for ourselves," referring to the licensing of the Treasure Chest and the receipt of cash from Guidry as payment for their assistance in helping Guidry obtain his license.

37.

On information and belief derived from the factual basis of Guidry's guilty plea and/or the Edwards Indictment, on or about April 8, 1997, Guidry cashed a check in the amount of $65,000.00. On the same day, during a recorded telephone conversation, Edwin Edwards and Stephen Edwards agreed to meet Guidry at the Highland Road Café in Baton Rouge, Louisiana. At the meeting, Guidry delivered the cash to Edwin Edwards and Stephen Edwards as part of their agreed payoff.

38.

On information and belief, the Treasure Chest's net operating profits have exceeded $100 million for calendar years 1996 and 1997.

39.

On or about October 27, 1997, Boyd Louisiana, L.L.C., a Nevada limited liability company ("Boyd Louisiana"), along with another wholly owned subsidiary of Boyd Gaming, purchased the interest in Treasure Chest not owned by Boyd Kenner for approximately $113 million from the selling members, namely Robert J. Guidry, Dick J. Guidry, Robert A. Vosbein, Pam Olson, Robert J. Guidry Family Trust, and Dick J. Guidry Family Trust. The Treasure Chest's "intangible license rights," which had been obtained solely as a result of the overarching corrupt conspiracy, were valued at $85 million of the total purchase price. On information and belief, defendant Robert J. Guidry individually received $73 million from this transaction; the remaining $12 million was distributed among the other selling members. As a result of this transaction, Treasure Chest became and remains a wholly owned subsidiary of Boyd Gaming.

40.

Boyd Gaming's 1998 10K Statement, filed with the United States Securities and Exchange Commission, states that net revenues in Boyd Gaming's Central Region "increased 34% during the quarter ended June 30, 1998 compared to the quarter ended June 30, 1997 primarily as a result of the acquisition of Treasure Chest in October 1997. . . ." Boyd Gaming's 1998 10K Statement continues that "Treasure Chest produced net revenues for the Company of $31.2 million during the quarter ended June 30, 1998 . . . ." Further, Boyd Gaming's 1999 10K Statement provides that "Treasure Chest produced net revenues for the Company of $124 million during 1998 versus $26 million during the prior year."

**The Shetler Scheme**

41.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, Richard D. Shetler ("Shetler") was hired in June 1993 by Players Lake Charles Riverboat Casino, Inc. ("Players"), as a consultant on a three (3) year retainer for approximately $60,000 per year, and upon the opening of the riverboat his salary would increase to $100,000 per year.

42.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, on December 6, 1993, Players was granted a license to operate, and did open, a riverboat casino in Lake Charles, La.

43.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, pursuant to a "Compact" signed by Louisiana Governor Edwin W. Edwards and approved by the U.S. Division of Indian Affairs, Washington, D.C., the Coushatta Indian Tribe had received approval to open a casino on its Reservation, located approximately 50 miles from Lake Charles. During 1993/1994, the Coushatta Tribe sought approval from the U.S. Division of Indian Affairs to build the casino on the newly acquired 104 acres of land located near the Reservation. In order for the Tribe to get this approval, the Governor of Louisiana had to concur that these 104 acres were "contiguous" to the Reservation.

44.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, Players sought authorization from the Louisiana Riverboat Gaming Commission to purchase the Star Riverboat Casino in New Orleans, assume its license, and transfer the Star riverboat to a berth next to Players' original riverboat in Lake Charles. This transfer was approved by the Gaming Commission in February 1995.

45.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, Shetler's still valid contract with Players was superseded on December 1, 1994, by a seven (7) year retainer for $126,000 per year, complete with a $250,000 bonus and $200,000 loan.

46.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, from payments received by Players and related entities, Shetler gave Stephen Edwards cash and other property for Stephen Edwards and Edwin Edwards in the approximate amount of $550,000.

47.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, as explained herein, to quote the Shetler Bill, "from approximately April 1993 through April 1997, in the Middle District of Louisiana and elsewhere, Richard D. Shelter did knowingly, willfully and unlawfully combine, conspire, confederate, and agree with Stephen Edwards and Edwin Edwards to unlawfully obstruct, delay, and affect commerce by extortion, that is, by obtaining property, namely payments from Players, with Players' consent, induced by fear of economic loss, and under color of official right."

48.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, in April or May 1993, Stephen Edwards told two Players officials to hire Shetler as a consultant. Edwards stated that if Players wanted to get its license approved by the Louisiana State Police, Players would have to pay Shetler $300,000; if Players wanted to have a monopoly in Lake Charles, it would have to pay Shetler $600,000. On or about June 6, 1993, Players hired Shetler as a consultant on terms including a three-year retainer at $100,000 per year.

49.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, in or about August 1993, Shetler recorded a telephone conversation he had with Stephen Edwards. During the conversation, they discussed a $50,000 bonus Players was going to pay to Shetler to "look at these other sites" for gaming riverboats. Stephen Edwards explained to Shetler the bonus was a "way for them to pay you because they know that if they are paying you and you're happy, then you'll keep me from fucking with them."

50.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, during the same August 1993 recorded conversation, Shetler and Stephen Edwards discussed other contracts which various associates and family members of Stephen Edwards were to obtain in connection with Players.

51.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, commencing in May 1994 and continuing through and including September 1995, Shetler caused another individual to pay approximately $75,000 for windows, air conditioning units, kitchen appliances, and a metal shed to be delivered and installed in Stephen Edwards' house and other residences.

52.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, in July or August 1994, Shetler, upon the instructions of Stephen Edwards, related to Players that, in return for separate payments of $250,000 and $200,000, Governor Edwin Edwards would take official action to hinder or prevent the opening of the Coushatta Indian Tribe Casino, and Stephen Edwards would keep other riverboats from establishing in Lake Charles.

53.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, on or about November 23, 1994, in return for official action taken by Governor Edwards regarding the Coushatta Tribe's Casino, Shelter purchased in his name from Don Shetler Chevrolet, Inc., Crowley, LA. a $24,078 1994 Chevrolet Suburban. The car was then taken for use at Governor Edwards' condominium in Vail, Colorado.

54.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, on or about December 1, 1994, in response to Shetler's demands, Players revised his contract, replacing it with a seven year retainer for $126,000 per year, complete with a $250,000 bonus and a $200,000 loan.

55.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, in January 1995, Shetler, upon the instructions of Stephen Edwards, related to Players that, in return for $250,000 per year, Governor Edwards would approve the transfer of the Star Riverboat.

56.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, in January 1995, Shetler entered into an agreement with another company with an economic interest in the approval of the Star transfer, whereby he was to receive 37.5 cents per passenger off the two Players boats.

57.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, in or about February 1995, in connection with the Star transfer, Players agreed to pay a legal retainer to Stephen Edwards for $15,000 per month. Players, thereafter, paid a total of $150,000 pursuant to this agreement.

58.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, on or about February 8, 1995, the Gaming Commission approved both the Star transfer and the establishment of the Crown Casino riverboat in Lake Charles.

59.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, in or about August 1995, representatives of Players met with Edwin Edwards at the Governor's Mansion. The purpose of the meeting was to discuss a proposed Players riverboat casino in Shreveport. During the meeting, Edwards protested that although people said it was necessary for gaming companies to do business with his friends, relatives, and associates, that was not, in fact, true. Edwards then stated to the Players representatives that there were local people who could advance their business ventures, while at the same time gesturing with his finger toward an associate of his who was sitting nearby.

60.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, on or about September 27 - 29, 1995, Richard D. Shetler accompanied Stephen Edwards and his wife and an interior decorator to various furniture showrooms in Dallas, Texas. The Edwardses selected and received furniture totaling approximately $74,267, a fireplace mantle at $2,250, and a chandelier for $1,957. Shetler paid for these items.

61.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, on or about September 5 through 8, 1995, Shetler cashed six checks totaling $20,000, payable to "cash." He thereafter made a $20,000 cash payment to Stephen Edwards for Governor Edwin Edwards.

62.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, on or about February 25, 1997, at their law offices, Stephen Edwards told his father Edwin Edwards that Shetler would come tomorrow "with your money."

63.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, the following day, February 26, 1997, Stephen Edwards met in his law office with Shetler. Stephen Edwards asked Shetler how much money he brought, and Shetler replied "47." They discussed that amount of revenue the riverboat made and the number of customers who had boarded the riverboat during the period. They then discussed possible methods through which Shetler could secretly purchase a $25,000 van for Stephen Edwards, who stated that the van deal could be structured so Shetler could use it "once a year just like the deal (referring to the Suburban) you had with my dad." Since the Chevrolet Suburban was at the Vail condo, Stephen Edwards told Shetler that "for the purposes of legitimacy, I think what you ought to do is make plans of calling ... for you to go up there and spend some time with him, or go up and use the place when he ain't there ... but you really ought to go up there at least once."

64.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, on or about March 13, 1997, Shetler brought approximately $4,634 in cash to Stephen Edwards' office for Edwin Edwards. After entering the office, he told Stephen Edwards that he had put the money "in the bottom drawer," stating that the money was for "your Dad."

65.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, on or about March 18, 1997, Richard D. Shetler purchased in Stephen Edwards' name from Don Shetler Ford, Inc., Sulphur, LA., a 1997 Ford Club Van.

66.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, from August 1996 through April 1997, Shetler delivered approximately $50,000 in cash for Edwin W. Edwards.

**Count One -- Racketeering Influenced and Corrupt Organizations Act**

67.

On information and belief, Edwin W. Edwards, Stephen Edwards, Andrew Martin, Robert Guidry, Treasure Chest, and other unnamed persons and entities (collectively, "RICO persons") constituted an association-in-fact enterprise ("RICO enterprise") as defined in the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. ("RICO").

68.

On information and belief, the RICO enterprise was engaged in and its activities affected interstate and foreign commerce.

69.

On information and belief, the RICO persons conducted and participated in the conduct of the affairs of the RICO enterprise through a pattern of racketeering activity in East Baton Rouge and other parishes, comprised of repeated acts of bribery (in violation of 18 U.S.C.§ 1952 and LSA - R.S. 14:118), extortion (in violation of 18 U.S.C. § 1951, LSA - R.S. 14:66 and LSA - R.S. 14:120), wire fraud (in violation of 18 U.S.C. § 1343), and mail fraud (in violation of 18 U.S.C. § 1341)(collectively, "predicate acts") extending over a period of years, in violation of 18 U.S.C. § 1962(c).

70.

On information and belief, the RICO persons, through a pattern of racketeering activity, acquired and/or maintained an interest in and/or control of enterprises engaged in, and

the activities of which affected, interstate and foreign commerce, namely entities involved in riverboat gaming in Louisiana, in violation of 18 U.S.C. § 1962(b).

,71.

On information and belief, the RICO persons conspired to violate 18 U.S.C. §§ 1962(b) and 1962(c), in violation of 18 U.S.C. § 1962(d).

72.

Copeland was injured in his business and property, which injury was proximately caused by reason of the RICO persons' violations of 18 U.S.C. §§ 1962(b), 1962(c) and 1962(d), entitling him to recover threefold the damages he has sustained and the cost of the instant suit, including a reasonable attorney's fee, pursuant to 18 U.S.C. § 1964(c). Certain of the means and methods by which the defendants and their associates conducted and participated in the conduct of the affairs of the RICO enterprise are detailed in the following paragraphs.

73.

On information and belief, the RICO enterprise, which began prior to defendant Edwin Edwards' fourth and final term as Governor, centered around Edwin Edwards and the office of the Governor of Louisiana, and further depended upon the political and economic power, influence, control and notoriety of Governor Edwards to operate and to succeed in its purposes and objectives.

74.

On information and belief, the enterprise continued in existence through and beyond the conclusion of Edwin Edwards' final term as Governor, until and including the date of this Complaint. Thus, the RICO enterprise and its associates continued to exploit the political and economic power, influence, control, and notoriety of Edwin Edwards to operate and succeed in its purposes and objectives.

75.

On information and belief, Edwin Edwards and Stephen Edwards were the center or nucleus of the RICO enterprise. Other members and associates of the RICO enterprise would and did participate in various aspects of the RICO enterprise's purposes, objectives, and ventures, as sanctioned by Edwin Edwards and Stephen Edwards.

76.

On information and belief, to avoid detection by law enforcement and unmasking before the public, Edwin Edwards went to great lengths to ensure that his participation in the RICO enterprise and its racketeering activity remained hidden and insulated by having the other members and associates of the RICO enterprise perform overt acts in furtherance of the RICO enterprise's racketeering activity.

77.

The RICO persons fraudulently concealed their illegal activities, and plaintiff neither knew nor, in the exercise of due diligence, could reasonably have known of the offenses committed by the members of the RICO enterprise.

78.

On information and belief, the members and associates of the RICO enterprise would and did use their close relationships with Edwin Edwards and Stephen Edwards, thereby trading upon the Edwin Edwards name, notoriety, and power, in order to exercise influence and leverage over the victims of the RICO enterprise.

79.

On information and belief, commencing in or about 1993 and continuing through 1994, Edwin Edwards, on several occasions, assisted certain riverboat applicants in obtaining licenses from the Division by, among other things, demanding that the Division schedule speedy licensing hearings for those applicants he favored.

80.

On information and belief, on or about April 23, 1997, Edwin Edwards was interviewed by a Special Agent of the FBI and a Special Agent of the Internal Revenue Service (the "IRS") concerning the riverboat licensing process. Edwin Edwards stated that, in his opinion, legislators "got their friends on the Commission" to award Certificates of Preliminary Approval to certain riverboat applicants. Edwin Edwards stated that he appointed the Co-Chairman of the Gaming Commission at the request of a state legislator. Edwin Edwards also stated that he appointed other members of the Gaming Commission at the request of legislators who were close political allies of Edwin Edwards. Edwin Edwards also admitted to giving a

member of the Gaming Commission a list containing the riverboat applicants he wanted to receive certificates.

81.

Defendant Robert J. Guidry and/or Treasure Chest, are liable unto plaintiff Copeland for damages resulting from the RICO persons' violations of 18 U.S.C. §§1962(b),(c) and (d), including treble damages, attorneys' fees, court costs, litigation expenses, and all other legal and equitable relief.

**Count Two -- Unfair Trade Practices**

82.

The actions of defendants Robert J. Guidry and/or Treasure Chest, as outlined above, were unfair, immoral, unscrupulous, and violated public policy; defendants' actions were also deceptive. As a result, defendants Guidry and/or Treasure Chest are liable to plaintiff, a business competitor of Treasure Chest, for the unfair, deceptive, and illegal trade practices outlined above pursuant to the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.* ("LUTPA").

83.

Upon information and belief, Treasure Chest has failed to notify the Division and/or the Gaming Control Board of the actions outlined above, which constitutes a violation of the Louisiana Gaming Control Law (including without limitation a violation of LSA-R.S. 27:70). This noncompliance is an independent violation of the LUTPA, and continues each day Treasure Chest fails to disclose to the Gaming Control Board the facts surrounding Treasure Chest's acquisition of its license.

84.

Defendants Robert J. Guidry and/or Treasure Chest are liable under the LUTPA for all damages sustained by the plaintiff, including without limitation his out of pocket costs, lost profits, attorneys' fees and costs, the value of Treasure Chest's gaming license, and the value of Treasure Chest's success.

<u>**Count Three -- Fraud**</u>

85.

As detailed above, Robert J. Guidry and/or Treasure Chest obtained a certificate and license by misrepresentations and/or suppressions of the truth concerning the overarching corrupt conspiracy, as well as their participation in extortion; these misrepresentations and/or suppressions were made with the intent to obtain an unjust advantage in obtaining a certificate and license. Robert J. Guidry and/or Treasure Chest are therefore liable for fraud under La. Civ. Code art. 2315.

86.

Robert J. Guidry and/or Treasure Chest fraudulently concealed the formation of and their participation in the overarching corrupt conspiracy, and all acts taken in furtherance thereof, in order to avoid or prolong discovery thereof and in an attempt to prejudice the rights of the victims, including plaintiff, of the overarching corrupt conspiracy and the constituent elements thereof. Plaintiff learned of Robert J. Guidry and/or Treasure Chest's fraudulent conduct within one year of the filing of this Petition.

87.

Robert J. Guidry and/or Treasure Chest are liable unto plaintiff for the fraud effected by the overarching conspiracy and the damages to plaintiff resulting therefrom, including without limitation his lost profits, attorney fees, costs, the value of Treasure Chest's gaming license, and the value of Treasure Chests's success.

<u>**Count Four -- Unjust Enrichment**</u>

88.

Guidry and/or Treasure Chest are liable to Copeland for their unjust enrichment. As detailed above, the license awarded to Treasure Chest as a result of the overarching corrupt conspiracy should have been awarded to AIGA. Defendants have reaped enormous profits under the license, while Copeland (1) has both had to forego the profits he would have made under the license, and (2) has never recouped his out-of-pocket costs and expenses incurred in applying for it. Consequently, defendants have been unjustifiably enriched, and Copeland has been impoverished.

89.

As a result of defendants' unjust enrichment, Copeland is entitled, without limitation, to recoup his out-of-pocket costs and lost profits or, alternatively, the profits made by the defendants, pursuant to La. Civ. Code art. 2298. He is also entitled to recover the value of Treasure Chest's gaming license and the value of Treasure Chest's success.

**Solidary Liability**

90.

Pursuant to 18 U.S.C. § 1962 and Louisiana Civil Code Article 2324, defendants are each jointly and severally liable unto plaintiff.

91.

**Respondeat Superior**

Because all of the above-referenced acts undertaken by Robert Guidry were in the course and scope of his position with Treasure Chest and were done with actual and/or apparent authority provided to Guidry by Treasure Chest, Treasure Chest is liable to plaintiffs for these acts through the doctrines of *respondeat superior* and/or La. Civ. Code article 2320. Guidry's actions were rooted in his position with Treasure Chest and were incidental to its activities, and were done with Treasure Chest's consent.

**Jury Demand**

92.

Plaintiff prays for trial by jury.

**WHEREFORE**, premises considered, plaintiff prays that after due proceedings be had, there be judgment against defendants Treasure Chest Casino, L.L.C. and Robert J. Guidry, for all damages, both pecuniary and nonpecuniary, suffered as a result of defendants' actions as set forth herein, including plaintiff's out of pocket costs and all lost profits, as well as the value of the Treasure Chest's gaming license and the value of Treasure Chest's success, legal interest, attorneys' fees, litigation costs, court costs, treble damages, and for all other

appropriate legal and equitable relief.

Respectfully submitted,

**SLATER LAW FIRM**

Benj. R. Slater, Jr., Bar No. 12126
Benj. R. Slater, III, Bar No. 12127, T.A.
A. Elise Brown, Bar No. 19500
Donald J. Miester, Jr., Bar No. 20294
S. Joseph Welborn, Bar No. 25928

650 Poydras Street
Suite 2600
New Orleans, LA 70130
Telephone: (504) 523-7333
Facsimile: (504) 528-1080
**ATTORNEYS FOR PLAINTIFF ALVIN C. COPELAND**

**PLEASE SERVE:**

1. **Treasure Chest Casino, L.L.C., through its registered agent for service of process:**
   Paul S. West
   One American Place
   Ninth Floor
   Baton Rouge, Louisiana 70825

   -and-

2. **Robert J. Guidry**
   3817 Spencer Street
   Harvey, Louisiana 70058

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 26 of 221

0 9 2 2 0 2 9 8

[illegible]

Deputy Sheriff
Parish of East Baton Rouge, Louisiana

CITATION

[illegible]

ALVIN C. COPELAND [illegible]
Plaintiff

v.

[illegible] CASINO [illegible] ET AL
Defendant

No: C 4[illegible] 7 [illegible]
19th JUDICIAL DISTRICT COURT
PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA

The Sands Chest Casino L.L.C.
through its agent, Paul [illegible] West
[illegible] Plaza [illegible] Floor
[illegible], La. 70[illegible]

[illegible] are being sued.

Attached to this citation is a certified copy of the petition. The petition tells you what you are being sued for.

You must either do what the petition asks or, within fifteen (15) days after you have received these documents, you must file an answer or other legal pleading in the office of the Clerk of this Court at the Governmental Building, 2[illegible] St. Louis Street, Baton Rouge, Louisiana.

If you do not do what the petition asks, or if you do not file an answer or legal pleading within fifteen (15) days, a judgment may be entered against you without further notice. This citation was requested by attorney BENJAMIN SLATER JR ESQ. for litigant ALVIN C. COPELAND.

This citation was issued by the Clerk of Court for East Baton Rouge Parish on the 22nd day of September, 1993.

By: [signature]
Deputy Clerk of Court for
Doug Welborn, Clerk of Court

Also attached are the following documents:

[illegible] RETURN

[illegible] day of [illegible], 19[illegible] [illegible]

PERSONAL SERVICE on the party herein named

DOMICILIARY SERVICE on the [illegible] [illegible] by leaving this citation and a copy of [illegible] [illegible] information [illegible]

9 1 2 0 2 9 8 0

CITATION

(Mail Service)

No: C 464507 Div: [illegible]
19th JUDICIAL DISTRICT COURT
PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA

[illegible] v Plaintiff

[illegible] Defendant

Robert J. [illegible]

YOU HAVE BEEN SUED.

Attached to this citation is a certified copy of the petition. The petition tells you what you are being sued for.

You must EITHER do what the petition asks OR, within fifteen (15) days after you have received these documents, you must file an answer or other legal pleadings in the office of the Clerk of this Court at the Governmental Building, 222 St. Louis Street, Baton Rouge, Louisiana.

If you do not do what the petition asks, or if you do not file an answer or legal pleading within fifteen (15) days, a judgment may be entered against you without further notice. This citation was requested by attorney BENJAMIN SLATER JR ESQ. for litigant ALVIN C. COPELAND.

This citation was issued by the Clerk of Court for East Baton Rouge Parish on the 22nd day of September, 1999.

By: ______________________
Deputy Clerk of Court for
Doug Welborn, Clerk of Court

Also attached are the following documents:

SERVICE INFORMATION

Received on the ______ day of ______________, 19____ and on the ______ day of ______________, 19____, served the above named party as follows:

PERSONAL SERVICE: on the party herein named ______________________.

DOMICILIARY SERVICE: on the within named ______________________, by leaving the same at his domicile in this parish in the hands of ______________________, a person of suitable age and discretion residing in said domicile ______________________.

SECRETARY OF STATE: by tendering same to the within named, by handing same to ______________________.

DUE AND DILIGENT: After diligent search and inquiry, was unable to find the within named ______________________ or his domicile, or anyone legally authorized to represent him.

RETURNED: Parish of ______________________, this ______ day of ______________, 19____.

SERVICE: $ ______
MILEAGE: $ ______
TOTAL: $ ______

______________________
Deputy Sheriff
Parish of East Baton Rouge, Louisiana

9 2 2 0 2 9 9 0

Doug Welborn
Clerk of Court
19th JUDICIAL DISTRICT COURT
Parish of East Baton Rouge
P.O. Box 1991
Baton Rouge, Louisiana 70821-1991
Phone (225) 389-3987
Fax (225) 389-3392

September 24, 1999

Regarding Case Number: C 464637 Div: [illegible]

To: Jefferson Parish Sheriff's Office
P.O. Box 27
Gretna, LA 70054

Phone: (504) 363-5701

We are enclosing herein a citation and petition in the above numbered suit to be served as indicated herein.

Please make your return(s) on the duplicate(s) enclosed, and find our check enclosed for payment of service.

Thank You,

[signature]
Deputy Clerk of Court for
Doug Welborn, Clerk of Court

Date:

By:

1011 0 6 4 2 David Baye

Outside Parish Paid For
Service $15.00 74671
JEFFERSON PARISH SHERIFF'S OFFICE

CITATION

C 1002 (Mail Service)

No: C 464407 Div: L
19th JUDICIAL DISTRICT COURT
PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA

ALVIN C. COPELAND
vs Plaintiff

TREASURE CHEST CASINO, ET AL
Defendant

: Robert J. Guidry
4517 Spencer
Harvey, La 70058

YOU HAVE BEEN SUED.

Attached to this citation is a certified copy of the petition.* The petition tells you what you are being sued for.

You must EITHER do what the petition asks OR, within fifteen (15) days after you have received these documents, you must file an answer or other legal pleadings in the office of the Clerk of this Court at the Governmental Building, 222 St. Louis Street, Baton Rouge, Louisiana.

If you do not do what the petition asks, or if you do not file an answer or legal pleading within fifteen (15) days, a judgment may be entered against you without further notice. This citation was requested by attorney BENJAMIN SLATER JR ESQ. for litigant ALVIN C. COPELAND.

This citation was issued by the Clerk of Court for East Baton Rouge Parish, on the 22nd day of September, 1999.

CERTIFIED TRUE COPY

99 OCT -6 AM 11:44

19TH JUDICIAL DISTRICT
EAST BATON ROUGE PARISH, LA

By: Charlene
Deputy Clerk of Court for
Doug Welborn, Clerk of Court

*The attached are the following documents:

SERVICE INFORMATION

Received on the 28 day of Sept, 1999 and on the 29 day of Sept, 1999, served the above named party as follows:

PERSONAL SERVICE: on the party herein named
Robert Guidry thru David Baye

DOMICILIARY SERVICE: on the within named ________, by leaving the same at his domicile in this parish in the hands of ________, a person of suitable age and discretion residing in said domicile

________.

SECRETARY OF STATE: by tendering same to the within named, by handing same to ________.

DUE AND DILIGENT: After diligent search and inquiry, was unable to find the within named ________ or his domicile, or anyone legally authorized to represent him.

RETURNED: Parish of Jefferson, this 29 day of Jefferson, 1999.

SERVICE: $________
MILEAGE: $________
TOTAL: $________

Forest F Fauver
Deputy Sheriff 108123
Parish of ~~East Baton Rouge~~ Jefferson, Louisiana

...ally authorized to repre...nt him.

...ED: Parish of ______ 0 9 2 9 0 5 7 6 ______ day ________, 19____.

...: $__________
...EAGE: $__________
...AL: $__________

[signature]
Deputy Sheriff
Parish of East Baton Rouge, Louisiana

444

93381

FILED
SEP 28 1999
[signature]
DEPUTY CLERK OF COURT

CITATION

... 1002 (Mail Service)

No: ... 464607 Div: ...
19th JUDICIAL DISTRICT COURT
PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA

...IN C. COPELAND
v. Plaintiff

...EASURE CHEST CASINO, L.L.C ET AL
Defendant

Treasure Chest Casino L.L.C.
thru its agent, Paul S. West
One American Place Ninth Floor
...ton Rouge, La. 70825

YOU HAVE BEEN SUED.

...ttached to this citation is a certified copy of the petition.* The ...tition tells you what you are being sued for.

You must EITHER do what the petition asks OR, within fifteen (15) days ...r you have received these documents, you must file an answer or other ...al pleadings in the office of the Clerk of this Court at the Governmental ...ilding, 222 St. Louis Street, Baton Rouge, Louisiana.

If you do not do what the petition asks, or if you do not file an answer ...egal pleading within fifteen (15) days, a judgment may be entered against ... without further notice. This citation was requested by attorney BENJAMIN SLATER JR ESQ. for litigant ALVIN C. COPELAND.

This citation was issued by the Clerk of Court for East Baton Rouge ...rish, on the 22nd day of September, 1999.

By: [signature]
Deputy Clerk of Court for
Doug Welborn, Clerk of Court

...lso attached are the following documents:

SERVICE INFORMATION

...ceived on the 24 99 of Sept, 1999 and on the 27 day ... Sept, 1999, served the above named party as follows:

...RSONAL SERVICE: on the party herein named
______ OFP ______.

...MICILIARY SERVICE: on the within named ______, by leaving the ... at his domicile in this parish in the hands of ______, a person ... suitable age and discretion residing in said domicile
______.

...RETARY OF STATE: by tendering same to the within named, by handing same

91116046709

ZATZKIS & ASSOCIATES
SECOND FLOOR
700 CAMP STREET
NEW ORLEANS, LOUISIANA 70130-3702

LANNY R. ZATZKIS, LL.M.*+
KAREN D. McCARTHY

YVETTE A. D'AUNOY
ANDREW N. LEE
*IN TAXATION
+ADMITTED IN TEXAS & COLORADO

TEL: (504) 523-2266
FAX:(504) 593-9921

November 12, 1999

DOUG WELBORN
Clerk of Court
19th Judicial District Court
P.O. Box 1991
Baton Rouge, Louisiana 70821-1991

Re: *Alvin C. Copeland v. Treasure Chest Casino, et al.*
19th JDC No. 464-607; Div "D"
Our File No. 4723-011

Dear Mr. Welborn:

Enclosed please find an original and two copies of a Memorandum in Opposition to Plaintiff's Motion to Transfer and Consolidate, which has been previously faxed to you. Please return a clocked copy of the Memorandum in the enclosed, self addressed, stamped envelope. Additionally, I am enclosing a check in the amount of $25.50 to cover the costs of filing.

If there are any problems with the filing of this Memorandum, please contact us immediately.

Very truly yours,

Erin D. McMahon
Paralegal to Lanny R. Zatzkis

EDM/dr
Enclosures

91116046700

# DEPARTMENT OF SUIT ACCOUNTING
## 19TH JUDICIAL DISTRICT COURT
CLERK OF COURTS

P.O. BOX 1991    BATON ROUGE, LA 70821-1991    (225)389-3982

*****PLEASE ATTACH THIS RECEIPT TO YOUR ORIGINAL*****
**IF FILING IN PERSON, NOTIFY FILING CLERK OF PREVIOUS FAX**

**FAX RECEIPT**

Fax Number: (225) 389-3392
Department: ____________
To: ____________
Suit Number: 464 607

Phone Number: (504) 593-9921
Date: 11/10/99
From: Erin McMahon
Division: D

Copeland vs. Treasure Chest Casino

Item(s) Received: Memo

Amount Due (includes a $5.00 Fax Fee and $.50 per page) $ 25.50

The Clerk of Court's office has received, by facsimile transmission, documents in the above referenced case. It has been filed as of this date. In accordance with R.S. 13:850 (B), the original and applicable fees shall be forwarded to this office within five (5) days.

In accordance with 13:850 (B) (3), a transmission fee of $5.00 shall be forwarded to the Clerk of Court with the original document. The fax filing fee is necessary even when filing *in forma pauperis*.

**NO FURTHER ACTION WILL BE TAKEN WITH THIS DOCUMENT UNTIL THE ORIGINAL AND NECESSARY FILING FEES ARE RECEIVED IN THIS OFFICE.**

---

**SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX–ISSUANCE IS BY ORIGINAL REQUESTS, ONLY!**

---

*****PLEASE ATTACH THIS RECEIPT TO YOUR ORIGINAL*****

1116046B000

P. 1

* * * COMMUNICATION RESULT REPORT ( NOV. 10. 1999 3:43PM ) * * *

TTI E. B. R. CLERK OF CRT

| ILE MODE | OPTION | ADDRESS (GROUP) | RESULT | PAGE |
|---|---|---|---|---|
| 565 MEMORY TX | | 915045939921 | OK | 1/1 |

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL
E-2) BUSY
E-3) NO ANSWER
E-4) NO FACSIMILE CONNECTION

# DEPARTMENT OF SUIT ACCOUNTING
# 19TH JUDICIAL DISTRICT COURT

**CLERK OF COURTS**

**P.O. BOX 1991 BATON ROUGE, LA 70821-1991 (225)389-3982**

*****PLEASE ATTACH THIS RECEIPT TO YOUR ORIGINAL*****
**IF FILING IN PERSON, NOTIFY FILING CLERK OF PREVIOUS FAX**

**FAX RECEIPT**

**Fax Number:** (225) 389-3392
**Department:** ____
**To:** ____
**Suit Number:** 464 607

**Phone Number:** (504) 593-9921
**Date:** 11/10/99
**From:** Erin McMahon
**Division:** D

Copeland **vs.** Treasure Chest Casino

**Item(s) Received:** Memo

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 34 of 221

9116046001

# DEPARTMENT OF SUIT ACCOUNTING
# 19TH JUDICIAL DISTRICT COURT

CLERK OF COURTS
P.O. BOX 1991 BATON ROUGE, LA 70821-1991 (225)389-3982

***PLEASE ATTACH THIS RECEIPT TO YOUR ORIGINAL***
IF FILING IN PERSON, NOTIFY FILING CLERK OF PREVIOUS FAX

## FAX RECEIPT

Fax Number: (225) 389-3392
Department: ____________
To: ____________
Suit Number: 464 607

Phone Number: (504) 593-9921
Date: 11/10/99
From: Erin McMahon
Division: D

Copeland vs. Treasure Chest Casino

Item(s) Received: Memo

Amount Due (includes a $5.00 Fax Fee and $.50 per page) $ 25.50

The Clerk of Court's office has received, by facsimile transmission, documents in the above referenced case. It has been filed as of this date. In accordance with R.S. 13:850 (B), the original and applicable fees shall be forwarded to this office within five (5) days.

In accordance with 13:850 (B) (3), a transmission fee of $5.00 shall be forwarded to the Clerk of Court with the original document. The fax filing fee is necessary even when filing *in forma pauperis*.

**NO FURTHER ACTION WILL BE TAKEN WITH THIS DOCUMENT UNTIL THE ORIGINAL AND NECESSARY FILING FEES ARE RECEIVED IN THIS OFFICE.**

---

**SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX–ISSUANCE IS BY ORIGINAL REQUESTS, ONLY!**

---

***PLEASE ATTACH THIS RECEIPT TO YOUR ORIGINAL***



91116046002

ZATZKIS & ASSOCIATES
SECOND FLOOR
700 CAMP STREET
NEW ORLEANS, LOUISIANA 70130-3702

LANNY R. ZATZKIS, LLM *+
KAREN D. MCCARTHY
~~YVETTE A. D'AUNOY~~
ANDREW N. LEE
*IN TAXATION
+ADMITTED IN TEXAS & COLORADO

TEL: (504) 523-2266
FAX: (504) 593-9921

# FACSIMILE COVER SHEET

TO: Clerk of Court, 19th JDC

FAX NO: 225-389-3392

FROM: ____ LANNY R. ZATZKIS ____ KAREN D. McCARTHY

____ YVETTE A. D'AUNOY ____ ANDREW N. LEE

✓ ERIN D. McMAHON

PAGES: 9 (including cover sheet)

date: 11-10-99 time sent: 2:45 pm

our file number & client name : Copeland v. Gundry

COMMENTS: Memo in opp to TPs mt to Transfer & Consolidate

PLEASE CALL **ERIN McMAHON AT (504) 523-2266** IF THERE IS ANY PROBLEM OR AN INCOMPLETE TRANSMISSION.

CONFIDENTIALITY NOTICE

THIS FACSIMILE TRANSMISSION (AND/OR THE DOCUMENTS ACCOMPANYING IT) MAY CONTAIN CONFIDENTIAL INFORMATION BELONGING TO THE SENDER WHICH IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION, OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS INFORMATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE OR ARRANGE FOR THE RETURN OF THE DOCUMENTS.

11160468003

ZATZKIS & ASSOCIATES
SECOND FLOOR
700 CAMP STREET
NEW ORLEANS, LOUISIANA 70130-3702

LANNY R. ZATZKIS, LL.M.*+
KAREN D. McCARTHY

TEL: (504) 523-2266
FAX:(504) 593-9933

YVETTE A. D'AUNOY
ANDREW N. LEE
*IN TAXATION
+ADMITTED IN TEXAS & COLORADO

November 10, 1999

DOUG WELBORN
Clerk of Court
19th Judicial District Court
P.O. Box 1991
Baton Rouge, Louisiana 70821-1991

Re: *Al Copeland v. Robert Guidry*
19th JDC No. 464-607
Our File No. 4723-011

Dear Mr. Welborn:

Enclosed please find a faxed copy of a Memorandum in Opposition to Plaintiff's Motion to Transfer and Consolidate.

If there are any problems with the fax filing of this Memorandum, please contact us immediately.

Very truly yours,

Eric D. McMahon
Paralegal to Lanny R. Zatzkis

EDM/dr
Enclosures
cc: Paul West
Ben Slater

RECEIVED TIME NOV. 10. 2:51PM

91116046800

**19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

**NO. 464607** **DIV. "D"** **DOCKET**

**ALVIN C. COPELAND**

**VERSUS**

**TREASURE CHEST CASINO, L.L.C. and ROBERT GUIDRY**

COST OK Amt. FX
NOV 10 1999
BY
BY CLERK OF COURT

**FILED:**________________ ________________
**DEPUTY CLERK**

**MEMORANDUM IN OPPOSITION TO**
**PLAINTIFF'S MOTION TO TRANSFER AND CONSOLIDATE**

**NOW INTO COURT**, through undersigned counsel, comes Robert Guidry, defendant herein, who hereby objects to the plaintiff, Alvin C. Copeland's motion to transfer and consolidate this action with the prior filed action, Alvin C. Copeland v. The Louisiana Riverboat Commission and the Riverboat Gaming Enforcement Division of the Enforcement Section of the Office of State Police, Publice Safety Services, Department of Public Safety and Corrections, No. 400,750, Division "A".

As is more fully set forth below, the defendant, Robert Guidry objects on the following grounds:

1.) This motion to transfer and consolidate is improperly before this Division of Court, as Division "A", the Division of the first filed action is vested with the authority to transfer and consolidate pursuant to La.CCP articles 1561 and 253.2, as well as Local Rule IV, Section 5.

2.) Even if this Division of Court did have the power to transfer and consolidate this action to the first filed action, there is an insufficient basis for this Court to find that common issues of law and fact predominate which precludes consolidation under La.-CCP article 1561(A).

3.) Even if this Court finds common issues of law and fact predominate, consolidation should not be ordered because consolidation in this case will cause jury confusion, prevent a fair and impartial trial, give one party (the plaintiff herein) an undue advantage, and prejudice the rights any party (the defendants herein, as well as the defendants in the first filed action.) Therefore, nondiscretionary grounds requiring denial of consolidation under La.--CCP article 1561 preclude consolidation.

The defendant Robert Guidry has reviewed the Memorandum in Opposition to Consolidation of Cases submitted on behalf of co-defendant Treasure Chest, L.L.C. and adopts by reference their objections to the plaintiff's Motion to Transfer and Consolidate this action with the prior filed action, and supplements said memorandum with the following:

FAX COPY FILED 11/10/99
ORIGINAL FILED 11/15/99

RECEIVED TIMENOV. 10. 2:51PM

9111604690005

**1. The plaintiff's motion to transfer and consolidate is improperly before this Division of the Nineteenth Judicial District Court and is procedurally improper.**

The Motion to Transfer and Consolidate filed by the Plaintiff is improperly before this Division of the Nineteenth Judicial District Court. La. CCP art. 1561(A), governing consolidation of cases, provides:

> When two or more separate actions are pending in the same court, **the section or division of the court in which the first filed action is pending may order consolidation of the actions for trial after a contradictory hearing**, and upon a finding that common issues of fact and law predominate.

Under the plain language of the Code of Civil Procedure, this Division of court may not order consolidation, as this division of the Court is not the "division of the court in which the first filed action is pending". In order for this case and the first-filed case to be consolidated, the court in which the first filed action (Division "A" of the 19th Judicial District Court) is pending must order consolidation after contradictory hearing. Therefore an Order issued by this Division consolidating this action with the first filed action would be without effect. Moreover, La.-CCP article 1561 does not vest this Division of court with the power to consolidate this case with an earlier filed action, but leaves that power in Division "A" where the first filed action is pending.

This Court should dismiss the plaintiff's Motion to Transfer and Consolidate as said motion has been filed in the wrong division of court. Likewise, hearing on transfer and consolidation in this Division of Court prior to contradictory hearing in Division "A" would be improper and clearly in contravention of Article 1561.

The plaintiff has also moved for an order granting transfer of this case with the first filed action. With respect to the transfer requested by plaintiff, La. CCP article 253.2 provides in pertinent part:

> After a case has been assigned to a particular section or division of the court, it may not be transferred from one section or division to another section or division within the same court, unless agreed to by all parties, **or unless it is being transferred to effect a consolidation for purpose of trial pursuant to Article 1561.**

Article 253.2, also amended in 1997, generally prohibits transfer of cases from one division of court to another unless the transfer falls within the express exceptions provided for. Article 253.2 allows for transfer **"pursuant to Article 1561"**, which article clearly provides that the division in which the first filed action is pending is solely responsible for ordering

RECEIVED TIMENOV. 10. 2:51PM

911160468006

consolidation.

Finally, Rule IV, Section 5 of the Civil Rules of the Nineteenth Judicial District Court (which the plaintiff cites in his motion) clearly provides that the procedure for transfer and consolidation requires the judge where the first filed action is pending to approve the transfer first, before the judge where the later filed action is pending, prior to consolidation:

> After a case has been allotted, it may be transferred for good cause from one Division to another by an order **signed first by the judge presiding over the Division to which the case is being transferred and then by the judge presiding over the Division from which the case is being transferred**; or, upon an order rendered ex proprio motu by the Court sitting en banc; If the transfer is made of one or more cases to effect a consolidation for purposes of trial, the case or cases with the higher docket number shall be transferred to the Division in which the case with the lowest docket number was allotted.

In this case, the transfer must first be signed by the Judge presiding over Division "A" which is the Division ***to which*** the second case is to be transferred, and then by this Court, which is the Division ***from which*** the second case is to be transferred. Therefore, under the specific procedural rules of the Nineteenth Judicial District, an order transferring this case to Division "A" must first be signed by Judge Downing, the judge presiding over Division "A".

The defendant notes that if there is any conflict with Local Rule IV and La. CCP arts. 1561 and 253.2, the conflict must be resolved in favor of the Code of Civil Procedure. However, both the Code of Civil Procedure and the Local Rules instruct that the Judge presiding over the division in which the first filed action is pending is given the power to consider transfer and consolidation first.

**Both the Louisiana Code of Civil Procedure and Local Rule IV place the threshold determination for transfer and consolidation with the Division of Court where the first filed action is pending.** Therefore, the plaintiff's motion to transfer and consolidate is improperly before this Division of the Nineteenth Judicial District Court. Hearing and judgment on the issue of transfer and consolidation should first be heard by Judge Downing in Division "A". Therefore, hearing on transfer and consolidation in this Division is improper as being in contravention of Article 1561 and 253.2 of the Louisiana Code of Civil Procedure as well as Local Rule IV, Section 5.

**2. Even if this Court was vested with the power to order transfer and consolidation prior to Division "A", consolidation of the two cases is not warranted by La.--CCP article 1561(A) and 1561 (B).**

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 40 of 221
RECEIVED TIMENOV. 10. 2:51PM

91116046900?

The plaintiff's assertion that the first-filed action is "related to" this action is, at best, misleading. The actions involve different defendants, different facts, employ different modes of procedure and bear little "relation" to one another.

The first filed action is entitled Alvin C. Copeland v. The Louisiana Riverboat Commission and the Riverboat Gaming Enforcement Division of the Enforcement Section of the Office of State Police, Publice Safety Services, Department of Public Safety and Corrections, No. 400,750, Division "A". In the first filed action, plaintiff seeks:

(1) an appeal from an administrative action;

(2) a request for a declaratory judgment;

(3) a request for monetary damages against the State for constitutional violations; and

(4) a request for all monies Plaintiff paid to the State.

In this action, the later filed action, the plaintiff seeks damages against Treasure Chest, L.L.C. and Robert Guidry based on an alleged complex RICO scheme, violations of the Louisiana Unfair Trade Practices Act found at LSA-R.S. 51:401 et. seq., as well as claims of fraud and unjust enrichment.

The first filed action was instituted as an appeal to the Louisiana Riverboat Gaming Commission's approving the relocation of the site for the Treasure Chest riverboat in Kenner, Louisiana in 1993. Moreover, a Motion for Summary Judgment has been filed by the Defendants in the first filed action and is set for hearing in Division "A" for November 29, 1999.

This action, on the other hand, is based upon allegations arising out of the pending federal criminal action United States of America v. Edwin Edwards et al, Criminal Docket No. 98-165-B-M2 in the United States District Court for the Middle District of Louisiana, scheduled for trial on January 10, 2000. The plaintiff has relied on the Superseding Indictment against Edwin Edward, Stephen Edwards, Cecil Brown, Andrew Martin, Bobby Johnson, Gregory Tarver, and Ecotry Fuller submitted in the criminal matter ("the Edwards indictment") as well as newspaper articles in alleging the defendants herein were part of an alleged criminal conspiracy to corrupt the licensing process for riverboat gaming in the State of Louisiana. Robert Guidry, defendant in this civil action, is a government witness in the pending federal criminal action. (Defendant Guidry has filed on November 8, 1999 a Motion to Stay with Incorporated Memorandum or in the alternative, Motion to Continue Hearing on Plaintiff's Motion to Consolidate). The

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 41 of 221
RECEIVED TIMENOV 10 2:51PM

11604680

defendants, as well as the relief prayed for, the theories of law upon which their relief is based, as well as the facts on which the plaintiffs rely are markedly different, and far short of the requirement in La.--CCP art. 1561 that common issues of fact and law ***predominate*** the two cases.

More importantly, plaintiff's bare assertion that the actions are "related" does not meet the more demanding legal requirements set forth in La.CCP art. 1561. As addressed in Treasure Chest's memo, under 1561(A), the mere fact that common issues of fact and law do not predominate in the two cases ***requires*** denial of the plaintiff's motion.

Even if this Court does find that common issues of law and fact predominate, the nondiscretionary grounds requiring denial of consolidation as set forth in 1561(B) would require denial of plaintiff's motion.

La.-CCP art. 1561(B) provides:

B. Consolidation **shall not** be ordered if it would do any of the following:
(1) Cause jury confusion.
(2) Prevent a fair and impartial trial.
(3) Give one party an undue advantage.
(4) Prejudice the rights of any party.

Defendant Robert Guidry submits that, in addition to all those reasons set forth in Treasure Chest's memorandum, he will be severely prejudiced by plaintiffs consolidating this suit with a suit which has been pending for six years.

Mr. Guidry was served with this action on September 29, 1999, almost six years after the plaintiff's filing the first suit. Robert Guidry was never a defendant in the first filed action. The defendant, who has not filed responsive pleadings in this matter, reserves his right to argue that some or all of the plaintiff's claims have been prescribed and/or perempted. The plaintiffs attempt to transfer and consolidate is obvious legal maneuvering to "relate back" the plaintiff's claims in this action to the plaintiff's claims in the first filed action in a thinly veiled attempt to circumvent the prescription and peremption statutes. In order to consolidate the two actions, this Court must find that common issues of law and fact predominate the two cases. Granting this motion to consolidate will place defendant Guidry in the position of establishing his defenses in the context of litigation that has been ongoing since 1993. By effectively adding Mr. Guidry into longstanding litigation against different defendants seeking different types of relief under

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 42 of 221
RECEIVED TIMENOV. 10. 2:51PM

91116046900

different facts and different theories of law, the plaintiff will confuse and complicate its RICO action against Guidry and Treasure Chest with its long-standing administrative action against the Louisiana Riverboat Gaming Commission.

Moreover, as Guidry has not been made a defendant to the first filed action, he will be prejudiced by the prior rulings of the Court in which he could not and did not participate. The plaintiff will be given another tactical advantage over Mr. Guidry if they are permitted to inject him into ongoing litigation where he has had no opportunity to be heard, while the plaintiff has had every opportunity to develop the record in its favor and against the interests of Robert Guidry.

As Treasure Chest noted in its memorandum, the consolidation will allow the plaintiff to "gang-up" his claims to make his separate cases appear stronger than each may stand on its own individual merits.

As noted above, La.--CCP art. 1561 (B) provides nondiscretionary grounds for denial of consolidation even if common issues of law and fact do predominate. The plaintiff's motion to consolidate is a transparent attempt to gain a tactical advantage over the several defendants in both actions and burden the defendants with the responsibility of separating the different causes of action against the different defendants.

Defendant, Robert Guidry, avers that consolidation will cause jury confusion, prevent a fair and impartial trial, give one party, the plaintiff, an undue advantage, and prejudice his rights for those reasons given above. Therefore, under La.--CCP art. 1561(B), consolidation should be denied.

WHEREFORE, defendant, Robert Guidry prays that this Court dismiss the plaintiff's motion to consolidate as having been filed in the wrong Division of the Nineteenth Judicial Court, as Division "A" is the proper division to have a contradictory hearing and to order consolidation. Defendant further prays that if this Court does consider plaintiff's ex parte Motion to Transfer and Consolidate, that the Court deny consolidation of this action and the first

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 43 of 221
RECEIVED TIMENOV. 10. 2:51PM

91116046901

filed action pursuant to La.—CCP art. 1561.

RESPECTFULLY SUBMITTED:

LANNY R. ZATZKIS, T.A. (#13781)
KAREN D. McCARTHY (#14193)
YVETTE A. D'AUNOY (#22761)
ANDREW N. LEE (#24154)
ZATZKIS & ASSOCIATES
700 Camp Street
New Orleans, Louisiana 70130
Telephone: (504) 523-2266
Attorneys for Robert Guidry

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing Memorandum in Opposition to Plaintiff's Motion to Transfer and Consolidate on all known counsel of record in this proceeding by U.S. mail, properly addressed by first class postage prepaid mail and/or facsimile on this the 10th of November, 1999.

CERTIFIED TRUE COPY
341550
DEPUTY CLERK OF COURT

99 NOV 10 PM 3:12
DEPUTY CLERK OF COURT FOR
DOUG WELBORN
CLERK OF COURT E.B.R. PARISH

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 44 of 221
RECEIVED TIMENOV. 10. 2:51PM

1 1 1 7 2 0 2 3

ZATZKIS & ASSOCIATES
SECOND FLOOR
700 CAMP STREET
NEW ORLEANS, LOUISIANA 70130-3702

LANNY R. ZATZKIS, LL.M.**
KAREN D. McCARTHY
YVETTE D'AUNOY
ANDREW N. LEE
*IN TAXATION
*ADMITTED IN TEXAS & COLORADO

TEL: (504) 523-2266
FAX: (504) 593-9921

November 5, 1999

POSTED

DOUG WELBORN
Clerk of Court
19th Judicial District Court
P.O. Box 1991
Baton Rouge, Louisiana 70821-1991

**Federal Express 1258-5064-2**

Re: *Al C. Copeland v. Treasure Chest Casino, et al.*
19th JDC No. 464-607
Our File No. 4723-011

Dear Mr. Welborn:

Enclosed please find an original and two copies of a Motion to Stay with Incorporated Memorandum and/or Motion to Continue Hearing on Plaintiffs' Motion to Consolidate. Please file the original, and return to us a clocked copy of the Motion in the enclosed, self addressed, stamped envelope. Additionally, I am enclosing a check in the amount of $30.00 to cover the costs of filing.

If there are any problems with the filing please contact us immediately.

Very truly yours,

Erin D. McMahon
Paralegal to Lanny R. Zatzkis

REC'D C.P.
NOV 15 1999

EDM/dr
enclosures

REC'D C.P.
NOV - 9 1999

1 1 1 7 2 3 0 4 0\0

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

1999 APR 22 A 11: 27

LORETTA G. WHYTE
CLERK

**MINUTE ENTRY**
**DUVAL, J.**
**April 21, 1999**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **ASTORIA ENTERTAINMENT, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 98-3359** |
| **EDWIN W. EDWARDS** | **SECTION "K"(3)** |

Pending before the Court are the following motions:

(1) Motion to Dismiss for Plaintiff's Failure to State a Civil RICO Claims Against Defendant filed by Edward J. DeBartolo, Jr. ("DeBartolo");

(2) Motion to Stay the Civil Proceedings filed by the United States of America ("the Government");

(3) Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim Upon Which Relief Can Be Granted filed by Edwin W. Edwards, Andrew Martin and Gregory Tarver ("Edwards, Martin and Tarver"); and

(4) Motion to Dismiss for Lack of Jurisdiction filed by Robert Guidry.

The Court will first address the Motion to Stay Civil Proceedings. The Government has moved this Court to stay this matter because there is a pending indictment returned in the United States District Court for the Middle District of Louisiana styled, *United States of America v. Edwin*

DATE OF ENTRY APR 22 1999

___ Fee
___ Process
X Dktd
___ CtRmDep
___ Doc.No. 53

*Edwards, et al.*, Cr. Doc. No. 98-165-B-M2, upon which the instant civil case is based. Indeed, the plaintiff has incorporated by reference the Middle District indictment into its Civil RICO Statement. The Government contends that because the scope of civil discovery is far greater than in criminal discovery, there is a great potential that the integrity of the criminal prosecution may be impaired by Astoria's prosecution of its civil case. Thus, the Government contends that it is imperative that this matter be stayed pending the conclusion of the criminal trial. Furthermore, the plaintiff in this matter does not oppose such a stay.

The Court believes that it must stay these proceedings because of this overlap and potential conflict and notes that it has the authority to stay such civil proceedings pending resolution of criminal investigations. Campbell v. Eastland, 307 F.2d 478 (5th Cir. 1962), cert. denied, 371 U.S. 955 (1963). This decision then raises the question with respect to the disposition of the other pending motions to dismiss noted above.

The motion filed by DeBartolo was filed prior to the Motion to Stay and is under submission at this time. Plaintiff's opposition to that motion includes a request to allow it to amend the Complaint and to engage in discovery for that purpose. As this Court believes that it must stay this case, it would be unfair at this juncture to preclude plaintiff from at least one attempt to rectify the deficiencies in its complaint. Furthermore, in view of the fact that it is unclear how long the criminal matter shall be pending and the effect of that criminal matter on the issues presented herein, the Court believes that the better course at this time is to deny the DeBartolo motion, as well as all other motions, without prejudice to reurge them when the case is re-opened. Accordingly,

**IT IS ORDERED** that the Government's Motion to Stay (Doc. 42) is **GRANTED**.

**IT IS FURTHER ORDERED** that DeBartolo's Motion to Dismiss for Plaintiff's Failure to State a Civil RICO Claim Against Defendant (Doc. 33), Edwards, Martin and Tarver's Motion to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 40), and Guidry's Motion to Dismiss for Lack of Jurisdiction are **DENIED without prejudice.**

**IT IS FURTHER ORDERED** that upon the re-opening of the subject civil action, plaintiff shall have 30 days to conduct the necessary discovery which was requested by it. No later than 40th day after this matter is reopened, plaintiff shall file its Amended Complaint addressing therein the deficiencies outlined in all of the above-noted motions to dismiss. Upon the filing of the Amended Complaint, defendants shall be allowed to re-urge their respective motions to dismiss filing supplemental memoranda addressing such Amended Complaint.

ZATZKIS & ASSOCIATES
SECOND FLOOR
700 CAMP STREET
NEW ORLEANS, LOUISIANA 70130-3702

LANNY R. ZATZKIS, LL.M.*+
KAREN D. McCARTHY

YVETTE A. D'AUNOY
ANDREW N. LEE
*IN TAXATION
+ADMITTED IN TEXAS & COLORADO

TEL: (504) 523-2266
FAX:(504) 593-9921

March 17, 2000

DOUG WELBORN
Clerk of Court
19th Judicial District Court
P.O. Box 1991
Baton Rouge, Louisiana 70821-1991

**By Federal Express**

POSTED
MAR 20 2000

Re: Al *Copeland v. Treasure Chest Casino*
19th JDC No. 464-607, Division "D"
Our File No. 4723-012

Dear Mr. Welborn:

Enclosed please find an original and two copies of a Motion to Stay with Incorporated Memorandum, which has been previously faxed to you. Please return a clocked copy of the Motion to Stay with Incorporated Memorandum in the enclosed, self addressed, stamped envelope. Additionally, I am enclosing a check in the amount of $129.00 to cover the costs of filing and service.

If there are any problems with the filing of this Motion, please contact us immediately.

Very truly yours,

Erin D. McMahon
Paralegal to Lanny R. Zatzkis

EDM/dr
enclosures

REC'D C.P.
MAR 20 2000

REC'D C.P.
MAR 27 2000

J 3 3 ? 3 0 5 0 3 0

ZATZKIS & ASSOCIATES
SECOND FLOOR
700 CAMP STREET
NEW ORLEANS, LOUISIANA 70130-3702

LANNY R. ZATZKIS, LL.M.*+
KAREN D. McCARTHY

TEL: (504) 523-2266
FAX:(504) 593-9921

YVETTE A. D'AUNOY
ANDREW N. LEE
*IN TAXATION
+ADMITTED IN TEXAS & COLORADO

March 14, 2000

DOUG WELBORN
Clerk of Court
19th Judicial District Court
P.O. Box 1991
Baton Rouge, Louisiana 70821-1991

FAXED

POSTED
MAR 2 0 2000

**By fax 225-389-3392**

Re: *Alvin C. Copeland v. Treasure Chest Casino, et al.*
19th JDC No. 464-607, Division "D"
Our File No. 4723-011

Dear Mr. Welborn:

Enclosed please find a faxed copy of a Motion to Stay with Incorporated Memorandum.

If there are any problems with the filing please contact us immediately.

Very truly yours,

Erin D. McMahon
Paralegal to Lanny R. Zatzkis

EDM/dr
enclosures

# DEPARTMENT OF SUIT ACCOUNTING
## 19TH JUDICIAL DISTRICT COURT
### CLERK OF COURTS

P.O. BOX 1991 BATON ROUGE, LA 70821-1991 (225)389-3982

***PLEASE ATTACH THIS RECEIPT TO YOUR ORIGINAL***
IF FILING IN PERSON, NOTIFY FILING CLERK OF PREVIOUS FAX

## FAX RECEIPT

Fax Number: (225) 389-3392
Department: ______
To: L. Zotzkis
Suit Number: 476,4607

Phone Number: ( ) ______
Date: 3-14-00
From: ect
Division: D

Copland vs. Treasure Chest

Item(s) Received: mt. to stay

Amount Due (includes a $5.00 Fax Fee and $.50 per page) $ 129.00

The Clerk of Court's office has received, by facsimile transmission, documents in the above referenced case. It has been filed as of this date. In accordance with R.S. 13:850 (B), the original and applicable fees shall be forwarded to this office within five (5) days.

In accordance with 13:850 (B) (3), a transmission fee of $5.00 shall be forwarded to the Clerk of Court with the original document. The fax filing fee is necessary even when filing *in forma pauperis*.

**NO FURTHER ACTION WILL BE TAKEN WITH THIS DOCUMENT UNTIL THE ORIGINAL AND NECESSARY FILING FEES ARE RECEIVED IN THIS OFFICE.**

---

**SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX-ISSUANCE IS BY ORIGINAL REQUESTS, ONLY!**

---

*****PLEASE ATTACH THIS RECEIPT TO YOUR ORIGINAL*****



U.S. Department of Justice

*United States Attorney*
*Eastern District of Louisiana*

*New Orleans, Louisiana 70130*

March 2, 2000

Mr. Benjamin R. Slater, III
Mr. Donald J. Miester, Jr.
Slater Law Firm
Suite 2600 Poydras Center
650 Poydras Street
New Orleans, La. 70130

Re: Copeland v. Treasure Chest Casino, L.L.C., et. al.

Dear Messrs. Slater and Miester:

This letter is a follow up to our earlier discussions regarding the above entitled matter and the voluntary stay of those proceedings by the parties pending the completion of the federal criminal trial, U.S. v. Edwin W. Edwards, et. al., which is currently in progress in the Middle District of Louisiana before U.S. District Judge Frank J. Polozola.

My understanding is that the voluntary stay of the above entitled proceedings pending before La. District Court Judge Janice Clark expires in mid-March 2000. Please be advised that the criminal trial cited above will not conclude prior to the date set for the expiration of the stay in the state civil case. All of the factors leading to the issuance of the first voluntary stay still exist and will continue to exist for some time into the future. While Mr. Robert Guidry has testified, he is still under subpoena and is still subject to the sequestration order issued by the federal court in the criminal matter, as are all of the other witnesses who have been called or will be called.

For the reasons noted herein, please advise at your earliest opportunity, whether or not the stay will be extended by joint agreement of the parties to this civil litigation. If a voluntary agreement to extend the stay is not going to be executed or an extension of the stay is not granted by the state court prior to the expiration of the current stay, I will have no choice but to file for a stay of these state civil proceedings with Judge Polozola. As you are aware, every pending civil suit, involving any of the parties/witnesses in the criminal proceedings has been stayed voluntarily or by order of the federal court.

Finally, as you are undoubtedly aware, I am working out of an off-site office in Baton Rouge, La. My phone number is 225-389-0581 and fax number is 225-389-0572. Kindly confirm any

LETTER TO Mr. Benjamin R. Slater, III.
Mr. Donald J. Miester, Jr.
Page 2

extension of the stay to me in writing via fax. If you have any questions or wish to discuss this matter, please do not hesitate to call.

Sincerely,

Fred P. Harper, Jr.

Fred P. Harper, Jr.
Deputy Chief, Criminal Division
U.S. Attorney's Office, Eastern District of La.

** TOTAL PAGE.02 **

* * * COMMUNICATION RESULT REPORT ( MAR. 14. 2000 . 4AM ) * * *

TTI E.B.R. CLERK OF CRT

| ILE MODE | OPTION | ADDRESS (GROUP) | RESULT | PAGE |
|---|---|---|---|---|
| 391 MEMORY TX | | 915045939921 | OK | 1/1 |

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL　　E-2) BUSY
E-3) NO ANSWER　　E-4) NO FACSIMILE CONNECTION

# DEPARTMENT OF SUIT ACCOUNTING
# 19TH JUDICIAL DISTRICT COURT
## CLERK OF COURTS

P.O. BOX 1991　　BATON ROUGE, LA 70821-1991　　(225)389-3982

*****PLEASE ATTACH THIS RECEIPT TO YOUR ORIGINAL*****
**IF FILING IN PERSON, NOTIFY FILING CLERK OF PREVIOUS FAX**

## FAX RECEIPT

Fax Number: (225) 389-3392　　Phone Number: ( )
Department:　　Date: 3-14-00
To: L. Zotzkis　　From: act
Suit Number: 476,4607　　Division: D

Copeland vs. Treasure Chest

Item(s) Received: mt. to stay

Amount Due (includes a $5.00 Fax Fee and $.50 per page) $ 129.00



DEPARTMENT OF SUIT ACCOUNTING
19TH JUDICIAL DISTRICT COURT
CLERK OF COURTS
P.O. BOX 1991 BATON ROUGE, LA 70821-1991 (225)389-3982

***PLEASE ATTACH THIS RECEIPT TO YOUR ORIGINAL***
IF FILING IN PERSON, NOTIFY FILING CLERK OF PREVIOUS FAX

**FAX RECEIPT**

Fax Number: (225) 389-3392
Department:
To: L. Zatzkis
Suit Number: 464607

Phone Number: ( )
Date: 3-14-00
From: act
Division: D

Copland Vs. Treasure Chest

Item(s) Received: mt. to stay

Amount Due (includes a $5.00 Fax Fee and $.50 per page) $ 129.00

The Clerk of Court's office has received, by facsimile transmission, documents in the above referenced case. It has been filed as of this date. In accordance with R.S. 13:850 (B), the original and applicable fees shall be forwarded to this office within five (5) days.

In accordance with 13:850 (B) (3), a transmission fee of $5.00 shall be forwarded to the Clerk of Court with the original document. The fax filing fee is necessary even when filing *in forma pauperis*.

**NO FURTHER ACTION WILL BE TAKEN WITH THIS DOCUMENT UNTIL THE ORIGINAL AND NECESSARY FILING FEES ARE RECEIVED IN THIS OFFICE.**

SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX–ISSUANCE IS BY ORIGINAL REQUESTS, ONLY!

***PLEASE ATTACH THIS RECEIPT TO YOUR ORIGINAL***

0 0 3 2 3 0 5 6 7 2 2

**ZATZKIS & ASSOCIATES**
SECOND FLOOR
700 CAMP STREET
NEW ORLEANS, LOUISIANA 70130-3702

LANNY R. ZATZKIS, LLM *+
KAREN D. MCCARTHY
~~YVETTE A. D'AUNOY~~
ANDREW N. LEE
*IN TAXATION
+ADMITTED IN TEXAS & COLORADO

TEL: (504) 523-2266
FAX: (504) 593-9921

# FACSIMILE COVER SHEET

TO: Clerk of Court, 19th JDC

FAX NO: 225-389-3392

FROM: ____ LANNY R. ZATZKIS ____ KAREN D. McCARTHY

____ YVETTE A. D'AUNOY ____ ANDREW N. LEE

✓ ERIN D. McMAHON

PAGES: 8 (including cover sheet)

date: 3-14-00 time sent: 10:15a

our file number & client name: Guidry 011

COMMENTS: please fax confirmation & fees due for this filing & (2) services.

PLEASE CALL **ERIN McMAHON** AT **(504) 523-2266** IF THERE IS ANY PROBLEM OR AN INCOMPLETE TRANSMISSION.

CONFIDENTIALITY NOTICE

THIS FACSIMILE TRANSMISSION (AND/OR THE DOCUMENTS ACCOMPANYING IT) MAY CONTAIN CONFIDENTIAL INFORMATION BELONGING TO THE SENDER WHICH IS PROTECTED BY THE ATTORNEY-CLIENT PRIVILEGE. THE INFORMATION IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY NAMED ABOVE. IF YOU ARE NOT THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISCLOSURE, COPYING, DISTRIBUTION, OR THE TAKING OF ANY ACTION IN RELIANCE ON THE CONTENTS OF THIS INFORMATION IS STRICTLY PROHIBITED. IF YOU HAVE RECEIVED THIS TRANSMISSION IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE OR ARRANGE FOR THE RETURN OF THE DOCUMENTS.

ZATZKIS & ASSOCIATES
SECOND FLOOR
700 CAMP STREET
NEW ORLEANS, LOUISIANA 70130-3702

LANNY R. ZATZKIS, LL.M.*+
KAREN D. McCARTHY

TEL: (504) 523-2266
FAX:(504) 593-9921

YVETTE A. D'AUNOY
ANDREW N. LEE
*IN TAXATION
+ADMITTED IN TEXAS & COLORADO

March 14, 2000

DOUG WELBORN
Clerk of Court
19th Judicial District Court
P.O. Box 1991
Baton Rouge, Louisiana 70821-1991

**By fax 225-389-3392**

Re: *Alvin C. Copeland v. Treasure Chest Casino, et al.*
19th JDC No. 464-607, Division "D"
Our File No. 4723-011

Dear Mr. Welborn:

Enclosed please find a faxed copy of a Motion to Stay with Incorporated Memorandum.

If there are any problems with the filing please contact us immediately.

Very truly yours,

Erin D. McMahon
Paralegal to Lanny R. Zatzkis

EDM/dr
enclosures

RECEIVED TIME MAR. 14. 10:11AM

0 0 3 2 3 0 5 0 7 0 4

**19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

**NO. 464607** **DIV. "D"** **DOCKET**

**ALVIN C. COPELAND**

**VERSUS**

**TREASURE CHEST CASINO, L.L.C. and ROBERT GUIDRY**

COST OK Amt.
MAR 1 4 2000
BY
BY: CLERK OF COURT

**FILED:**____________________ ________________________

**DEPUTY CLERK**

**MOTION TO STAY WITH INCORPORATED MEMORANDUM**

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Robert Guidry, who hereby requests that a stay be ordered in this action until the return of a jury verdict in the currently pending federal criminal proceeding United States of America v. Edwin Edwards et al, Criminal Docket No. 98-165-B-M2 in the United States District Court for the Middle District of Louisiana, plus an additional fifteen (15) days for the defendants to file responsive pleadings, and with respect represents:

I.

The plaintiff herein has instituted an action against the defendants herein, Robert Guidry and Treasure Chest, L.L.C., for alleged damages arising from the defendants' alleged wrongfully seeking and obtaining of a license to operate a riverboat gaming vessel in the State of Louisiana.

II.

Currently underway in the United States District Court for the Middle District of Louisiana is the criminal proceeding United States of America v. Edwin Edwards et al., Criminal Docket No. 98-165-B-M2, which commenced on January 10, 2000. The defendant herein, Robert Guidry, the former majority owner of Treasure Chest, L.L.C., is a government witness in the criminal action. Mr. Guidry has testified in the aforementioned criminal trial as part of the prosecution's case-in-chief. However, Mr. Guidry remains under subpoena and has been subject to a sequestration order by the court to refrain from commenting on any issues related to the aforementioned criminal trial.

III.

Previously, the parties herein entered into a Consent Judgment staying these proceedings

RECEIVED TIMEMAR. 14. 10:11AM

0 0 3 2 9 0 5 0 / 9 5

up to and including March 14, 2000, which was signed by this Court on December 7, 1999. The parties entered into the aforementioned stipulation to allow a reasonable time for the conclusion of the federal criminal trial. However, the federal criminal trial will not conclude prior to the lapse of the stay.

IV.

Fred Harper of the United States Attorney's office, in a letter dated March 2, 2000 to counsel for plaintiffs requesting the plaintiffs herein enter into joint agreement extending the stay until the conclusion of the federal criminal trial (attached), represented:

> All of the factors leading to the issuance of the first voluntary stay still exist and will continue to exist for some time into the future. While Mr. Guidry has testified, he is still under subpoena and is still subject to the sequestration order issued by the federal court in the criminal matter, as are all of the other witnesses who have been called or will be called.

V.

The Defendant avers that commencement of this civil proceeding requiring the Defendant to file responsive pleadings while the federal criminal trial proceeds will or may violate the oral subpoena and/or the sequestration order, which may interfere with or impede the federal criminal trial. Defendant further avers that an extension of the stay until after the return of the jury verdict plus an additional fifteen days will remedy the potential for conflict between the civil and criminal proceedings.

VI.

The Defendant, Robert Guidry, therefore requests that this Honorable Court extend the stay until the return of a jury verdict in the federal criminal trial plus an additional fifteen days for the Defendants to prepare responsive pleadings.

WHEREFORE, the Defendant, Robert Guidry, prays that the plaintiff be ordered to appear and show cause on March 27, 2000 at 9:00 o'clock a.m. why this Honorable Court should not issue an Order staying these proceedings, effective immediately and remaining in full force and effect until the return of a jury verdict plus an additional fifteen (15) days for the defendants to file responsive pleadings, in the criminal matter United States of America v. Edwin Edwards et al, Criminal Docket No. 98-165-

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 59 of 221
RECEIVED TIMEMAR 14 10:11AM

9 3 2 3 0 5 0 7

B-M2 in the United States District Court for the Middle District of Louisiana.

RESPECTFULLY SUBMITTED:

LANNY R. ZATZKIS, T.A. (#13781)
KAREN D. McCARTHY (#14193)
YVETTE A. D'AUNOY (#22761)
ANDREW N. LEE (#24154)
ZATZKIS & ASSOCIATES
700 Camp Street
New Orleans, Louisiana 70130
Telephone: (504) 523-2266
Attorneys for Robert Guidry

Please serve:
**Alvin C. Copeland**
through his attorney of record:
BENJAMIN R. SLATER, III
650 Poydras Street
Suite 2600
New Orleans, Louisiana

**Treasure Chest, L.L.C.**
through its attorney of record:
PAUL S. WEST
Ninth Floor
One American Place
Baton Rouge, Louisiana 70825

RECEIVED TIMEMAR 14 10:11AM

0 0 3 2 8 0 5 0 . 0 /

**19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

**NO. 464607** **DIV. "D"** **DOCKET**

**ALVIN C. COPELAND**

**VERSUS**

**TREASURE CHEST CASINO, L.L.C. and ROBERT GUIDRY**

**FILED:**______________________ ______________________________
**DEPUTY CLERK**

**ORDER**

**IT IS ORDERED** that the plaintiff, Alvin Copeland, appear and show cause on March 27, 2000, at 9:00 o'clock a.m. why this Court should not extend the stay for these proceedings, effective immediately and remaining until the return of a jury verdict in the criminal matter United States of America v. Edwin Edwards et al, Criminal Docket No. 98-165-B-M2 in the United States District Court for the Middle District of Louisiana, plus an additional fifteen (15) days for the defendants herein to file responsive pleadings

BATON ROUGE, LOUISIANA, this _______ day of March, 2000.

______________________________
JUDGE

RECEIVED TIMEMAR. 14. 10:11AM

9 9 9 3 3 1 2 3 . 0 0

19TH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

| | | |
|---|---|---|
| **ALVIN C. COPELAND** | * | **DOCKET NO.** 464607 |
| **VERSUS** | * | **DIVISION " "** D |
| **TREASURE CHEST CASINO, L.L.C., and ROBERT J. GUIDRY** | * | **JURY TRIAL REQUESTED** |
| | * | |

**FILED:** ______________ ______________________

**DEPUTY CLERK**

**Petition for Damages**

**NOW INTO COURT**, through undersigned counsel, comes plaintiff Alvin C. Copeland ("Copeland"), who respectfully represents the following:

**The Parties**

1.

Plaintiff Copeland, successor to American International Gaming Association, Inc. ("AIGA"), is a competent major and a resident of the Parish of Jefferson, State of Louisiana.

2.

At all pertinent times, AIGA was a Louisiana corporation with its principal place of business located in the Parish of Jefferson, State of Louisiana; Copeland was the sole shareholder of AIGA, and its net assets were transferred to him upon its dissolution. As detailed below, AIGA was an applicant seeking authorization to conduct gaming activities on a riverboat in accordance with the Louisiana Riverboat Economic Development and Gaming Control Act (hereinafter the "Act"), LSA-R.S. 4:501, *et seq.*

3.

Made defendants are Treasure Chest Casino, L.L.C. ("Treasure Chest"), a Louisiana limited liability company formed on August 27, 1993 that is registered to do and doing business in the State of Louisiana; and Robert J. Guidry ("Guidry"), a person of the full age of majority and a resident of Jefferson Parish, State of Louisiana. Defendant Robert J. Guidry was an original member and manager of Treasure Chest, along with Dick J. Guidry. Upon information and belief, Robert Guidry was also the President of Treasure Chest and/or Treasure Chest Casino, Inc. All of the below-referenced acts by Robert Guidry were

1)4090742000

**19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

**NO. 464-607** **DIVISION "D"**

**ALVIN C. COPELAND**

**-versus-**

**TREASURE CHEST CASINO, L.L.C. and ROBERT J. GUIDRY**

POSTED APR - 9 2001

COST OK Amt. 55.00 APR - 9 2001 BY DEPUTY CLERK OF COURT

**Filed:**________________________ **Deputy Clerk**

**NOTICE OF APPEAL**

**TO:**

Lanny R. Zatzkis, Esq.
ZATZKIS & ASSOCIATES
Suite 2750 Poydras Center
650 Poydras Street
New Orleans, LA 70130

Winston G. DeCuir, Esq.
DECUIR & CLARK, L.L.P.
1961 Government Street
Baton Rouge, LA 70806

Ralph Capitelli, Esq.
CAPITELLI & WICKER
Suite 2950 Energy Centre
1100 Poydras Street
New Orleans, LA 70163

Arthur A. Lemann, III, Esq.
ARTHUR A. LEMANN, III & ASSOCIATES
938 Lafayette Street, Suite 100
New Orleans, LA 70113

Benjamin R. Slater, III, Esq.
SLATER LAW FIRM
650 Poydras Street, Suite 2600
New Orleans, LA 70130

Paul S. West, Esq.
MCGLINCHEY STAFFORD
One American Place, 9th Floor
Baton Rouge, LA 70825

Stephen A. Quidd, Esq.
P. O. Box 67148
Baton Rouge, LA 70896

E. Barton Conradi, Esq.
LAW OFFICE OF E. BARTON CONRADI
343 Third Street
Suite 506
Baton Rouge, LA 70801

Michael A. Patterson, Esq.
THE LONG LAW FIRM
4041 Essen Lane, Suite 500
Baton Rouge, LA 70809

Notice is hereby given that Plaintiff, Alvin C. Copeland, hereby appeals to the Court of Appeal for the First Circuit from the Judgment rendered in favor of Defendants, Treasure Chest Casino, L.L.C. and Robert Guidry, on January 31, 2001, and signed on March 7, 2001.

FAX COPY FILED 4-6-01
ORIGINAL FILED 4-9-01

Respectfully submitted,

*CHOPIN, WAGAR, COLE, RICHARD, REBOUL & KUTCHER, L.L.P.*

By: ______________________

**ROBERT A. KUTCHER, Bar No. 7895, TA**
**NICOLE S. TYGIER, Bar No. 19814**
**VICKI A. TURKO, Bar No. 24677**
Two Lakeway Center, Suite 900
3850 N. Causeway Boulevard
Metairie, LA 70002
Telephone: (504) 830-3838

***Attorneys for Plaintiff, Alvin C. Copeland***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon all counsel of record in this proceeding by facsimile or by depositing a copy of same in the United States Mail, postage prepaid, this 6th day of April, 2001.

______________________



Doug Welborn
Clerk of Court
19th JUDICIAL DISTRICT COURT
Parish of East Baton Rouge
P.O. Box 1991
Baton Rouge, Louisiana 70821-1991
Phone (225) 389-3967
Fax (225) 389-3392

[illegible]

Regarding Case Number: C 464617 Div: [illegible]

[illegible] Orleans Parish Sheriff's Office
[illegible] Loyola Avenue
New Orleans, LA 70112-1109

PHONE: (504) 523-6143

[illegible] are enclosing herein Rule Nisi, or Motion to Disqualify Counsel in the above numbered suit to be served as indicated herein.

Please make your return(s) on the duplicate(s) enclosed, and find our check enclosed for payment of service.

Thank You,

Deputy Clerk of Court for
Doug Welborn, Clerk of Court

Date: ____________________

By: ____________________

1 1 3 0 1 7 0

RULE NISI

orm: C 0.3

No: C 464607 Div: 19th JUDICIAL DISTRICT COURT PARISH OF EAST BATON ROUGE STATE OF LOUISIANA

ALVIN C. COPELAND
vs Plaintiff

CASINO WEST CASINO, ET AL
Defendant

To: Alvin C Copeland
through Benjamin R Slater, III
650 Poydras Street, Suite 2600
New Orleans, La.

The DEFENDANT in this case filed a Motion to Disqualify Counsel which has been set for hearing. Certified copies of this document and the Court's order are attached.

You MUST come to Court at 09:30 o'clock AM. on the 16th day of October, 2000, at Room 804 in the Governmental Building, 222 St. Louis St., and show cause why:

...........WHY YOU SHOULD NOT COMPLY WITH THE ATTACHED ORDER..........

This Rule was issued by the Clerk of Court of East Baton Rouge Parish on the 6th day of October, 2000.

By: ______________
Deputy Clerk of Court for
Doug Welborn, Clerk of Court

SERVICE INFORMATION

Received on the ______ day of ______________, 20____ and on the ______ day ______________, 20____, served the above named party as follows:

PERSONAL SERVICE: on the party herein named
______________________________.

DOMICILIARY SERVICE: on the within named ____________________, by leaving the same at his domicile in this parish in the hands of ________________, a person of suitable age and discretion residing in said domicile
______________________________.

SECRETARY OF STATE: by tendering same to the within named, by handing same
______________________________________________.

DUE AND DILIGENT: After diligent search and inquiry, was unable to find the within named ______________________________ or his domicile, or anyone legally authorized to represent him.

RETURNED: Parish of ______________________________, this __________ day ______________, 20____.

SERVICE: $__________
MILEAGE: $__________
TOTAL: $__________

______________________________
Deputy Sheriff
Parish of East Baton Rouge, Louisiana



NEW ORLEANS
HOUSTON
JACKSON
LAKE PROVIDENCE
MONROE

NINTH FLOOR, ONE AMERICAN PLACE
BATON ROUGE, LA 70825
http://www.mcglinchey.com

TELEPHONE (225) 383-9000
FAX (225) 343-3076
DIRECT DIAL:

(225) 382-3619

DAN EDWARD WEST
dwest@mcglinchey.com

October 6, 2000

The Honorable Doug Welborn, Clerk of Court
NINETEENTH JUDICIAL DISTRICT COURT
PARISH OF EAST BATON ROUGE
222 St. Louis Street
Baton Rouge, Louisiana 70802

Re: Alvin C. Copeland v. Treasure Chest Casino, L.L.C. and Robert Guidry, Suit Number 464,607, Division D, Nineteenth Judicial District Court, Parish of East Baton Rouge, State of Louisiana
Our File Number 10128.0035

Dear Mr. Welborn:

Please find enclosed the original and two (2) copies of Treasure Chest Casino, L.L.C.'s Motion for Extension of Time Within Which to Plead, which I request that you file of record in the above-referenced matter. Also enclosed is our firm's check to cover the cost of filing this pleading. Upon filing, please provide our courier with one copy, stamped with recordation information. Thank you for your assistance in this matter.

Very truly yours,

MCGLINCHEY STAFFORD
A PROFESSIONAL LIMITED LIABILITY COMPANY

Barbara S. Mitchell
Secretary to Paul S. West

/bsm
Enclosure
Copy to All Counsel of Record (See Attached)

REC'D C.P.



The Honorable Doug Welborn, Clerk of Court
NINETEENTH JUDICIAL DISTRICT COURT
PARISH OF EAST BATON ROUGE
October 6, 2000
Page 2

Copy to

Lanny R. Zatzkis, Esquire
ZATZKIS & ASSOCIATES
700 Camp Street
New Orleans, Louisiana 70130

Michael A. Patterson, Esquire
THE LONG LAW FIRM
4041 Essen Lane, Suite 500
Baton Rouge, Louisiana 70809

E. Barton Conradi, Esquire
LAW OFFICES OF E. BARTON CONRADI
343 Third Street, Suite 506
Baton Rouge, Louisiana 70801

Stephen A. Quidd, Esquire
Post Office Box 67148
Baton Rouge, Louisiana 70896

Winston G. Decuir, Esquire
DECUIR & CLARK
1961 Government Street
Baton Rouge, Louisiana 70806

Benjamin R. Slater, Jr., Esquire
SLATER LAW FIRM
650 Poydras Street, Suite 2600
New Orleans, Louisiana 70130

0 1 1 9 1 5 4 2 1 0

RULE NISI

No: C 484607 Div: I
19th JUDICIAL DISTRICT COURT
PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA

[illegible] vs Plaintiff

[illegible] CASINO, ET AL. Defendant

TO: Alvin C Copeland
through Benjamin [illegible], III
[illegible] Poydras Street,
Suite [illegible]
New Orleans, LA.

The DEFENDANT in this case filed a Exception of No Cause of Action which has been set for hearing. Certified copies of this document and the Court's order are attached.

You MUST come to Court at 09:30 o'clock AM. on the 13th day of November, 2000, at Room 404 in the Governmental Building, 222 St. Louis St., and show cause why:

...........WHY YOU SHOULD NOT COMPLY WITH THE ATTACHED ORDER..........

This Rule was issued by the Clerk of Court of East Baton Rouge Parish on the 13th day of October, 2000.

By: [signature]
Deputy Clerk of Court for
Doug Welborn, Clerk of Court

SERVICE INFORMATION

Received on the ______ day of ______________, 20____ and on the ______ day of ______________, 20____, served the above named party as follows:

PERSONAL SERVICE: on the party herein named ______________________________.

DOMICILIARY SERVICE: on the within named ____________________, by leaving the same at his domicile in this parish in the hands of ________________, a person of suitable age and discretion residing in said domicile ______________________________.

SECRETARY OF STATE: by tendering same to the within named, by handing same to ______________________________.

DUE AND DILIGENT: After diligent search and inquiry, was unable to find the within named ______________________________ or his domicile, or anyone legally authorized to represent him.

RETURNED: Parish of ______________________________, this __________ day of ______________, 20____.

SERVICE: $__________
MILEAGE: $__________
TOTAL: $__________

______________________________
Deputy Sheriff
Parish of East Baton Rouge, Louisiana

0 1 0 1 9 1 5 5 0 1 1

RULE NISI

Copeland v. Louisiana Chest Clinic, et al.

| | |
|---|---|
| CRAIG C. COPELAND vs Plaintiff | No: C 484687 Div: C |
| | 19th JUDICIAL DISTRICT COURT |
| | PARISH OF EAST BATON ROUGE |
| | STATE OF LOUISIANA |
| LOUISIANA CHEST CLINIC, ET AL Defendant | |

TO: Alvin C Copeland
through Benjamin R Slater, III
650 Poydras Street,
Suite 2600
New Orleans, La.

The DEFENDANT in this case filed a Exception of no Right of Action or in the Alternative, Exception of Vagueness which has been set for hearing. Certified copies of this document and the Court's order are attached.

You MUST come to Court at 09:30 o'clock AM. on the 13th day of November, 2000, at Room 904 in the Governmental Building, 222 St. Louis St., and show cause if any:

............WHY YOU SHOULD NOT COMPLY WITH THE ATTACHED ORDER..........

This rule was issued by the Clerk of Court of East Baton Rouge Parish on the 13th day of October, 2000.

By: ________________________________
Deputy Clerk of Court for
Doug Welborn, Clerk of Court

SERVICE INFORMATION

Received on the ______ day of ______________, 20____ and on the ______ day of ______________, 20____, served the above named party as follows:

PERSONAL SERVICE: on the party herein named
at ________________________________.

DOMICILIARY SERVICE: on the within named ____________________, by leaving the same at his domicile in this parish in the hands of ________________, a person of suitable age and discretion residing in said domicile
at ________________________________.

SECRETARY OF STATE: by tendering same to the within named, by handing same to ____________________________________________.

DUE AND DILIGENT: After diligent search and inquiry, was unable to find the within named ________________________________ or his domicile, or anyone legally authorized to represent him.

RETURNED: Parish of ________________________________, this __________ day of ______________, 20____.

SERVICE: $__________
MILEAGE: __________
TOTAL: $__________

________________________________
Deputy Sheriff
Parish of East Baton Rouge, Louisiana

0 1 3 1 9 1 5 4 7 0 0

RULE NISI

CERT 1 OF 7

No: C 484607 Div: D
19th JUDICIAL DISTRICT COURT
PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA

ALVIN L. COPELAND
vs Plaintiff

TREASURE CHEST CASINO, ET AL
Defendant

TO: Alvin L Copeland
through Benjamin R Slater, III
650 Poydras Street,
Suite 2600
New Orleans, La.

The DEFENDANT in this case filed a Exception of Precription of Plaintiff's Civil Rico Claim which has been set for hearing. Certified copies of this document and the Court's order are attached.

You MUST come to Court at 09:30 o'clock AM. on the 13th day of November, 2000, at Room 804 in the Governmental Building, 222 St. Louis St., and show cause why:

............WHY YOU SHOULD NOT COMPLY WITH THE ATTACHED ORDER.........

This Rule was issued by the Clerk of Court of East Baton Rouge Parish on the 13th day of October, 2000.

By: ______________
Deputy Clerk of Court for
Doug Welborn, Clerk of Court

SERVICE INFORMATION

Received on the ______ day of ______________, 20____ and on the ______ day of ______________, 20____, served the above named party as follows:

PERSONAL SERVICE: on the party herein named
______________________________.

DOMICILIARY SERVICE: on the within named ____________________, by leaving the same at his domicile in this parish in the hands of ________________, a person of suitable age and discretion residing in said domicile
______________________________.

SECRETARY OF STATE: by tendering same to the within named, by handing same to ________________________________________.

DUE AND DILIGENT: After diligent search and inquiry, was unable to find the within named ________________________________ or his domicile, or anyone legally authorized to represent him.

RETURNED: Parish of ______________________________, this __________day of ______________, 20____.

SERVICE: $__________
MILEAGE: $__________
TOTAL: $__________

________________________________
Deputy Sheriff
Parish of East Baton Rouge, Louisiana

RULE NISI

No: C 464607 Div: [illegible]
19th JUDICIAL DISTRICT COURT
PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA

[illegible] — Plaintiff

v-

[illegible], ET AL — Defendant

[illegible]
through Benjamin [illegible] Slater, III
[illegible] Street, Suite [illegible]
New Orleans, La.

ENTERED
PAPER | RETURN
1 | 9105 | 01
SERIAL NO. | DEPUTY | PARISH

The DEFENDANT in this case filed a **Motion to Disqualify Counsel** which has been set for a hearing. Certified copies of this document and/or the Court's order are attached.

You MUST come to Court at 09:30 o'clock AM. on the 16th day of October, 2000, at Room 804 in the Governmental Building, 222 St. Louis St., and show cause why:

..........WHY YOU SHOULD NOT COMPLY WITH THE ATTACHED ORDER..........

This Rule was issued by the Clerk of Court of East Baton Rouge Parish on the 6th day of October, 2000.

By: [signature]
Deputy Clerk of Court for
Doug Welborn, Clerk of Court

CERTIFIED TRUE COPY 06385
BY ______ DEPUTY CLERK [illegible]
CLERK OF [illegible] PARISH

OCT 13 2:33 PM '00

SERVICE INFORMATION

Received on the 16 day of October, 2000 and on the 17 day of October, 2000, served the above named party as follows:

PERSONAL SERVICE: on the party herein named at Benjamin Slater, III

DOMICILIARY SERVICE: on the within named ______, by leaving the same at his domicile in this parish in the hands of ______, a person of suitable age and discretion residing in said domicile at ______.

SECRETARY OF STATE: by tendering same to the within named, by handing same to ______.

DUE AND DILIGENT: After diligent search and inquiry, was unable to find the within named ______ or his domicile, or anyone legally authorized to represent him.

RETURNED: Parish of ______, this ______ day, ______, 20__.

SERVICE: $______
MILEAGE: $______
TOTAL: $______

RK [signature] 103
Deputy Sheriff
Parish of East Baton Rouge, Louisiana

19TH JUDICIAL DISTRICT COURT
00 OCT [illegible]
DEPUTY CLERK OF COURT

0 L I 0 3 2 6 2 0

RULE NISI

Elwin C. Copeland vs Plaintiff

Treasure Chest Casino, et al. Defendant

No: C 454607 Div: F
19th JUDICIAL DISTRICT COURT
PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA

ENTERED
PAPER 4 | 9105 | 01 RETURN
SERIAL NO. | DEPUTY | PARISH

TO: Alvin C Copeland
through Benjamin R Slater, III
610 Poydras Street,
Suite 2400
New Orleans, La.

The DEFENDANT in this case filed a Exception of no Right of Action or in the Alternative, Exception of Vagueness which has been set for hearing. Certified copies of this document and the Court's order are attached.

You MUST come to Court at 09:30 o'clock AM. on the 13th day of November, 2000, at Room 804 in the Governmental Building, 222 St. Louis St., and show cause why:

............WHY YOU SHOULD NOT COMPLY WITH THE ATTACHED ORDER............

This Rule was issued by the Clerk of Court of East Baton Rouge Parish on the 13th day of October, 2000.

By: [signature]
Deputy Clerk of Court for
Doug Welborn, Clerk of Court

OCT 17 2000 20 PM '00

SERVICE INFORMATION

Received on the 20 day of Oct, 2000 and on the 25 day of Oct, 2000, served the above named party as follows:

PERSONAL SERVICE: On the party herein named Atty Benjamin R. Slater III

DOMICILIARY SERVICE: on the within named ____________, by leaving the same at his domicile in this parish in the hands of ____________, a person of suitable age and discretion residing in said domicile at ____________.

SECRETARY OF STATE: by tendering same to the within named, by handing same to ____________.

DUE AND DILIGENT: After diligent search and inquiry, was unable to find the within named ____________ or his domicile, or anyone legally authorized to represent him.

RETURNED: Parish ____________, this ______ day of ______ 20__.

SERVICE: $______
MILEAGE: $______
TOTAL: $______

[signature]
Deputy Sheriff
Parish of East Baton Rouge, Louisiana

00655543 00 NOV -1 PM 2:23
DEPUTY CLERK OF COURT
19TH JUDICIAL DISTRICT
EAST BATON ROUGE PARISH
DEPUTY CLERK & RECORDER FOR DOUG WELBORN CLERK OF COURT E.B.R. PARISH

0 1 4 0 3 2 6 2 2 0

RULE NISI

ALVIN C. COPELAND vs Plaintiff

TREASURE CHEST CASINO, ET AL. Defendant

TO: Alvin C Copeland through Benjamin R Slater, III 650 Poydras Street, Suite 2600 New Orleans, La.

NO: C 484607 DIV: E
19th JUDICIAL DISTRICT COURT
PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA

ENTERED
PAPER RETURN
2 / 9705 / 01
SERIAL NO. DEPUTY PARISH

The DEFENDANT in this case filed a Eception of Precription of Plaintiff's Civil Rico Claim which has been set for hearing. Certified copies of this document and the Court's order are attached.

You MUST come to Court at 09:30 o'clock AM. on the 13th day of November, 2000, at Room 804 in the Governmental Building, 222 St. Louis St., and show cause why:

............WHY YOU SHOULD NOT COMPLY WITH THE ATTACHED ORDER............

This Rule was issued by the Clerk of Court of East Baton Rouge Parish on the 13th day of October, 2000.

By: [signature]
Deputy Clerk of Court for
Doug Welborn, Clerk of Court

00 OCT 17 PM 12:09

CERTIFIED TRUE COPY
0 0 6 5 5 4 2
DEPUTY CLERK & RECORDER FOR
DOUG WELBORN
CLERK OF COURT E.B.R. PARISH

SERVICE INFORMATION

Received on the 20 day of OCT, 2000 and on the 25 day of OCT, 2000, served the above named party as follows:

PERSONAL SERVICE: on the party herein named ATTY BENJAMIN SLATER III

DOMICILIARY SERVICE: on the within named ____________________, by leaving the same at his domicile in this parish in the hands of ________________, a person of suitable age and discretion residing in said domicile ____________________.

SECRETARY OF STATE: by tendering same to the within named, by handing same to ________________________________________.

DUE AND DILIGENT: After diligent search and inquiry, was unable to find the within named ____________________ or his domicile, or anyone legally authorized to represent him.

RETURNED: Parish of ______________________________, this __________ day of ____________, 20___.

SERVICE: $__________
MILEAGE: $__________
TOTAL: $__________

[signature] #522
Deputy Sheriff
Parish of East Baton Rouge, Louisiana

00 NOV 2 PM 2:23
19TH JUDICIAL DISTRICT COURT EAST BATON ROUGE PARISH
[signature]
DEPUTY CLERK OF COURT

01103262169

RULE NISI

ALVIN C. COPELAND vs Plaintiff

CASINO ... CHEST CASINO, ET AL Defendant

No: C 464567 Div: [illegible]
19th JUDICIAL DISTRICT COURT
PARISH OF EAST BATON ROUGE
STATE OF LOUISIANA

PAPER 3 ENTERED 9/05/01 RETURN
SERIAL NO. DEPUTY PARISH

To: Alvin C Copeland
through Benjamin R Slater, III
[illegible] Poydras Street,
Suite 2600
New Orleans, La.

The DEFENDANT in this case filed a Exception of No Cause of Action which [illegible] been set for hearing. Certified copies of this document and the Court's [ord]er are attached.

You MUST come to Court at 09:30 o'clock AM. on the 13th day of November, [20]00, at Room 804 in the Governmental Building, 222 St. Louis St., and show [ca]use why:

...........WHY YOU SHOULD NOT COMPLY WITH THE ATTACHED ORDER...........

This Rule was issued by the Clerk of Court of East Baton Rouge Parish on [the] 13th day of October, 2000.

BY: Deputy Clerk of Court for
Doug Welborn, Clerk of Court

OCT 20 PM '00

CERTIFIED TRUE COPY
DEPUTY CLERK & RECORDER FOR
DOUG WELBORN
CLERK OF COURT E.B.R. PARISH

SERVICE INFORMATION

[Re]ceived on the 20 day of OCT, 2000 and on the 25 day [of] OCT, 2000 served the above named party as follows:

PERSONAL SERVICE: on the party herein named
Atty Benjamin Slater III

DOMICILIARY SERVICE: on the within named ________, by leaving the [same] at his domicile in this parish in the hands of ________, a person [of] suitable age and discretion residing in said domicile

SECRETARY OF STATE: tendering same to the within named, by handing same ________

DUE AND DILIGENT: After diligent search and inquiry, was unable to find the [with]in named ________ or his domicile, or anyone [leg]ally authorized to represent him.

RETURNED: Parish of ________, this ________ day ________, 20__.

00 NOV -2 PM 2:23
DEPUTY CLERK OF COURT
19TH JUDICIAL DISTRICT
EAST BATON ROUGE PARISH

SERVICE: $________
MILEAGE: $________
TOTAL: $________

Capt [signature] #522
Deputy Sheriff
Parish of East Baton Rouge, Louisiana

01110090424

# CHOPIN, WAGAR, COLE, RICHARD, REBOUL & KUTCHER, LLP

Attorneys at Law

Richard A. Chopin †‡
Nelson W. Wagar, III †‡
Kevin L. Cole ‡
Thomas M. Richard
Brian L. Reboul
Robert A. Kutcher ±
Elizabeth Smyth Sirgo
Nicole S. Tygier

*Of Counsel*
John B. Krentel

Two Lakeway Center - Suite 900
3850 North Causeway Boulevard
Metairie, Louisiana 70002
Telephone: 504-830-3838
Telefax: 504-836-9540

Three Sanctuary Boulevard - Suite 301
Mandeville, Louisiana 70471
Telephone: 504-674-6680
Telefax: 504-674-6681

Michael L. Cohen
Vicki A. Turko ‡
Diana L. Tonagel
Patricia D. Tunmer
John S. Bair
Judith A. Miller
Matthew D. Monson
Keegan E. Chopin
Paolo J. Messina
Cynthia J. Thomas §°

† Professional Corporation
‡ Also Admitted in Texas
± Also Admitted in New York
§ Also Admitted in D.C.
° Also Admitted in Puerto Rico

**Writer's Direct Numbers:**
**(504) 830-3824 Phone**
**(504) 836-9573 Fax**
**ntygier@chopin.com**

**Please Reply to Metairie Office**

November 9, 2000

***Via Facsimile and Overnight Mail***

Clerk of Court
19th Judicial District Court
Parish of East Baton Rouge
222 St. Louis Street
Baton Rouge, LA 70802

***Re:*** ***Alvin C. Copeland v.***
***Treasure Chest Casino, LLC and Robert J. Guidry***
***19th JDC No. 464-607(D)***
***Our File No. 245.2433***

Dear Sir/Madam:

Enclosed please find the original and copies of the Memorandum in Opposition to Treasure Chest Casino's Peremptory Exception of No Cause of Action, which we ask that you please fax file in the above captioned matter on behalf of plaintiff, Alvin C. Copeland.

Also enclosed is our check in the amount of $50.00 to cover the court costs incurred as a result of this filing. Please return a conformed copy to the undersigned.

Should you have any questions, please do not hesitate to contact me.

RECEIVED
NOV 10 2000
SUIT ACCNTG.
19TH JUDICIAL COURT

01100904125

Yours very truly,

Nicole S. Tygier

NST/jjw
***Enclosures***

cc: The Honorable Janice Clark *(w/enclosure via facsimile and Overnight Mail)*
Lanny R. Zatzkis, Esq. *(w/enclosure via facsimile and U.S. Mail)*
Winston DeCuir, Esq. *(w/enclosure via facsimile and U.S. Mail)*
Ralph Capitelli, Esq. *(w/enclosure via facsimile and U.S. Mail)*
Arthur A. Lemann, III, Esq. *(w/enclosure via facsimile and U.S. Mail)*
Paul S. West, Esq. *(w/enclosure via facsimile and U.S. Mail)*



# DOUG WELBORN

## CLERK OF COURT

19TH JUDICIAL DISTRICT
PARISH OF EAST BATON ROUGE

Suit Accounting Dept.
P. O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3980
Fax: (225) 389-3392
www.ebrclerkofcourt.org

## FAX RECEIPT

From: Suit Accounting Department
Fax Number: (225) 389-3392
To: R. Ritchie

Date: 11-9-00
Suit No.: 464607
Division: D

Copeland vs. Treasure Chest

Item(s) Received: memo

Amount Due (includes $5.00 Fax Fee and $.50 per page) $ 68.50

The Clerk of Court's office has received, by facsimile transmission, documents in the above referenced case. It has been filed as of this date. In accordance with R.S. 13:850 (B), the original and applicable fees should be forwarded to this office within five (5) days.

In accordance with 13:850 (B) (3), a transmission fee of $5.00 should be forwarded to the Clerk of Court with the original document. The fax filing fee is necessary even if filing in forma pauperis.

**NO FURTHER ACTION WILL BE TAKEN WITH THIS DOCUMENT UNTIL THE ORIGINAL AND NECESSARY FILING FEES ARE RECEIVED IN THIS OFFICE.**

---

**SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX-ISSUANCE BY ORIGINAL REQUESTS ONLY!**

---

**PLEASE ATTACH THIS RECEIPT TO YOUR ORIGINAL. IF FILING IN PERSON, NOTIFY FILING CLERK OF PREVIOUS FAX.**

Tracy Viola
*Deputy Clerk of Court for*
*Doug Welborn, Clerk of Court*

Acct. Dept. Form #6
Rev. 1/2000

1100905100 * * * CO[...] [...]CATION RESULT REPORT ( NOV. 9.2[...] [...]:34PM ) * * *
TTI EBRCLERKOFCOURT

| [...]LE MODE | OPTION | ADDRESS (GROUP) | RESULT | PAGE |
|---|---|---|---|---|
| [...]51 MEMORY TX | | 915048369540 | OK | P. 1/1 |

Posted

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL
E-3) NO ANSWER
E-2) BUSY
E-4) NO FACSIMILE CONNECTION

# DOUG WELBORN
## CLERK OF COURT
19TH JUDICIAL DISTRICT
PARISH OF EAST BATON ROUGE

Suit Accounting Dept.
P. O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392
www.ebrclerkofcourt.org

## FAX RECEIPT

From: Suit Accounting Department
Fax Number: (225) 389-3392
To: R. Kutchin
Date: 11-9-00
Suit No.: 4[...]607
Division: D

Copeland vs. Treasure Chest

Item(s) Received: memo

Amount Due (includes $5.00 Fax Fee and $.50 per page) $ 68.50

The Clerk of Court's office has received, by facsimile transmission, documents in the above referenced case. It has been filed as of this date. In accordance with R.S. 13:850 (B), the original and applicable fees should be forwarded to this office within five (5) days.

In accordance with 13:850 (B) (3), a transmission fee of $5.00 should be forwarded to the Clerk of Court with the original document. The fax filing fee is n[...]



# DOUG WELBORN
CLERK OF COURT

19TH JUDICIAL DISTRICT
PARISH OF EAST BATON ROUGE

Suit Accounting Dept.
P. O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392

www.ebrclerkofcourt.org

## FAX RECEIPT

From: Suit Accounting Department
Fax Number: (225) 389-3392
To: R. Kitchen

Date: 11-9-00
Suit No.: 464607
Division: D

Copeland vs. Treasure Chest

Item(s) Received: memo

Amount Due (includes $5.00 Fax Fee and $.50 per page) $ 68.50

The Clerk of Court's office has received, by facsimile transmission, documents in the above referenced case. It has been filed as of this date. In accordance with R.S. 13:850 (B), the original and applicable fees should be forwarded to this office within five (5) days.

In accordance with 13:850 (B) (3), a transmission fee of $5.00 should be forwarded to the Clerk of Court with the original document. The fax filing fee is necessary even if filing in forma pauperis.

**NO FURTHER ACTION WILL BE TAKEN WITH THIS DOCUMENT UNTIL THE ORIGINAL AND NECESSARY FILING FEES ARE RECEIVED IN THIS OFFICE.**

---

**SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX- ISSUANCE BY ORIGINAL REQUESTS ONLY!**

---

**PLEASE ATTACH THIS RECEIPT TO YOUR ORIGINAL.**
**IF FILING IN PERSON, NOTIFY FILING CLERK OF PREVIOUS FAX.**

Tracy Viola

***Deputy Clerk of Court for***
***Doug Welborn, Clerk of Court***

Acct. Dept. Form #6

Rev. 1/2000

# CHOPIN, WAGAR, COLE, RICHARD, REBOUL & KUTCHER, LLP

Attorneys at Law

# FAX COVER SHEET

**THIS COMMUNICATION IS CONFIDENTIAL AND INTENDED ONLY FOR THE ADDRESSEE. ANY DISTRIBUTION OR DUPLICATION OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU RECEIVE THIS TELECOPY IN ERROR, PLEASE CALL SENDER IMMEDIATELY.**

DATE: November 9, 2000

**A TOTAL OF 27 PAGES (INCLUDING THIS COVER SHEET) IS BEING SENT**

Sender's Direct Dial: **(504) 830-3820/3824**
Sender: **Robert A. Kutcher/Nicole S. Tygier**
File No.: **245.2433**

TO: **Clerk's Office, 19th JDC**

FAX NO.: **1 (225) 389-3392**

RE: **Alvin C. Copeland v. Treasure Chest Casino, L.L.C. and Robert J. Guidry**

COMMENTS:

Should you have any problems receiving this transmission, call Julie Wisecarver at (504) 830-3987.

0111009051 03

# CHOPIN, WAGAR, COLE, RICHARD, REBOUL & KUTCHER, LLP

Attorneys at Law

Richard A. Chopin †‡
Nelson W. Wagar, III †‡
Kevin L. Cole ‡
Thomas M. Richard
Brian L. Reboul
Robert A. Kutcher ±
Elizabeth Smyth Sirgo
Nicole S. Tygier

*Of Counsel*
John B. Krentel

Two Lakeway Center - Suite 900
3850 North Causeway Boulevard
Metairie, Louisiana 70002
Telephone: 504-830-3838
Telefax: 504-836-9540

Three Sanctuary Boulevard - Suite 301
Mandeville, Louisiana 70471
Telephone: 504-674-6680
Telefax: 504-674-6681

Michael L. Cohen
Vicki A. Turko ‡
Diana L. Tonagel
Patricia D. Tunmer
John S. Bair
Judith A. Miller
Matthew D. Monson
Keegan E. Chopin
Paolo J. Messina
Cynthia J. Thomas §°

† Professional Corporation
‡ Also Admitted in Texas
± Also Admitted in New York
§ Also Admitted in D.C.
° Also Admitted in Puerto Rico

**Writer's Direct Numbers:**
**(504) 830-3824 Phone**
**(504) 836-9573 Fax**
**ntygier@chopin.com**

**Please Reply to Metairie Office**

November 9, 2000

***Via Facsimile and Overnight Mail***

Clerk of Court
19th Judicial District Court
Parish of East Baton Rouge
222 St. Louis Street
Baton Rouge, LA 70802

***Re:*** ***Alvin C. Copeland v.***
***Treasure Chest Casino, LLC and Robert J. Guidry***
***19th JDC No. 464-607(D)***
***Our File No. 245.2433***

Dear Sir/Madam:

Enclosed please find the original and copies of the Memorandum in Opposition to Treasure Chest Casino's Peremptory Exception of No Cause of Action, which we ask that you please fax file in the above captioned matter on behalf of plaintiff, Alvin C. Copeland.

Also enclosed is our check in the amount of $50.00 to cover the court costs incurred as a result of this filing. Please return a conformed copy to the undersigned.

Should you have any questions, please do not hesitate to contact me.

01111009051 04

Yours very truly,

Nicole S. Tygier

NST/jjw
***Enclosures***

cc: The Honorable Janice Clark *(w/enclosure via facsimile and Overnight Mail)*
Lanny R. Zatzkis, Esq. *(w/enclosure via facsimile and U.S. Mail)*
Winston DeCuir, Esq. *(w/enclosure via facsimile and U.S. Mail)*
Ralph Capitelli, Esq. *(w/enclosure via facsimile and U.S. Mail)*
Arthur A. Lemann, III, Esq. *(w/enclosure via facsimile and U.S. Mail)*
Paul S. West, Esq. *(w/enclosure via facsimile and U.S. Mail)*

0111009051 05

**19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

**NO. 464-607** **DIVISION "D"**

**ALVIN C. COPELAND**

**-versus-**

**TREASURE CHEST CASINO, L.L.C. and ROBERT J. GUIDRY**

**Filed:**____________________ ____________________

**Deputy Clerk**

COST OK Amt.
NOV 09 2000
DEPUTY CLERK OF COURT

**MEMORANDUM IN OPPOSITION TO TREASURE CHEST CASINO'S PEREMPTORY EXCEPTION OF NO CAUSE OF ACTION**

**MAY IT PLEASE THE COURT:**

Plaintiff, Alvin C. Copeland ("Copeland"), submits this Memorandum in Opposition to the Treasure Chest Casino's Peremptory Exception of No Cause of Action. By means of this Exception, Treasure Chest Casino, L.L.C. ("Treasure Chest") urges that Copeland's Petition fails to state a cause of action for all four counts alleged. Treasure Chest's arguments with respect to three of these counts, Unfair Trade Practices, Fraud and Unjust Enrichment, as well as its arguments with respect to RICO standing (Injury and Proximate Cause) are substantively identical to the arguments raised by its co-defendant, Robert Guidry.

In the interests of brevity and judicial economy, and due to the inordinately short time period between undersigned counsel's receipt of Treasure Chest's Exception and thirty-two (32) page Memorandum in Support, and the hearing on this Exception, Copeland respectfully directs the Court to his Memorandum in Opposition to Exception of No Cause of Action filed by Defendant Robert Guidry which he urges, with one significant late breaking development,[1] addresses Treasure Chest's arguments with respect to Counts II (Unfair Trade Practices), III (Fraud) and IV (Unjust Enrichment), as well as the standing issues with respect to Count I (Racketeering Influenced and Corrupt Organizations Act). Accordingly, subject to this exception, this Memorandum will chiefly address Treasure Chest's assertion that Copeland has failed to state a cause of action under 18 U.S.C. §1964(c).

---

[1] The U.S. Supreme Court issued an opinion in *Cleveland v. United States*, No. 99-804, 2000 W.L. 1663649 on November 7, 2000. (A copy of this opinion is attached hereto as Exhibit "A"). While the *Cleveland* case does not directly address the issues presented in this matter, the Court's reasoning therein is pertinent with respect to the matter of *Guilbeaux v. Grand Casinos, Inc.*, No. 95-1167 (W.D.La. 7/2/96), *aff'd*, 114 F.3d 1181 (5th Cir.1997) which both Guidry and Treasure Chest erroneously contend is dispositive of the issues in this case.

# I. INTRODUCTION

Copeland has brought this civil RICO claim in State Court under settled jurisprudence indicating that State Courts have concurrent jurisdiction to hear civil RICO claims. While Copeland recognizes, that of necessity, this Court must rely to some extent upon federal jurisprudence in its interpretation of federal law, he nevertheless urges this Court to consider federal precedents with the caution, as there are distinctions between the pleadings requirements in federal courts, and that Treasure Chest has presented its challenge in the form of an Exception of No Cause of Action.

It should at all times be remembered that merely because an exception of no cause of action in Louisiana and a Motion to Dismiss brought pursuant to Fed.R.Civ.Proc. 12(b)(6) share similar standards,[2] this does not mean that they are identical. There are significant distinctions between the considerations underlying a Federal Court Motion to Dismiss and an Exception of No Cause of Action, including, but not limited to the "conversion" of a Motion to Dismiss into a summary judgment under Federal Rule of Civil Procedure 12, and general distinctions between Federal and State Pleadings requirements. Copeland submits that his Petition states a cause of action under Louisiana procedural law, and that this Exception should be dismissed.

## II. Copeland has Stated a Cause of Action under 18 U.S.C. §1964.

### *A. Required Elements of a Civil RICO Claim.*

18 U.S.C. § 1964(c), which recognizes a private right action for damages arising out of RICO violations, provides, in pertinent part:

> (c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee....

The applicable provisions of 18 U.S.C. § 1962 were succinctly restated by the federal Fifth Circuit in *Crowe v. Henry*, 43 F.3d 198, 203 (5th Cir. 1995). In pertinent part:

> (a) a person who has received income from a pattern of racketeering activity cannot invest that income in an enterprise;
>
> (b) a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering activity; and

[2] For a recitation of the applicable standard of review, please see Section III, A, of Copeland's Memorandum in Opposition to Guidry's Exception, pp. 7-9.

0111009051 07

(c) a person who is employed by or associated with an enterprise cannot conduct the affairs of the enterprise through a pattern of racketeering activity; and

(d) a person cannot conspire to violate subsections (a), (b), or (c).

*Crowe*, 43 F.3d at 203.

In the instant case, Copeland has alleged that Defendants violated sections (b), (c) and (d). In addition to the foregoing, there are certain common elements to a civil cause of action for any of these RICO violations. These common elements include: (1) a "person" who engages in (2) a "pattern of racketeering activity," (3) connected to the acquisition, establishment, conduct, or control of an "enterprise." *Crowe*, 43 F.3d at 204, *citing Delta Truck & Tractor, Inc. v. J.I. Case Col.*, 855 F.2d 241, 242 (5th Cir. 1988), *cert. denied*, 489 U.S. 1079, 109 S.Ct. 1531, 103 L.Ed.2d. 836 (1989).

Treasure Chest has not challenged that it is properly alleged to be a RICO "person," but does question whether Copeland has sufficiently plead the last two elements, the existence of a "pattern of racketeering activity," and its connection to the conduct or control of the affairs of a RICO "enterprise." This challenge is unavailing, and this Exception must be denied.

***B. Copeland has Sufficiently Plead a "Pattern of Racketeering Activity".***

One of the terms of art in RICO litigation is the concept of a "pattern of Racketeering Activity, " which is defined as requiring "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. §1961(5). Acts of "racketeering activity" include generally recognized criminal activities, such as gambling, arson, robbery, bribery, extortion, wire fraud and mail fraud. Treasure Chest has not, and cannot in good faith contend that the allegations of the Petition do not meet the statutory definition.[3] In pertinent part, Copeland has alleged:

69.

On information and belief, the RICO persons conducted and participated in the conduct of the affairs of the RICO enterprise through a pattern of racketeering activity in East Baton Rouge and other parishes, comprised of repeated acts of bribery (in violation of 18 U.S.C. 1952 and LSA-R.S. 14:118), extortion (in violation of 18 U.S.C. §1951, LSA R.S. 14:66 and LSA-R.S.

[3] If Treasure Chest's challenge is to the fact that Copeland's factual allegations are occasionally made "upon information or belief," or rest upon the fact that they are couched in terms of the language of the Edwards indictment, the Guidry plea, and various newspaper articles, Plaintiff's statement, that the alleged "flaws in Copeland's petition are not susceptible to being cured by amendment," is patently false, as Copeland can clarify his allegations by means of the actual evidence presented at the criminal trial of the matter including Robert Guidry's sworn testimony, which resulted in multiple convictions. (Memorandum in Support of Treasure Chest Casino, L.L.C.'s Peremptory Exception of No Cause of Action, p. 2-3).

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 86 of 221

RECEIVED TIME NOV. 9. 11:52AM

01110090510B

14:120), wire fraud (in violation of 18 U.S.C. §1343), and mail fraud (in violation of 18 U.S.C. §1341) (collectively, "predicate acts") extending over a period of years, in violation of 18 U.S.C. §1962(c).

What Treasure Chest does challenge is whether Copeland's pleadings satisfy the judicial gloss imposed on the statute by various Federal Courts which have interpreted it. The United States Supreme Court has defined this requirement to consist of two elements, "relatedness," and "continuity." *H.J. Inc. v. Northwestern Bell Telephone, Co.* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Relatedness, which is established if the acts alleged have the "same or similar purposes, results, participants, victims, or methods of commission,"[4] is not contested herein.

Whether Copeland has sufficiently alleged "continuity" is challenged by Treasure Chest, albeit largely by virtue of discussions of decisions involving lower courts dealing with factually distinct pleadings. However, the United States Fifth Circuit Court of Appeals in *Word of Faith World Outreach Center Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996), *cert. Denied*, 520 U.S. 1117, 117 S.Ct. 1248, 137 L.Fed. 2d 329 (1997), succinctly distilled the essence of the Supreme Court's discussion of the issue:

> To establish continuity, plaintiffs must prove "continuity of racketeering activity, **or** its threat." .... This may be shown by **either** a closed period of repeated conduct, or an open- ended period of conduct that "by its nature projects into the future with a threat of repetition." ... *A closed period of conduct may be demonstrated "by proving a series of related predicates extending over a substantial period of time."* ... An open period of conduct involves the establishment of "a threat of continued racketeering activity." ... This may be shown where there exists a "specific threat of repetition extending indefinitely into the future," **or** *"where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business."* ... The Court stated that in enacting RICO, Congress was concerned with "long-term criminal conduct."

*Word of Faith World Outreach Center Church, Inc.*, 90 F.3d at 122, *citing H.J. Inc., supra.* (Internal citations omitted, emphasis added).

Under the U.S. Supreme Court's reasoning, the actual threat or continued threat of repetition is only required if the pattern of conduct is an "open" one, and even then, a Plaintiff need not show actual threat of future conduct if he can establish "that the predicates are a regular way of conducting defendant's ongoing legitimate business." *H.J. Inc.*, 492 U.S. at 242-243, 109 S.Ct. at 2903. Arguably, at the time that Copeland filed his Petition in September of 1999, this pattern may have been classified as an "open one," as, with the exception of Robert Guidry, the other RICO persons, including Edwin W. Edwards, Stephen Edwards, Andrew Martin, Treasure Chest, "and other unnamed persons and entities" had not plead guilty or otherwise been

[4] *H.J. Inc.*, 492 U.S. at 240, 109 S.Ct. at 2901.

called to account for their actions. However, following the conclusion of the criminal trial, it is clear that the pattern is a closed one.

The facts supporting the requisite "series of related predicates extending over a substantial period of time" have in fact already been plead, although both Defendants Guidry and Treasure Chest have objected to the inclusion of some of these facts relating to the Shetler scheme, as well as those acts which are alleged to be outside of the statute of limitations. Nevertheless, the pattern alleged commenced with respect to Guidry's payment of "$25,000.00 for legal services relating to the preparation of the Treasure Chest license application" on February 9, 1993 (Petition, ¶ 12), and continued up until the furtive exchange of $65,000.00 in cash on or about April, 1997. (Petition, ¶ 37).

Clearly, Copeland has sufficiently alleged a pattern of racketeering activity, as that term is defined in the statute and as interpreted by the Supreme Court. To the extent that Treasure Chest's exception is based on this alleged fault, it must be overruled.

### C. *Copeland has Sufficiently Plead Treasure Chest's connection to the conduct or control of the affairs of a RICO "Enterprise".*

Treasure Chest has also averred that Copeland has failed to plead both the existence of a RICO "enterprise" and Treasure Chest's connection to the conduct or control of its affairs. With respect to the first, the alleged existence of a RICO enterprise, Treasure Chest's claim is erroneous.[5]

18 U.S.C. 1961(4) defines an "enterprise" to "include any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." In one of the very few Louisiana Appellate Court Opinions addressing civil RICO claims, the Fourth Circuit elaborated on what this has been held to mean:

> In order to show an "association-in-fact," a plaintiff must show "evidence of an ongoing organization, formal or informal, and ... evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981); *Manax v. McNamara*, 842 F.2d 808, 811 (5th Cir.1988). The case law interpreting that provision generally requires a showing that an association-in-fact have some purpose beyond the conduct complained about in the case. *See, e.g. Manax*, 842 F.2d 808, in which the court held that two individuals joined together to commit one discrete criminal act do not constitute an association-in-fact. *Id.* at 811, *citing Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir.1987).

*Burnham Broadcasting Co. v. Williams*, 93-0409 (La.App. 4 Cir. 12/16/93), 629 So.2d 1335, 1339, *writ denied*, 94-0150 (La. 2/25/94); 632 So.2d 770, *cert. denied*, 513 U.S. 814, 115 S.Ct. 69, 130 L.Ed.2d 25 (1994). Strictly speaking the "showing" required by the Court in *Burnham*

[5] This is no doubt why Guidry has not joined in this particular objection to Copeland's pleadings.

RECEIVED TIME NOV. 9. 11:52AM

0111009051 ID

*Broadcasting Co.*, which dealt with an evidentiary hearing on an application for a preliminary injunction far exceeds what must merely be pled so as to overcome an Exception of No Cause of Action. Nevertheless, the essential elements of what must ultimately be proved based on the pleadings are stated in these few sentences.

Clearly, Copeland has sufficiently alleged the existence of an enterprise. He has, in fact, alleged an enterprise beginning prior to Edwin Edwards' fourth and final term as governor, (Petition, ¶ 73), and continuing past the end of that term, (Petition, ¶ 74), involving multiple predicate acts, each of which were committed for at least two separate purposes, i.e., proprietary gain and the corruption of the licensing process. Strict proof of each of these factors which may demonstrate the existence of an enterprise is not required even in the criminal context. For example, in *U.S. v. Owens*, 167 F.3d 739, 752 (1st Cir.1999), *cert.* Denied, 120 S.Ct. 224, 145 L.Ed. 2d 188 (1999), the Court held that: "[t]he evidence sufficiently established more than a mere series of criminal acts; and where, as here, 'a group of persons associated together for a common purpose of engaging in a [criminal] course of conduct,' an enterprise separate from the pattern of racketeering activity is sufficiently established." *Id, citing United States v. Doherty*, 867 F.2d 47, 68 (1st Cir.1989), *cert. denied*, 492 U.S. 918, 109 S.Ct. 3243, 106 L.Ed. 2d 590 (1989). Certainly, Copeland has sufficiently alleged the existence of a RICO enterprise.

In perhaps its most interesting argument, Treasure Chest denies its connection with the RICO enterprise, urging that the allegations of the Petition do not specifically state that it personally committed any predicate acts, and accordingly, that Copeland's allegations that it violated 18 U.S.C. §1962(b), (c) and (d) must fall. Incredibly, Treasure Chest asserts that it is the "victim or object of the alleged scheme." Presumably this victimization consists of being forced to pay illicit bribes in order to illegally obtain a gaming license before being able to reap the benefits consisting of millions of dollars of revenue, rather than risking the uncertainties of honestly competing for a gaming license.

Treasure Chest's argument that it must have "personally" committed predicate acts after it was wholly acquired by Boyd Gaming by paying off Guidry for his efforts in October, 1997[6] is erroneous. In addition to the fact that many of the predicate acts were committed by Guidry on Treasure Chest's behalf, a defendant's civil RICO liability under §1962(d) does not require that the defendant have personally committed any predicate RICO act. The Supreme Court has

[6] Please see Petition, ¶ 39, wherein it is specifically alleged that "Treasure Chest's 'intangible license rights,' which had been obtained solely as a result of the overarching corrupt conspiracy, were valued at $85 million of the total purchase price [of approximately $113 million]."

0111009051 11

definitively stated that a RICO defendant need not have personally committed any predicate act to be convicted of conspiracy. *Salinas v. United States*, 522 U.S. 52, 64, 118 S.Ct. 469, 477 (1997). Justice Kennedy explained the operations of § 1962(d):

> There is no requirement of some overt act or specific act in the statute before us, unlike the general conspiracy provision applicable to federal crimes, which requires that at least one of the conspirators have committed an "act to effect the object of the conspiracy." § 371. The RICO conspiracy provision, then, is even more comprehensive than the general conspiracy offense in § 371.
>
> * * *
>
> The RICO conspiracy statute, § 1962(d), broadened conspiracy coverage by omitting the requirement of an overt act; it did not, at the same time, work the radical change of requiring the Government to prove each conspirator agreed that he would be the one to commit two predicate acts.

*Salinas v. United States*, 522 U.S. at 64, 118 S.Ct. at 477. Under *Salinas*, it is therefore immaterial that, as a juridical entity, Treasure Chest was incapable of committing overt acts other than through its principals. Treasure Chest is alleged to have conspired with other RICO persons as required under 18 U.S.C. § 1962(d). That is all the law requires.

Moreover, Treasure Chest is chargeable with the actions of Robert Guidry as they were undertaken in the course and scope of his position with Treasure Chest and were done with actual and/or apparent authority under the doctrines of respondeat superior and/or Louisiana Civil Code Article 2320. (Petition, ¶91). "Respondeat Superior and agency liability further both the compensatory and deterrent goals of the RICO statute." *Brady v. Dairy Fresh Products, Co.*, 974 F.2d 1149, 1155 (9th Cir. 1992). Accordingly, an organization which is not alleged to be the RICO "enterprise" which derives benefit from its representative's wrongful acts may be held liable for these acts under 18 U.S.C. § 1962 (a), (b), and (c). *Crowe v. Smith*, 848 F.Supp. 1258, 1262-1264 (W.D. La. 1994). The fact that Treasure Chest's new owners paid Guidry handsomely for his "services" when they bought him out does not alter Treasure Chest's liability for these actions. Copeland has sufficiently plead Treasure Chest's connection with a RICO enterprise for the purposes of 18 U.S.C. § 1962(b), (c), and (d) and for this reason Treasure Chest's Exception should be denied.

***D. Copeland has adequately plead that he is a person "injured in his business or property" under 18 U.S.C. 1964(c).***

The sufficiency of Copeland's pleading with respect to the RICO injury and proximate cause issues (collectively "standing") is fully treated in his Memorandum in Opposition to Exception of No Cause of Action filed by Defendant Robert Guidry. Additionally the fallacy of Defendants' reliance on Judge Doherty's unpublished opinion in *Guilbeaux v. Grand Casinos,*

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 90 of 221

01110090512

*Inc.*, No. 95-1167 (W.D.La. 7/2/96), *aff'd*, 114 F.3d 1181 (5th Cir.1997) is exemplified by Justice Ginsburg's November 7, 2000 opinion in *Cleveland v. United States*, No. 99-804. In *Cleveland*, the Court addressed the precise issue presented in *Guilbeaux*, which is emphatically not an issue presented in *this* case which deals with whether Copeland's "property or business" has been injured by Defendants' RICO violations. The issue presented in both *Cleveland* and *Guilbeaux* is whether unissued Louisiana gaming licenses qualify as "property" under the federal mail fraud statute, 18 U.S.C. §1341, which proscribes the use of the mails in furtherance of "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." The *Cleveland* Court answered this question negatively, concluding:

> that permits or licenses of this order do not qualify as "property within §1341's compass. It does not suffice, we clarify, that the object of the fraud may become property in the recipient's hands; for purposes of the mail fraud statute, **the thing obtained must be property in the hands of the victim**. State and municipal licenses in general, and Louisiana's video poker licenses in particular, we hold, do not rank as property, for the purposes of §1341, in the hands of the official licensor.

*Cleveland*, Ex. "A," p. 1 (emphasis added). This issue, the construction of the federal mail fraud statute as judicially limited by the Court's earlier opinion in *McNally v. United States*, 483 U.S. 350 (1987), was the sole context in which Judge Doherty addressed the definition of "money or property" with respect to Louisiana Riverboat Gaming Licenses.[7] The *Guilbeaux* Court only conclusorily dealt with the issue presented by Defendants herein[8], whether such the loss of such a license may be classified as "injury in business or property" under 18 U.S.C. 1964(c), and made this determination based on the jurisprudence under 18 U.S.C. §1341[9] and facts dramatically different from the instant case. Those distinctions include the fact that Guilbeaux made no showing of suitability by virtue of having obtained a video poker license in Louisiana or gaming license in Colorado (Petition, ¶29), that the issuance of a license for a Lafayette casino would have required special approval by the voters of Vermillion Parish, (*Guilbeaux* at p. 13), while both Lake Pontchartrain, where Copeland sought to locate a casino and the Mississippi River were approved waterways.

---

[7] At page 9 of her opinion, Judge Doherty defined her inquiry: "This Court must therefore examine whether plaintiff has alleged a scheme to defraud him of *money or property* as required by the jurisprudential interpretation of the mail and wire fraud statutes." (Emphasis in original).

[8] *Guilbeaux* did not even address whether sums expended in the pursuit of the license could be classified as "injury in business or property".

[9] While Copeland has alleged predicate acts of mail fraud which were the sole predicate acts alleged in *Guilbeaux*, he has also alleged "repeated acts of bribery (in violation of 18 U.S.C. 1952 and LSA-R.S. 14:118), [and] extortion (in violation of 18 U.S.C. §1951, LSA R.S. 14:66 and LSA-R.S. 14:120)." (Petition, ¶69).

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 91 of 221

RECEIVED TIME NOV. 9. 11:52AM



0111009051 13

*Cleveland* is also pertinent in several other respects. First, the fact that the Louisiana legislature expressly determines a gaming license "to be a pure and absolute irrevocable privilege and not a right, property or otherwise under the constitutions of the United States or of the state of Louisiana" has no bearing on the issue at hand, since '[the question whether a state-law right constitutes 'property' or 'rights to property' is a matter of federal law." *Cleveland*, Ex. "A," n. 4, p. 13 (citations omitted). Whether Copeland has sustained a RICO injury is a question of the interpretation of 18 U.S.C. §1964(c), not of state law.

Additionally, while it did not expressly decide the question of whether "video poker licensees may have property interests in their licenses," the *Cleveland* Court went out of its way to note that "[I]n some contexts, we have held that individuals have constitutionally protected property interests in state-issued licenses essential to pursuing an occupation or livelihood." *Cleveland*, Ex. "A," n. 4, p. 13, *citing Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed. 2d 90 (1971). **The Court implicitly recognized that there might be a federally constitutionally protected property right in gaming licenses.**

If such a right is protected under the U.S. Constitution, surely it is also protected under the Louisiana Constitution, which has been held to provide substantially greater rights, La.R.S. 51:1409 (Count II- Unfair Trade Practices), and La.C.C.art. 2315 (Count III - Fraud). Copeland has alleged that he has been "injured in his business or property" as required to state a cause of action under 18 U.S.C. §1964(c), as well as for the remaining Counts.

## IV. CONCLUSION

Notwithstanding any difficult issues of proof as to a determinable quantum of damages, it is apparent that Plaintiff has plead facts sufficient to state a cause of action under Louisiana law, and accordingly, that this Exception must be overruled.

In the unlikely event that this Court does determine that Plaintiff's Petition fails to set forth a cause of action in any particulars, pursuant to Louisiana Code of Civil Procedure article 934, Copeland respectfully submits that the Court should allow an amendment to cure any defects in the pleadings, based upon the facts obtained through the full trial of the merits in the Edwards matter.

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 92 of 221

RECEIVED TIME NOV. 9. 11:52AM

0111009051 14

Respectfully submitted,

***CHOPIN, WAGAR, COLE, RICHARD, REBOUL & KUTCHER, LLP***

By: ______________________

**ROBERT A. KUTCHER** (LSBA #7895)
**NICOLE S. TYGIER** (LSBA #19814)
**VICKI A. TURKO** (LSBA #24677)
Two Lakeway Center, Suite 900
3850 North Causeway Boulevard
Metairie, Louisiana 70002
Telephone: (504) 830-3838
Facsimile: (504) 836-9573

**BENJAMIN R. SLATER, JR.** (LSBA #12126)
**BENJAMIN R. SLATER, III, T.A.** (LSBA #12127)
**A. ELISE BROWN** (LSBA #19500)
**DONALD J. MEISLER, JR.** (LSBA #20294)
**S. JOSEPH WELBORN** (LSBA #25928)
**SLATER LAW FIRM**
650 Poydras Street, Suite 2600
New Orleans, Louisiana 70130
Telephone: (504) 523-7333
Facsimile: (504) 528-1080

***Attorneys for Plaintiff Alvin C. Copeland***

C 57039
DEPUTY CLERK OF COURT
CLERK OF ... E.B.R. PARISH
19TH JUDICIAL DISTRICT
2000 NOV -9 PM 12:32
DEPUTY CLERK OF COURT

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing has this date been served on all counsel of record in this proceeding:

( ) Hand Delivery ( ✓ ) Prepaid U.S. Mail
( ✓ ) Facsimile ( ) Overnight Delivery

Metairie, Louisiana, this 9th day of November, 2000.

______________________

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 93 of 221
RECEIVED TIME NOV. 9. 11:52AM

0111009051 15

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 99-804

CARL W. CLEVELAND, PETITIONER
*v.* UNITED STATES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT

[November 7, 2000]

JUSTICE GINSBURG delivered the opinion of the Court.

This case presents the question whether the federal mail fraud statute, 18 U. S. C. §1341, reaches false statements made in an application for a state license. Section 1341 proscribes use of the mails in furtherance of "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." Petitioner Carl W. Cleveland and others were prosecuted under this federal measure for making false statements in applying to the Louisiana State Police for permission to operate video poker machines. We conclude that permits or licenses of this order do not qualify as "property" within §1341's compass. It does not suffice, we clarify, that the object of the fraud may become property in the recipient's hands; for purposes of the mail fraud statute, the thing obtained must be property in the hands of the victim. State and municipal licenses in general, and Louisiana's video poker licenses in particular, we hold, do not rank as "property," for purposes of §1341, in the hands of the official licensor.

EXHIBIT A

0111009051 16

I

Louisiana law allows certain businesses to operate video poker machines. La. Rev. Stat. Ann. §§27:301 to 27:324 (West Supp. 2000). The State itself, however, does not run such machinery. The law requires prospective owners of video poker machines to apply for a license from the State. §27:306. The licenses are not transferable, §27:311(G), and must be renewed annually, La. Admin. Code, tit. 42, §2405(B)(3) (2000). To qualify for a license, an applicant must meet suitability requirements designed to ensure that licensees have good character and fiscal integrity. La. Rev. Stat. Ann. §27:310 (West Supp. 2000).

In 1992, Fred Goodson and his family formed a limited partnership, Truck Stop Gaming, Ltd. (TSG), in order to participate in the video poker business at their truck stop in Slidell, Louisiana. Cleveland, a New Orleans lawyer, assisted Goodson in preparing TSG's application for a video poker license. The application required TSG to identify its partners and to submit personal financial statements for all partners. It also required TSG to affirm that the listed partners were the sole beneficial owners of the business and that no partner held an interest in the partnership merely as an agent or nominee, or intended to transfer the interest in the future.

TSG's application identified Goodson's adult children, Alex and Maria, as the sole beneficial owners of the partnership. It also showed that Goodson and Cleveland's law firm had loaned Alex and Maria all initial capital for the partnership and that Goodson was TSG's general manager. In May 1992, the State approved the application and issued a license. TSG successfully renewed the license in 1993, 1994, and 1995 pursuant to La. Admin. Code, tit. 42, §2405(B)(3) (2000). Each renewal application identified no ownership interests other than those of Alex and Maria.

In 1996, the FBI discovered evidence that Cleveland and Goodson had participated in a scheme to bribe state legislators to vote in a manner favorable to the video poker industry. The Government charged Cleveland and Goodson with multiple counts of money laundering under 18 U. S. C. §1957, as well as racketeering and conspiracy under §1962. Among the predicate acts supporting these charges were four counts of mail fraud under §1341.[1] The indictment alleged that Cleveland and Goodson had violated §1341 by fraudulently concealing that they were the true owners of TSG in the initial license application and three renewal applications mailed to the State. They concealed their ownership interests, according to the Government, because they had tax and financial problems that could have undermined their suitability to receive a video poker license. See La. Rev. Stat. Ann. §27:310(B)(1) (suitability requirements).

Before trial, Cleveland moved to dismiss the mail fraud counts on the ground that the alleged fraud did not deprive the State of "property" under §1341. The District Court denied the motion, concluding that "licenses consti-

---

[1] Title 18 U. S. C. §1341 provides in relevant part: "Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, . . . for the purpose of executing such scheme or artifice or attempting so to do, [uses the mails or causes them to be used], shall be fined under this title or imprisoned not more than five years, or both." The Racketeer Influenced and Corrupt Organizations Act (RICO) prohibits participation and conspiracy to participate in a pattern of "racketeering activity," 18 U. S. C. §§1962(c), (d), and defines "racketeering activity" to include "any act which is indictable under . . . section 1341," §1961(1). The money laundering statute prohibits various activities designed to conceal or promote "specified unlawful activity," §1956, and defines "specified unlawful activity" to include (with an exception not relevant here) "any act or activity constituting an offense listed in section 1961(1) of this title," §1956(c)(7)(A).

0111009051 18

tute property even before they are issued." 951 F. Supp. 1249, 1261 (ED La. 1997). A jury found Cleveland guilty on two counts of mail fraud (based on the 1994 and 1995 license renewals) and on money laundering, racketeering, and conspiracy counts predicated on the mail fraud. The District Court sentenced Cleveland to 121 months in prison.

On appeal, Cleveland again argued that Louisiana had no property interest in video poker licenses, relying on several Court of Appeals decisions holding that the government does not relinquish "property" for purposes of §1341 when it issues a permit or license. See *United States* v. *Shotts*, 145 F. 3d 1289, 1296 (CA11 1998) (license to operate a bail bonds business); *United States* v. *Schwartz*, 924 F. 2d 410, 418 (CA2 1991) (arms export license); *United States* v. *Granberry*, 908 F. 2d 278, 280 (CA8 1990) (school bus operator's permit); *Toulabi* v. *United States*, 875 F. 2d 122, 125 (CA7 1989) (chauffeur's license); *United States* v. *Dadanian*, 856 F. 2d 1391, 1392 (CA9 1988) (gambling license); *United States* v. *Murphy*, 836 F. 2d 248, 254 (CA6 1988) (license to conduct charitable bingo games).

The Court of Appeals for the Fifth Circuit nevertheless affirmed Cleveland's conviction and sentence, *United States* v. *Bankston*, 182 F. 3d 296, 309 (1999), considering itself bound by its holding in *United States* v. *Salvatore*, 110 F. 3d 1131, 1138 (1997), that Louisiana video poker licenses constitute "property" in the hands of the State. Two other Circuits have concluded that the issuing authority has a property interest in unissued licenses under §1341. *United States* v. *Bucuvalas*, 970 F. 2d 937, 945 (CA1 1992) (entertainment and liquor license); *United States* v. *Martinez*, 905 F. 2d 709, 715 (CA3 1990) (medical license).

RECEIVED TIME NOV. 9. 11:52AM

0111009051 19

We granted certiorari to resolve the conflict among the Courts of Appeals, 529 U. S. 1017 (2000), and now reverse the Fifth Circuit's judgment.

## II

In *McNally* v. *United States*, 483 U. S. 350, 360 (1987), this Court held that the federal mail fraud statute is "limited in scope to the protection of property rights." *McNally* reversed the mail fraud convictions of two individuals charged with participating in "a self-dealing patronage scheme" that defrauded Kentucky citizens of "the right to have the Commonwealth's affairs conducted honestly." *Id.*, at 352. At the time *McNally* was decided, federal prosecutors had been using §1341 to attack various forms of corruption that deprived victims of "intangible rights" unrelated to money or property.[2] Reviewing the history of §1341, we concluded that "the original impetus behind the mail fraud statute was to protect the people from schemes to deprive them of their money or property." *Id.*, at 356.

As first enacted in 1872, §1341 proscribed use of the mails to further "'any scheme or artifice to defraud.'" *Ibid.* In 1896, this Court held in *Durland* v. *United States*, 161 U. S. 306, 313, that the statute covered fraud not only by "representations as to the past or present," but also by "suggestions and promises as to the future." In 1909, Congress amended §1341 to add after "any scheme or artifice to defraud" the phrase "or for obtaining money or

[2] *E.g.*, *United States* v. *Clapps*, 732 F. 2d 1148, 1153 (CA3 1984) (electoral body's right to fair elections); *United States* v. *Bronston*, 658 F. 2d 920, 927 (CA2 1981) (client's right to attorney's loyalty); *United States* v. *Bohonus*, 628 F. 2d 1167, 1172 (CA9 1980) (right to honest services of an agent or employee); *United States* v. *Isaacs*, 493 F. 2d 1124, 1150 (CA7 1974) (right to honest services of public official).

0111009051 20

property by means of false or fraudulent pretenses, representations, or promises." *McNally*, 483 U. S., at 357. We explained in *McNally* that the 1909 amendment "codified the holding of *Durland*," *id.*, at 357, and "simply made it unmistakable that the statute reached false promises and misrepresentations as to the future as well as other frauds involving money or property," *id.*, at 359. Rejecting the argument that "the money-or-property requirement of the latter phrase does not limit schemes to defraud to those aimed at causing deprivation of money or property," *id.*, at 358, we concluded that the 1909 amendment signaled no intent by Congress to "depar[t] from [the] common understanding" that "the words 'to defraud' commonly refer 'to wronging one in his property rights,'" *id.*, at 358–359 (quoting *Hammerschmidt* v. *United States*, 265 U. S. 182, 188 (1924)).

Soon after *McNally*, in *Carpenter* v. *United States*, 484 U. S. 19, 25 (1987), we again stated that §1341 protects property rights only. *Carpenter* upheld convictions under §1341 and the federal wire fraud statute, 18 U. S. C. §1343, of defendants who had defrauded the Wall Street Journal of confidential business information. Citing decisions of this Court as well as a corporate law treatise, we observed that "[c]onfidential business information has long been recognized as property." 484 U. S., at 26.

The following year, Congress amended the law specifically to cover one of the "intangible rights" that lower courts had protected under §1341 prior to *McNally*: "the intangible right of honest services." Anti-Drug Abuse Act of 1988, §7603(a), 18 U. S. C. §1346. Significantly, Congress covered only the intangible right of honest services even though federal courts, relying on *McNally*, had dismissed, for want of monetary loss to any victim, prosecu-

tions under §1341 for diverse forms of public corruption, including licensing fraud.[3]

## III

In this case, there is no assertion that Louisiana's video poker licensing scheme implicates the intangible right of honest services. The question presented is whether, for purposes of the federal mail fraud statute, a government regulator parts with "property" when it issues a license. For the reasons we now set out, we hold that §1341 does not reach fraud in obtaining a state or municipal license of the kind here involved, for such a license is not "property" in the government regulator's hands. Again, as we said in *McNally*, "[i]f Congress desires to go further, it must speak more clearly than it has." 483 U. S., at 360.

To begin with, we think it beyond genuine dispute that whatever interests Louisiana might be said to have in its video poker licenses, the State's core concern is *regulatory*. Louisiana recognizes the importance of "public confidence and trust that gaming activities . . . are conducted honestly and are free from criminal and corruptive elements." La. Rev. Stat. Ann. §27:306(A)(1) (West Supp. 2000). The video poker licensing statute accordingly asserts the

[3] For example, in *United States* v. *Murphy*, 836 F. 2d 248, 254 (CA6 1988), the court overturned the mail fraud conviction of a state official charged with using false information to help a charitable organization obtain a state bingo license. Acknowledging "the *McNally* limitations" on §1341, the court said that the issue "distills to a consideration of whether Tennessee's 'right to control or object' with respect to the issuance of a bingo permit to a charitable organization constitutes 'property.'" *Id.*, at 253. It then held that "the certificate of registration or the bingo license may well be 'property' once issued, insofar as the charitable organization is concerned, but certainly an unissued certificate of registration is not property of the State of Tennessee and once issued, it is not the property of the State of Tennessee." *Id.*, at 253–254.

State's "legitimate interest in providing strict regulation of all persons, practices, associations, and activities related to the operation of . . . establishments licensed to offer video draw poker devices." *Ibid.* The statute assigns the Office of State Police, a part of the Department of Public Safety and Corrections, the responsibility to promulgate rules and regulations concerning the licensing process. §27:308(A). It also authorizes the State Police to deny, condition, suspend, or revoke licenses, to levy fines of up to $1,000 per violation of any rule, and to inspect all premises where video poker devices are offered for play. §§27:308(B), (E)(1). In addition, the statute defines criminal penalties for unauthorized use of video poker devices, §27:309, and prescribes detailed suitability requirements for licensees, §27:310.

In short, the statute establishes a typical regulatory program. It licenses, subject to certain conditions, engagement in pursuits that private actors may not undertake without official authorization. In this regard, it resembles other licensing schemes long characterized by this Court as exercises of state police powers. *E.g.*, *Ziffrin, Inc.* v. *Reeves*, 308 U. S. 132, 138 (1939) (license to transport alcoholic beverages); *Hall* v. *Geiger-Jones Co.*, 242 U. S. 539, 558 (1917) (license to sell corporate stock); *Fanning* v. *Gregoire*, 16 How. 524, 534 (1854) (ferry license); *License Cases*, 5 How. 504, 589 (1847) (license to sell liquor) (opinion of McLean, J.), overruled on other grounds, *Leisy* v. *Hardin*, 135 U. S. 100 (1890).

Acknowledging Louisiana's regulatory interests, the Government offers two reasons why the State also has a property interest in its video poker licenses. First, the State receives a substantial sum of money in exchange for each license and continues to receive payments from the licensee as long as the license remains in effect. Second, the State has significant control over the issuance, renewal, suspension, and revocation of licenses.

RECEIVED TIME NOV. 9. 11:52AM

Without doubt, Louisiana has a substantial economic stake in the video poker industry. The State collects an upfront "processing fee" for each new license application, La. Rev. Stat. Ann. §27:311(H)(2) (West Supp. 2000) ($10,000 for truck stops), a separate "processing fee" for each renewal application, §27:311(H)(4) ($1,000 for truck stops), an "annual fee" from each device owner, §27:311(A)(4) ($2,000), an additional "device operation" fee, §27:311(A)(5)(c) ($1,000 for truck stops), and, most importantly, a fixed percentage of net revenue from each video poker device, §27:311(D)(1)(b) (32.5% for truck stops). It is hardly evident, however, why these tolls should make video poker licenses "property" in the hands of the State. The State receives the lion's share of its expected revenue not while the licenses remain in its own hands, but only *after* they have been issued to licensees. Licenses pre-issuance do not generate an ongoing stream of revenue. At most, they entitle the State to collect a processing fee from applicants for new licenses. Were an entitlement of this order sufficient to establish a state property right, one could scarcely avoid the conclusion that States have property rights in any license or permit requiring an upfront fee, including drivers' licenses, medical licenses, and fishing and hunting licenses. Such licenses, as the Government itself concedes, are "purely regulatory." Tr. of Oral Arg. 24–25.

Tellingly, as to the character of Louisiana's stake in its video poker licenses, the Government nowhere alleges that Cleveland defrauded the State of any money to which the State was entitled by law. Indeed, there is no dispute that TSG paid the State of Louisiana its proper share of revenue, which totaled more than $1.2 million, between 1993 and 1995. If Cleveland defrauded the State of "property," the nature of that property cannot be economic.

Addressing this concern, the Government argues that Cleveland frustrated the State's right to control the issu-

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 102 of 221
RECEIVED TIME NOV. 9. 11:52AM

01110090512 4

ance, renewal, and revocation of video poker licenses under La. Rev. Stat. Ann. §§27:306, 27:308 (West Supp. 2000). The Fifth Circuit has characterized the protected interest as "Louisiana's right to choose the persons to whom it issues video poker licenses." *Salvatore*, 110 F. 3d, at 1140. But far from composing an interest that "has long been recognized as property," *Carpenter*, 484 U. S., at 26, these intangible rights of allocation, exclusion, and control amount to no more and no less than Louisiana's sovereign power to regulate. Notably, the Government overlooks the fact that these rights include the distinctively sovereign authority to impose criminal penalties for violations of the licensing scheme, La. Rev. Stat. Ann. §27:309 (West Supp. 2000), including making false statements in a license application, §27:309(A). Even when tied to an expected stream of revenue, the State's right of control does not create a property interest any more than a law licensing liquor sales in a State that levies a sales tax on liquor. Such regulations are paradigmatic exercises of the States' traditional police powers.

The Government compares the State's interest in video poker licenses to a patent holder's interest in a patent that she has not yet licensed. Although it is true that both involve the right to exclude, we think the congruence ends there. A patent not only confers the right to exclude others from using an invention, it also protects the holder's right to use, make, or sell the invention herself. 35 U. S. C. §§154, 271(d)(1). Louisiana does not conduct gaming operations itself, it does not hold video poker licenses to reserve that prerogative, and it does not "sell" video poker licenses in the ordinary commercial sense. Furthermore, while a patent holder may sell her patent, see §261 ("patents shall have the attributes of personal property"), the State may not sell its licensing authority. Instead of a patent holder's interest in an unlicensed patent, the better analogy is to the Federal Government's

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 103 of 221
RECEIVED TIME NOV. 9. 11:52AM

interest in an unissued patent. That interest, like the State's interest in licensing video poker operations, surely implicates the Government's role as sovereign, not as property holder. See U. S. Const., Art. I, §8, cl. 8.

The Government also compares the State's licensing power to a franchisor's right to select its franchisees. On this view, Louisiana's video poker licensing scheme represents the State's venture into the video poker business. Although the State could have chosen to run the business itself, the Government says, it decided to franchise private entities to carry out the operations instead. However, a franchisor's right to select its franchisees typically derives from its ownership of a trademark, brand name, business strategy, or other product that it may trade or sell in the open market. Louisiana's authority to select video poker licensees rests on no similar asset. It rests instead upon the State's sovereign right to exclude applicants deemed unsuitable to run video poker operations. A right to exclude in that governing capacity is not one appropriately labeled "property." See Tr. of Oral Arg. 25. Moreover, unlike an entrepreneur or business partner who shares both losses and gains arising from a business venture, Louisiana cannot be said to have put its labor or capital at risk through its fee-laden licensing scheme. In short, the State did not decide to venture into the video poker business; it decided typically to permit, regulate, and tax private operators of the games.

We reject the Government's theories of property rights not simply because they stray from traditional concepts of property. We resist the Government's reading of §1341 as well because it invites us to approve a sweeping expansion of federal criminal jurisdiction in the absence of a clear statement by Congress. Equating issuance of licenses or permits with deprivation of property would subject to federal mail fraud prosecution a wide range of conduct traditionally regulated by state and local authorities. We

0111009051 26

note in this regard that Louisiana's video poker statute typically and unambiguously imposes criminal penalties for making false statements on license applications. La. Rev. Stat. Ann. §27:309(A) (West Supp. 2000). As we reiterated last Term, " 'unless Congress conveys its purpose clearly, it will not be deemed to have significantly changed the federal-state balance' in the prosecution of crimes." *Jones* v. *United States*, 529 U. S. 848, 858 (2000) (quoting *United States* v. *Bass*, 404 U. S. 336, 349 (1971)).

Moreover, to the extent that the word "property" is ambiguous as placed in §1341, we have instructed that "ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity." *Rewis* v. *United States*, 401 U. S. 808, 812 (1971). This interpretive guide is especially appropriate in construing §1341 because, as this case demonstrates, mail fraud is a predicate offense under RICO, 18 U. S. C. §1961(1) (1994 ed., Supp. IV), and the money laundering statute, §1956(c)(7)(A). In deciding what is "property" under §1341, we think "it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite." *United States* v. *Universal C. I. T. Credit Corp.*, 344 U. S. 218, 222 (1952).

Finally, in an argument not raised below but urged as an alternate ground for affirmance, the Government contends that §1341, as amended in 1909, defines two independent offenses: (1) "any scheme or artifice to defraud" and (2) "any scheme or artifice . . . for obtaining money or property by means of false or fraudulent pretenses, representations, or promises." Because a video poker license is property in the hands of the licensee, the Government says, Cleveland "obtain[ed] . . . property" and thereby committed the second offense even if the license is not property in the hands of the State.

0111009051 27

Although we do not here question that video poker licensees may have property interests in their licenses,[4] we nevertheless disagree with the Government's reading of §1341. In *McNally*, we recognized that "[b]ecause the two phrases identifying the proscribed schemes appear in the disjunctive, it is arguable that they are to be construed independently." 483 U. S., at 358. But we rejected that construction of the statute, instead concluding that the second phrase simply modifies the first by "ma[king] it unmistakable that the statute reached false promises and misrepresentations as to the future as well as other frauds involving money or property." *Id.*, at 359. Indeed, directly contradicting the Government's view, we said that "the mail fraud statute . . . had its origin in the desire to protect individual property rights, and any benefit which the Government derives from the statute must be limited to *the Government's interests as property holder*." *Id.*, at 359, n. 8 (emphasis added). We reaffirm our reading of §1341 in *McNally*. See *Hilton* v. *South Carolina Public Railways Comm'n*, 502 U. S. 197, 205 (1991) ("*stare decisis* is most compelling" where "a pure question of statutory construction" is involved). Were the Government correct that the second phrase of §1341 defines a separate offense, the statute would appear to arm federal prosecutors with power to police false statements in an enormous range of

[4] Notwithstanding the State's declaration that "[a]ny license issued or renewed . . . is not property or a protected interest under the constitutions of either the United States or the state of Louisiana," La. Rev. Stat. Ann. §27:301(D) (West Supp. 2000), "[t]he question whether a state-law right constitutes 'property' or 'rights to property' is a matter of federal law," *Drye* v. *United States*, 528 U. S. 49, 58 (1999) (citing *United States* v. *National Bank of Commerce*, 472 U. S. 713, 727 (1985)). In some contexts, we have held that individuals have constitutionally protected property interests in state-issued licenses essential to pursuing an occupation or livelihood. See, *e.g.*, *Bell* v. *Burson*, 402 U. S. 535, 539 (1971) (driver's license).

0111009051 28

submissions to state and local authorities. For reasons already stated, see *supra*, at 11–12, we decline to attribute to §1341 a purpose so encompassing where Congress has not made such a design clear.

## IV

We conclude that §1341 requires the object of the fraud to be "property" in the victim's hands and that a Louisiana video poker license in the State's hands is not "property" under §1341. Absent clear statement by Congress, we will not read the mail fraud statute to place under federal superintendence a vast array of conduct traditionally policed by the States. Our holding means that Cleveland's §1341 conviction must be vacated. Accordingly, the judgment of the United States Court of Appeals for the Fifth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

RECEIVED TIME NOV. 9. 11:52AM

0 1 2 1 3 0 7 3 0 . 9

BENJAMIN R. SLATER, JR.
BENJAMIN R. SLATER, III
MARK E. VAN HORN
RICHARD J. TOMENY, JR.
KEVIN M. WHEELER*
A. ELISE BROWN
CORY R. CAHN
MICHAEL O. WAGUESPACK
S. JOSEPH WELBORN

**SLATER LAW FIRM**
(A PROFESSIONAL CORPORATION)
SUITE 2600
POYDRAS CENTER
650 POYDRAS STREET
NEW ORLEANS, LOUISIANA 70130-6101

TELEPHONE (504) 523-7333
FACSIMILE (504) 528-1080

COUNSEL
W. MALCOLM STEVENSON**

ALSO ADMITTED IN
**MISSISSIPPI
*THE DISTRICT OF COLUMBIA AND TEXAS

December 8, 2000
18,457-5201

Doug Welborn
Clerk of Court
19th Judicial District Court
Parish of East Baton Rouge
P.O. Box 1991
Baton Rouge, Louisiana 70821-1991

Re: *Alvin C. Copeland v. Treasure Chest Casino and Robert Guidry*
19th JDC, No. 464-607, Division "D"

Dear Mr. Welborn:

Please find enclosed one original and one copy of our Ex Parte Motion and Order to Withdraw as Counsel of Record, which we would appreciate your filing into the record of the above mentioned matter, and returning a conformed copy to me in the enclosed self-addressed, stamped envelope.

Also enclosed is a check in the amount of $14.60 to cover filing fees. Please do not hesitate to contact me should you have any questions.

Very truly yours,

Benj. R. Slater, III

BRSIII/mss
Enclosure
cc: All counsel of record

REC'D C.P.
DEC 14 2000

DEC 12 2000



# CHOPIN, WAGAR, COLE, RICHARD, REBOUL & KUTCHER, LLP
Attorneys at Law

Richard A. Chopin †‡
Nelson W. Wagar, III †‡
Kevin L. Cole ‡
Thomas M. Richard
Brian L. Reboul
Robert A. Kutcher ±
Elizabeth Smyth Sirgo
Nicole S. Tygier

*Of Counsel*
John B. Krentel

Two Lakeway Center - Suite 900
3850 North Causeway Boulevard
Metairie, Louisiana 70002
Telephone: 504-830-3838
Telefax: 504-836-9540

Three Sanctuary Boulevard - Suite 301
Mandeville, Louisiana 70471
Telephone: 504-674-6680
Telefax: 504-674-6681

Michael L. Cohen
Vicki A. Turko ‡
Diana L. Tonagel
Patricia D. Tunmer
John S. Bair
Judith A. Miller
Matthew D. Monson
Keegan E. Chopin
Cynthia J. Thomas §°
Jason P. Foote
John G. Alsobrook

† Professional Corporation
‡ Also Admitted in Texas
± Also Admitted in New York
§ Also Admitted in D.C.
° Also Admitted in Puerto Rico

**Writer's Direct Numbers:**

**(504) 830-3824 Telephone**
**(504) 836-9573 Fax**
**ntygier@chopin.com**

**Please Reply to**
**Metairie Office**

April 6, 2001

***Via Facsimile and Overnight Mail***

Clerk of Court
19th Judicial District Court
Parish of East Baton Rouge
222 St. Louis Street
Baton Rouge, LA 70802

***Re: Alvin C. Copeland v. Treasure Chest Casino, LLC and Robert J. Guidry***
***19th JDC No. 464-607(D), Our File No. 245.2433***

Dear Sir/Madam:

Enclosed please find the original and 2 copies of a Notice of Appeal, which we ask that you please fax file in the above captioned matter on behalf of plaintiff, Alvin C. Copeland, and thereafter return a conformed copy of same to the undersigned.

In this connection, I enclose our check in the amount of $55.00 to cover the court costs incurred as a result of this filing.

1 14030742003

Should you have any questions, please do not hesitate to contact me.

Yours very truly,

Nicole S. Tygier

NST/csp
***Enclosure***

cc: The Honorable Janice Clark *(w/enclosure, via facsimile and Overnight Mail)*
Lanny R. Zatzkis, Esq. *(w/enclosure, via facsimile and U.S. Mail)*
Winston DeCuir, Esq. *(w/enclosure, via facsimile and U.S. Mail)*
Ralph Capitelli, Esq. *(w/enclosure, via facsimile and U.S. Mail)*
Arthur A. Lemann, III, Esq. *(w/enclosure, via facsimile and U.S. Mail)*
Benjamin R. Slater, III, Esq. *(w/enclosure, via facsimile and U.S. Mail)*
Paul S. West, Esq. *(w/enclosure, via facsimile and U.S. Mail)*
Stephen A. Quidd, Esq. *(w/enclosure, via facsimile and U.S. Mail)*
E. Barton Conradi, Esq. *(w/enclosure, via facsimile and U.S. Mail)*
Michael A. Patterson, Esq. *(w/enclosure, via facsimile and U.S. Mail)*

1)4090743000 1

* * * COMMUNI ION RESULT REPORT ( APR. 6. 2001 1 AM ) * * *

TTI EBR CLERK OF COURT

| FILE MODE | OPTION | ADDRESS (GROUP) | RESULT | PAGE |
|---|---|---|---|---|
| 3440 MEMORY TX | | 915048369540 | OK | 1/1 |

**POSTED**

APR 6 2001

REASON FOR ERROR
E-1) HANG UP OR LINE FAIL
E-3) NO ANSWER

E-2) BUSY
E-4) NO FACSIMILE CONNECTION

# DOUG WELBORN

## CLERK OF COURT

19TH JUDICIAL DISTRICT
PARISH OF EAST BATON ROUGE

Suit Accounting Dept.
P. O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392

www.ebrclerkofcourt.org

## FAX RECEIPT

From: Suit Accounting Department
Fax Number: (225) 389-3392
To: R. Kutcher

Date: 4-6-01
Suit No.: 464607
Division: D

Copeland vs. Treasure Chest

Item(s) Received: nt. of appeal

Amount Due (includes $5.00 Fax Fee and $.50 per page) $ 15.45

The Clerk of Court's office has received, by facsimile transmission, documents in the above referenced case. It has been filed as of this date. In accordance with R.S. 13:850 (B), the original and applicable fees should be forwarded to this office within five (5) days.



# DOUG WELBORN
## CLERK OF COURT

19TH JUDICIAL DISTRICT
PARISH OF EAST BATON ROUGE

Suit Accounting Dept.
P. O. Box 1991
Baton Rouge, LA 70821-1991
Tel: (225) 389-3982
Fax: (225) 389-3392

www.ebrclerkofcourt.org

1140907430001

## FAX RECEIPT

From: Suit Accounting Department
Fax Number: (225) 389-3392
To: R. Kutcher

Date: 4-6-01
Suit No.: 464607
Division: D

Copeland vs. Treasure Chest

Item(s) Received: nt. of appeal

Amount Due (includes $5.00 Fax Fee and $.50 per page) $ 15.45

The Clerk of Court's office has received, by facsimile transmission, documents in the above referenced case. It has been filed as of this date. In accordance with R.S. 13:850 (B), the original and applicable fees should be forwarded to this office within five (5) days.

In accordance with 13:850 (B) (3), a transmission fee of $5.00 should be forwarded to the Clerk of Court with the original document. The fax filing fee is necessary even if filing in forma pauperis.

**NO FURTHER ACTION WILL BE TAKEN WITH THIS DOCUMENT UNTIL THE ORIGINAL AND NECESSARY FILING FEES ARE RECEIVED IN THIS OFFICE.**

---

**SERVICE/SUBPOENA REQUESTS WILL NOT BE ISSUED FROM FAX- ISSUANCE BY ORIGINAL REQUESTS ONLY!**

---

**PLEASE ATTACH THIS RECEIPT TO YOUR ORIGINAL.**
**IF FILING IN PERSON, NOTIFY FILING CLERK OF PREVIOUS FAX.**

Tracey Vicolo

*Deputy Clerk of Court for*
*Doug Welborn, Clerk of Court*

Acct. Dept. Form #6
Rev. 1/2000

# CHOPIN, WAGAR, COLE, RICHARD, REBOUL & KUTCHER, LLP

Attorneys at Law

Richard A. Chopin †‡
Nelson W. Wagar, III †‡
Kevin L. Cole ‡
Thomas M. Richard
Brian L. Reboul
Robert A. Kutcher ±
Elizabeth Smyth Sirgo
Nicole S. Tygier

*Of Counsel*
John B. Krentel

Two Lakeway Center - Suite 900
3850 North Causeway Boulevard
Metairie, Louisiana 70002
Telephone: 504-830-3838
Telefax: 504-836-9540

Three Sanctuary Boulevard - Suite 301
Mandeville, Louisiana 70471
Telephone: 504-674-6680
Telefax: 504-674-6681

Michael L. Cohen
Vicki A. Turko ‡
Diana L. Tonagel
Patricia D. Tunmer
John S. Bair
Judith A. Miller
Matthew D. Monson
Keegan E. Chopin
Cynthia J. Thomas §°
Jason P. Foote
John G. Alsobrook

† Professional Corporation
‡ Also Admitted in Texas
± Also Admitted in New York
§ Also Admitted in D.C.
° Also Admitted in Puerto Rico

**Writer's Direct Numbers:**

**(504) 830-3824 Telephone**
**(504) 836-9573 Fax**
**ntygier@chopin.com**

**Please Reply to**
**Metairie Office**

April 6, 2001

***Via Facsimile and Overnight Mail***

Clerk of Court
19th Judicial District Court
Parish of East Baton Rouge
222 St. Louis Street
Baton Rouge, LA 70802

***Re:*** ***Alvin C. Copeland v. Treasure Chest Casino, LLC and Robert J. Guidry***
***19th JDC No. 464-607(D), Our File No. 245.2433***

Dear Sir/Madam:

Enclosed please find the original and 2 copies of a Notice of Appeal, which we ask that you please fax file in the above captioned matter on behalf of plaintiff, Alvin C. Copeland, and thereafter return a conformed copy of same to the undersigned.

In this connection, I enclose our check in the amount of $55.00 to cover the court costs incurred as a result of this filing.

1140907430002

# CHOPIN, WAGAR, COLE, RICHARD, REBOUL & KUTCHER, LLP

Attorneys at Law

# FAX COVER SHEET

THIS COMMUNICATION IS CONFIDENTIAL AND INTENDED ONLY FOR THE ADDRESSEE. ANY DISTRIBUTION OR DUPLICATION OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU RECEIVE THIS TELECOPY IN ERROR, PLEASE CALL SENDER IMMEDIATELY.

DATE: April 6, 2001

A TOTAL OF 5 PAGES (INCLUDING THIS COVER SHEET) IS BEING SENT

Sender's Direct Dial: **(504) 830-3820/3824**
Sender: **Robert A. Kutcher/Nicole S. Tygier**
File No.: **245.2433**

TO: **Clerk's Office, 19th JDC**

FAX NO.: **1 (225) 389-3392**

RE: **Alvin C. Copeland v. Treasure Chest Casino, L.L.C. and Robert J. Guidry**

COMMENTS:

Should you have any problems receiving this transmission, call Julie Wisecarver at (504) 830-3987.

RECEIVED TIME APR. 6. 11:11AM

1)4090743004

Should you have any questions, please do not hesitate to contact me.

Yours very truly,

Nicole S. Tygier

NST/csp
***Enclosure***

cc: The Honorable Janice Clark *(w/enclosure, via facsimile and Overnight Mail)*
Lanny R. Zatzkis, Esq. *(w/enclosure, via facsimile and U.S. Mail)*
Winston DeCuir, Esq. *(w/enclosure, via facsimile and U.S. Mail)*
Ralph Capitelli, Esq. *(w/enclosure, via facsimile and U.S. Mail)*
Arthur A. Lemann, III, Esq. *(w/enclosure, via facsimile and U.S. Mail)*
Benjamin R. Slater, III, Esq. *(w/enclosure, via facsimile and U.S. Mail)*
Paul S. West, Esq. *(w/enclosure, via facsimile and U.S. Mail)*
Stephen A. Quidd, Esq. *(w/enclosure, via facsimile and U.S. Mail)*
E. Barton Conradi, Esq. *(w/enclosure, via facsimile and U.S. Mail)*
Michael A. Patterson, Esq. *(w/enclosure, via facsimile and U.S. Mail)*

RECEIVED TIME APR. 6. 11:11AM

1)4090743005

**19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

**NO. 464-607** **DIVISION "D"**

**ALVIN C. COPELAND**

**-versus-**

**TREASURE CHEST CASINO, L.L.C. and ROBERT J. GUIDRY**

COST OK Amt.

**Filed:**____________________ ____________________ **Deputy Clerk**

APR - 6 2001
BY: CLERK OF COURT

## NOTICE OF APPEAL

**TO:**

Lanny R. Zatzkis, Esq.
ZATZKIS & ASSOCIATES
Suite 2750 Poydras Center
650 Poydras Street
New Orleans, LA 70130

Paul S. West, Esq.
MCGLINCHEY STAFFORD
One American Place, 9th Floor
Baton Rouge, LA 70825

Winston G. DeCuir, Esq.
DECUIR & CLARK, L.L.P.
1961 Government Street
Baton Rouge, LA 70806

Stephen A. Quidd, Esq.
P. O. Box 67148
Baton Rouge, LA 70896

Ralph Capitelli, Esq.
CAPITELLI & WICKER
Suite 2950 Energy Centre
1100 Poydras Street
New Orleans, LA 70163

E. Barton Conradi, Esq.
LAW OFFICE OF E. BARTON CONRADI
343 Third Street
Suite 506
Baton Rouge, LA 70801

Arthur A. Lemann, III, Esq.
ARTHUR A. LEMANN, III & ASSOCIATES
938 Lafayette Street, Suite 100
New Orleans, LA 70113

Michael A. Patterson, Esq.
THE LONG LAW FIRM
4041 Essen Lane, Suite 500
Baton Rouge, LA 70809

Benjamin R. Slater, III, Esq.
SLATER LAW FIRM
650 Poydras Street, Suite 2600
New Orleans, LA 70130

Notice is hereby given that Plaintiff, Alvin C. Copeland, hereby appeals to the Court of Appeal for the First Circuit from the Judgment rendered in favor of Defendants, Treasure Chest Casino, L.L.C. and Robert Guidry, on January 31, 2001, and signed on March 7, 2001.

RECEIVED TIMEAPR. 6. 11:11AM

104090743006

Respectfully submitted,

*CHOPIN, WAGAR, COLE, RICHARD, REBOUL & KUTCHER, L.L.P.*

By: ______________________

**ROBERT A. KUTCHER, Bar No. 7895, TA**
**NICOLE S. TYGIER, Bar No. 19814**
**VICKI A. TURKO, Bar No. 24677**
Two Lakeway Center, Suite 900
3850 N. Causeway Boulevard
Metairie, LA 70002
Telephone: (504) 830-3838

***Attorneys for Plaintiff, Alvin C. Copeland***

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served upon all counsel of record in this proceeding by facsimile or by depositing a copy of same in the United States Mail, postage prepaid, this 6th day of April, 2001.

______________________

CERTIFIED ... 093734 BY____ DEPUTY CLERK ... RECORDER FOR ... CLERK OF ... E.B.R. PARISH

RECEIVED TIME APR. 6. 11:11AM



# ALPHABETICAL INDEX

**PLEADINGS:** **PAGE NO.**

CLERK'S CERTIFICATE------------------------MAY 30, 2001--------------------------------216

CONSENT JUDGMENT----------------------DECEMBER 2, 1999---------------------------57

EX PARTE MOTION AND ORDER TO WITHDRAW AS COUNSEL OF RECORD FILED BY PLAINTIFF ALVIN COPELAND--------------------------------DECEMBER 12, 2000---------------------206

EX PARTE MOTION AND ORDER TO TRANSFER CASE AND CONSOLIDATE FILED BY PLAINTIFF ALVIN C. COPELAND—SEPTEMBER 15, 1999-------------------------35

EXCEPTION OF NO CAUSE OF ACTION FILED BY DEFENDANT ROBERT GUIDRY--------OCTOBER 6, 2000--------------------------131

EXCEPTION OF NO RIGHT OF ACTION OF IN THE ALTERNATIVE, EXCEPTION OF VAGUENESS FILED BY DEFENDANT ROBERT GUIDRY-------------------------------------------OCTOBER 6, 2000--------------------------128

EXCEPTION OF PRESCRIPTION OF PLAINTIFF'S CIVIL RICO CLAIM FILED BY DEFENDANT ROBERT GUIDRY------------------------------OCTOBER 6, 2000---------------------------125

JOINT MOTION AND ORDER FOR ENTRY OF CONSENT JUDGMENT FIELD BY PLAINTIFF AND DEFENDANT---------------------------APRIL 5, 2000-----------------------------------64

JOINT MOTION FOR ENTRY OF CONSENT JUDGMENT FLED BY DEFENDANT TREASURE CHEST L.L.C, ET AL.-------------------------DECEMBER 2, 1999---------------------------55

JUDGMENT------------------------------------DECEMBER 16, 1999--------------------------58

JUDGMENT----------------------------------------MARCH 6, 2001-----------------------------209

MEMORANDUM IN OPPOSITION TO EXCEPTION OF PRESCRIPTION OF PLAINTIFF'S CIVIL RICO CLAIM------------------------------185

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO TRANSFER AND CONSOLIDATE--------------------------------NOVEMBER 15, 1999------------------------42

Civil Form 770 Rev. 8/99
Clerk of Court/Appeals Dept.

## ALPHABETICAL INDEX

**PLEADINGS:** **PAGE NO.**

MEMORANDUM IN OPPOSITION TO TREASURE CHEST CASINO'S PEREMPTORY EXCEPTION OF NO CAUSE OF ACTION (WITH EXHIBIT)-------NOVEMBER 10, 2000---------------------161

MEMORANDUM IN SUPPORT OF EX PARTE MOTION TO TRANSFER CASE AND CONSOLIDATE FILED BY PLAINTIFF ALVIN C. COPELAND----------------------SEPTEMBER 15, 1999--------------------------34

MEMORANDUM IN SUPPORT OF EXCEPTION OF PRESCRIPTION OF PLAINTIFF'S RICO CLAIM------------------------------------------134

MINUTES OF THE COURT---------------------MAY 30, 2001-------------------------------01

MOTION AND ORDER FOR APPEAL FILED BY PLAINTIFF ALVIN C. COPELAND-------MAY 3, 2001-------------------------------213

MOTION AND ORDER FOR EXTENSION OF TIME FILED BY DEFENDANT TREASURE CHEST CASINO, L.L.C.----------------------OCTOBER 12, 1999----------------------------39

MOTION AND ORDER FOR EXTENSION OF TIME FILED BY DEFENDANT TREASURE CHEST CASINO, L.L.C, ET AL.------------MAY 22, 2000-----------------------------------69

MOTION AND ORDER FOR EXTENSION OF TIME WITHIN WHICH TO PLEAD FILED BY DEFENDANT ROBERT GUIDRY-----OCTOBER 8, 1999------------------------------37

MOTION AND ORDER INCORPORATED MEMORANDUM FOR EXTENSION OF TIME WITHIN WHICH TO/ PLEAD FIELD BY DEFENDANTS TREASURE CHEST L.L.C AND ROBERT GUIDRY----SEPTEMBER 29, 2000------------------------77

MOTION AND ORDER TO CONTINUE HEARING ON MOTION TO DISQUALIFY COUNSEL FILED BY PLAINTIFF ALVIN COPELAND---------OCTOBER 6, 2000-------------------------156

MOTION AND ORDER TO DISQUALIFY COUNSEL FILED BY DEFENDANT ROBERT GUIDRY (WITH MEMO AND EXHIBIT)—SEPTEMBER 29, 2000----------------------81

## ALPHABETICAL INDEX

**PLEADINGS:** **PAGE NO.**

MOTION AND ORDER TO ENROLL ADDITIONAL COUNSEL FILED BY DEFENDANT ROBERT GUIDRY----------------------------------------JUNE 19, 2000----------------------------------72

MOTION AND ORDER TO STAY WITH INCORPORATED MEMORANDUM AND/OR MOTION TO CONTINUE HEARING ON PLAINTIFF'S MOTION T CONSOLIDATE FILED BY DEFENDANT ROBERT GUIDRY----------------------------------------NOVEMBER 8, 1999--------------------------49

MOTION AND ORDER TO STAY WITH INCORPORATED MEMORANDUM FILED BY DEFENDANT ROBERT GUIDRY----------MARCH 20, 2000-------------------------------59

NOTICE OF APPEAL FILED BY PLAINTIFF ALVIN C. COPELAND--------------------------MAY 3, 2001--------------------------------215

NOTICE OF RETURN DATE-------------------MAY 29, 2001---------------------------215-A

ORAL REASONS (1/31/2001)------------------------------------------------------------210-A

ORDER EXTENDING STAY----------------JUNE 19, 2000----------------------------------74

PETITION FOR DAMAGES FIELD BY PLAINTIFF ALVIN C. COPELAND-----------------------SEPTEMBER 15, 1999-------------------------06

SUPPLEMENTAL MEMORANDUM IN SUPPORT OF EXCEPTION OF NO CAUSE OF ACTION (WITH ATTACHMENT)-------------------------NOVEMBER 15, 2000--------------------191

TREASURE CHEST CASINO, L.L.C'S MOTION AND ORDER FOR EXTENSION OF TIME WITHIN WHICH TO PLEAD----------OCTOBER 6, 2000---------------------------122

TREASURE CHEST CASINO'S PEREMPTORY EXCEPTION OF NO CAUSE OF ACTION WITH ORDER-OCTOBER 30, 2000-----------------------158

UNOPPOSED MOTION FOR EXTENSION OF STAY ORDER FILED BY DEFENDANT TREASURE CHEST CASINO L.L.C.----------------------MAY 22, 2000-----------------------------------67

# N O T I C E

THIS APPEAL RECORD IS A TRUE CERTIFIED COPY OF THE ENTIRE RECORD OF PLEADINGS, ATTACHMENTS, ETC. THAT WERE FILED WITH THE CLERK OF COURT TO BE FILED IN THE CASE RECORD.

THE CLERK OF COURT, CIVIL APPEALS DEPARTMENT WILL NO LONGER RETRIEVE MEMORANDUMS/BRIEFS, ANY ATTACHMENTS TO PLEADINGS NOR ANY DOCUMENTS/PLEADINGS THAT WERE NOT FILED WITH THE CLERK OF COURT OFFICE, BUT WERE SENT TO THE JUDGE'S OFFICE FOR HIS/HER PERSONAL FILE.

IF YOUR PLEADING, MEMO/BRIEF OR ATTACHMENTS WERE GIVEN TO THE JUDGE FOR CONSIDERATION, AND NEED TO BE APART OF THIS APPEAL RECORD, ATTORNEY OF RECORD MUST FILE A MOTION AND ORDER TO SUPPLEMENT APPEAL RECORD AND ATTACH SUCH PLEADING/DOCUMENT TO THE MOTION TO SUPPLEMENT APPEAL RECORD.

COST OF SUPPLEMENTAL APPEAL RECORD WILL BE THE RESPONSIBILITY OF ATTORNEY REQUESTING THE SUPPLEMENTAL. COST MUST BE PAID BEFORE THE SUPPLEMENTAL RECORD IS LODGED AT THE COURT OF APPEAL.

PLEASE NOTIFY CIVIL APPEALS IF YOU FILE A MOTION AND ORDER TO SUPPLEMENT

## CHRONOLOGICAL INDEX

**PLEADINGS:** **FILING DATE:** **PAGE NO.**

PETITION FOR DAMAGES FIELD BY PLAINTIFF
ALVIN C. COPELAND------------------------SEPTEMBER 15, 1999-------------------------06

MEMORANDUM IN SUPPORT OF EX
PARTE MOTION TO TRANSFER CASE AND
CONSOLIDATE FILED BY PLAINTIFF
ALVIN C. COPELAND-----------------------SEPTEMBER 15, 1999---------------------------34

EX PARTE MOTION AND ORDER TO
TRANSFER CASE AND CONSOLIDATE FILED
BY PLAINTIFF ALVIN C. COPELAND—SEPTEMBER 15, 1999-------------------------35

MOTION AND ORDER FOR EXTENSION OF
TIME WITHIN WHICH TO PLEAD FILED
BY DEFENDANT ROBERT GUIDRY-----OCTOBER 8, 1999------------------------------37

MOTION AND ORDER FOR EXTENSION OF
TIME FILED BY DEFENDANT TREASURE
CHEST CASINO, L.L.C.----------------------OCTOBER 12, 1999---------------------------39

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S
MOTION TO TRANSFER AND
CONSOLIDATE-------------------------------NOVEMBER 15, 1999------------------------42

MOTION AND ORDER TO STAY WITH INCORPORATED
MEMORANDUM AND/OR MOTION TO CONTINUE
HEARING ON PLAINTIFF'S MOTION T
CONSOLIDATE FILED BY DEFENDANT ROBERT
GUIDRY-----------------------------------------NOVEMBER 8, 1999--------------------------49

JOINT MOTION FOR ENTRY OF CONSENT
JUDGMENT FLED BY DEFENDANT TREASURE
CHEST L.L.C, ET AL.------------------------DECEMBER 2, 1999---------------------------55

CONSENT JUDGMENT---------------------DECEMBER 2, 1999---------------------------57

JUDGMENT-----------------------------------DECEMBER 16, 1999--------------------------58

MOTION AND ORDER TO STAY WITH
INCORPORATED MEMORANDUM FILED BY
DEFENDANT ROBERT GUIDRY----------MARCH 20, 2000-------------------------------59

# CHRONOLOGICAL INDEX

**PLEADINGS:** **FILING DATE:** **PAGE NO.**

JOINT MOTION AND ORDER FOR ENTRY OF CONSENT JUDGMENT FIELD BY PLAINTIFF AND DEFENDANT---------------------------APRIL 5, 2000-----------------------------------64

UNOPPOSED MOTION FOR EXTENSION OF STAY ORDER FILED BY DEFENDANT TREASURE CHEST CASINO L.L.C.----------------------MAY 22, 2000-----------------------------------67

MOTION AND ORDER FOR EXTENSION OF TIME FILED BY DEFENDANT TREASURE CHEST CASINO, L.L.C, ET AL.-------------MAY 22, 2000-----------------------------------69

MOTION AND ORDER TO ENROLL ADDITIONAL COUNSEL FILED BY DEFENDANT ROBERT GUIDRY-----------------------------------------JUNE 19, 2000-----------------------------------72

ORDER EXTENDING STAY----------------JUNE 19, 2000-----------------------------------74

MOTION AND ORDER INCORPORATED MEMORANDUM FOR EXTENSION OF TIME WITHIN WHICH TO/ PLEAD FIELD BY DEFENDANTS TREASURE CHEST L.L.C AND ROBERT GUIDRY----SEPTEMBER 29, 2000------------------------77

MOTION AND ORDER TO DISQUALIFY COUNSEL FILED BY DEFENDANT ROBERT GUIDRY (WITH MEMO AND EXHIBIT)—SEPTEMBER 29, 2000-----------------------81

TREASURE CHEST CASINO, L.L.C'S MOTION AND ORDER FOR EXTENSION OF TIME WITHIN WHICH TO PLEAD----------OCTOBER 6, 2000---------------------------122

EXCEPTION OF PRESCRIPTION OF PLAINTIFF'S CIVIL RICO CLAIM FILED BY DEFENDANT ROBERT GUIDRY------------------------------OCTOBER 6, 2000---------------------------125

EXCEPTION OF NO RIGHT OF ACTION OF IN THE ALTERNATIVE, EXCEPTION OF VAGUENESS FILED BY DEFENDANT ROBERT GUIDRY-----------------------------------------OCTOBER 6, 2000--------------------------128

EXCEPTION OF NO CAUSE OF ACTION FILED BY DEFENDANT ROBERT GUIDRY--------OCTOBER 6, 2000--------------------------131

Civil Form #71 Rev. 8/89

# CHRONOLOGICAL INDEX

**PLEADINGS:** **FILING DATE:** **PAGE NO.**

MEMORANDUM IN SUPPORT OF EXCEPTION OF
PRESCRIPTION OF PLAINTIFF'S RICO CLAIM------------------------------------------134

MOTION AND ORDER TO CONTINUE HEARING
ON MOTION TO DISQUALIFY COUNSEL FILED
BY PLAINTIFF ALVIN COPELAND---------OCTOBER 6, 2000--------------------------156

TREASURE CHEST CASINO'S PEREMPTORY EXCEPTION
OF NO CAUSE OF ACTION WITH ORDER-OCTOBER 30, 2000------------------------158

MEMORANDUM IN OPPOSITION TO TREASURE CHEST
CASINO'S PEREMPTORY EXCEPTION OF NO
CAUSE OF ACTION (WITH EXHIBIT)-------NOVEMBER 10, 2000---------------------161

MEMORANDUM IN OPPOSITION TO EXCEPTION
OF PRESCRIPTION OF PLAINTIFF'S CIVIL RICO CLAIM------------------------------185

SUPPLEMENTAL MEMORANDUM IN SUPPORT
OF EXCEPTION OF NO CAUSE OF ACTION
(WITH ATTACHMENT)-------------------------NOVEMBER 15, 2000--------------------191

EX PARTE MOTION AND ORDER TO WITHDRAW
AS COUNSEL OF RECORD FILED BY PLAINTIFF
ALVIN COPELAND------------------------------DECEMBER 12, 2000---------------------206

JUDGMENT---------------------------------------MARCH 6, 2001----------------------------209

ORAL REASONS (1/31/2001)---------------------------------------------------------------210-A

MOTION AND ORDER FOR APPEAL FILED
BY PLAINTIFF ALVIN C. COPELAND-------MAY 3, 2001--------------------------------213

NOTICE OF APPEAL FILED BY PLAINTIFF
ALVIN C. COPELAND--------------------------MAY 3, 2001--------------------------------215

NOTICE OF RETURN DATE-------------------MAY 29, 2001--------------------------215-A

MINUTES OF THE COURT---------------------MAY 30, 2001-------------------------------01

CLERK'S CERTIFICATE------------------------MAY 30, 2001------------------------------216

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 124 of 221

| ALVIN C. COPELAND PLAINTIFF | NUMBER: 464,670 DIVISION: D |
|---|---|
| | 19TH JUDICIAL DISTRICT COURT |
| VS. | PARISH OF EAST BATON ROUGE |
| | STATE OF LOUISIANA |
| TREASURE CHEST CASINO,L.L.C. AND ROBERT J. GUIDRY DEFENDANT | HONORABLE JANICE CLARK JUDGE PRESIDING |

# MINUTES OF COURT

**FRIDAY, SEPTEMBER 17, 1999**

Assigned for hearing on plaintiff's Ex Parte Motion to Transfer and Consolidate with No. 400,750 on November 15, 1999, at 9:30 a.m. All counsel of record to be notified.

**TUESDAY, NOVEMBER 9, 1999**

In the alternative, it is ordered that the hearing on the plaintiff's motion to consolidate is denied this date. Baton Rouge, Louisiana this 9th day of November, 1999.

**MONDAY, NOVEMBER 15, 1999**

This matter came on for hearing on plaintiff's ex parte motion to transfer and consolidate with suit number 400,750, division "D". Present in court were Benjamin R. Slater, Jr. representing plaintiff; Michael Patterson, representing Louisiana River Boat Gaming; Paul West and Donald Cravin, representing Treasure Chest; Andrew Lee and Larry r. Zatzkis, representing Robert Guidry; the matter was argued and submitted to the court. Whereupon, for oral reasons assigned, the court denied the motion. Treasure Chest and Robert Guidry orally moved for a motion to stay. The matter was argued and submitted. Whereupon, for oral reasons assigned the court granted a 90 day stay in the matter. Judgment to be signed accordingly. Reported by Liz Brown.

/

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 125 of 221

Minutes of Court, (Continued)
Suit Number: ________________ Div. ___________
Page: _______________

**MONDAY, DECEMBER 7, 1999**

Consent judgment rendered herein decreeing that a stay issue in these proceedings for a period of 120 days commencing from November 15, 1999 up to the including Mzrch 14, 2000.

Judgment filed December 2, 1999 and signed this date.

**MONDAY, DECEMBER 20, 1999**

Judgment rendered November 15, 1999 decreeing that the motion for consolidation filed by Alvin C. Copeland is denied.

Judgment filed December 16, 1999 and signed this date.

**TUESDAY, MARCH 21, 2000**

Defendant's motion to stay was denied this date.

**WEDNESDAY, APRIL 5, 2000**

**IT IS ORDERED, ADJUDGED AND DECREED** that a stay issue in these proceedings until the return of a jury verdict in the current criminal proceeding title United States of

2

Civil #87, Rev. 5/86

America V. Edwin Edwards et al., criminal docket no 98-165-B-M2 in the United States District Court for the Middle District of Louisiana, plus an additional 15 days.

**TUESDAY, MAY 23, 2000**

Assigned for hearing on motion for extension of stay order on June 19, 2000, at 9:30 a.m. All counsel of record to be notified.

**MONDAY, JUNE 19, 2000**

This matter came on for hearing on a motion for extension of stay order. Present in court were Paul West, representing Treasure Chest, Henry Lee, representing Paul Guidry. Winston Decuir, enrolled as counsel. The matter was submitted. Whereupon, the court granted a 90 day stay in this matter. See decree. Reported by Liz Brown.

**MONDAY, OCTOBER 2, 2000**

Assigned for hearing n defendant's motion to disqualify counsel on October 16, 2000, at 9:30 am. All counsel of record to be notified.

Minutes of Court, (Continued)
Suit Number: ________________ Div. ___________
Page: ______________

**TUESDAY, OCTOBER 10, 2000**

Assigned for hearing on defendant's exceptions on November 13, 2000, at 9:30 am.All counsel of record to be notified.

**MONDAY, NOVEMBER 13, 2000**

This matter came on for hearing on defendant's motion to disqualify counsel; hearing on Guidry's exception of no cause of action; prescription of plaintiff's rico claim, no right of action; and peremptory exception filed on behalf of Treasure Chest Casino. Present in court; Robert A. Kutcher, Nichole S. Tygier and Benjamin Slater, III on behalf of Alvin Copeland, Lanny Zatzkis, Winston G. Decuir andAndrew Lee on Behalf of Robert Guidry; Paul S. West, on behalf of Treasure Chest Casino, L.L.C. By agreement of counsel, the motion to disqualify counsel will be passed for a period of thirty days and the exception of no right of action will be submitted on briefs. At this time the court took up the exception of no cause of action. Argument of counsel was had and the matter submitted. Whereupon, the court took this matter and the remaining exceptions under advisement. Reported by Nancy Dawson.

**WEDNESDAY, JANUARY 31, 2001**

For oral reasons assigned this date, the exception of no cause of action filed on behalf of Robert Guidry and exception of o cause of action filed on behalf of Treasure Chest, LLC. Previously argued by counsel, submitted to the court, and by the court taken under

advisement on Monday, November 13, 2000, were maintained. Judgment to be signed accordingly. D. Martin. Reporter.

**WEDNESDAY, MARCH 7, 20001**

It is hereby ordered, adjudged and decreed that the exceptions of no cause of action filed by the defendants, Treasure Chest Casino, L.L.C., and Robert Guidry are hereby granted and the petition of the plaintiff, Alvin C. Copeland is hereby dismissed with prejudice. (See decree)

Judgment rendered in Baton Rouge, Louisiana, on January 31, 2001, and signed in chambers of Baton Rouge, Louisiana on the 7th day of March, 2001.

**THURSDAY, MAY 3, 2001**

On motion of counsel for plaintiff, a devolutive appeal is entered herein from the judgment signed March 7, 2001, returnable to Court of Appeal, First Circuit in accordance with law.

A TRUE COPY OF THE MINUTES OF COURT

THIS 30 DAY OF May

~~19~~ 2001.

[signature]

*Deputy Clerk for*
***Doug Welborn, Clerk of Court***
**Parish of East Baton Rouge**
**State of Louisiana**

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 129 of 221

9 9 2 2 0 2 9 7 6 0

19TH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE 464607

STATE OF LOUISIANA

| | | |
|---|---|---|
| **ALVIN C. COPELAND** | * | **DOCKET NO.** |
| **VERSUS** | * | **DIVISION " "** D |
| **TREASURE CHEST CASINO, L.L.C., and ROBERT J. GUIDRY** | * | **JURY TRIAL REQUESTED** |
| | * | |

JT# 3719

COST OK Amt. 190.00

**FILED:** ____________________ ____________________ **DEPUTY CLERK**

SEP 15 1999
BY ____ DY. CLERK OF COURT

**Petition for Damages**

**NOW INTO COURT**, through undersigned counsel, comes plaintiff Alvin C. Copeland ("Copeland"), who respectfully represents the following:

**The Parties**

1.

Plaintiff Copeland, successor to American International Gaming Association, Inc. ("AIGA"), is a competent major and a resident of the Parish of Jefferson, State of Louisiana.

2.

At all pertinent times, AIGA was a Louisiana corporation with its principal place of business located in the Parish of Jefferson, State of Louisiana; Copeland was the sole shareholder of AIGA, and its net assets were transferred to him upon its dissolution. As detailed below, AIGA was an applicant seeking authorization to conduct gaming activities on a riverboat in accordance with the Louisiana Riverboat Economic Development and Gaming Control Act (hereinafter the "Act"), LSA-R.S. 4:501, *et seq*.

3.

Made defendants are Treasure Chest Casino, L.L.C. ("Treasure Chest"), a Louisiana limited liability company formed on August 27, 1993 that is registered to do and doing business in the State of Louisiana; and Robert J. Guidry ("Guidry"), a person of the full age of majority and a resident of Jefferson Parish, State of Louisiana. Defendant Robert J. Guidry was an original member and manager of Treasure Chest, along with Dick J. Guidry. Upon information and belief, Robert Guidry was also the President of Treasure Chest and/or Treasure Chest Casino, Inc. All of the below-referenced acts by Robert Guidry were

REC'D C.B.
SEP 15 1999

undertaken in the course and scope of his position with Treasure Chest and/or Treasure Chest Casino, Inc., which gave him the actual and apparent authority to perform them; Robert Guidry's actions were also done in furtherance of these companies' business activities.

**Venue**

4.

As detailed below, the events and/or omissions giving rise to this action occurred in substantial part in this judicial district, and accordingly venue properly resides in this Court pursuant to La. Code Civ. Proc. arts 42, 73, and/or 74.

**Allegations Common to All Counts**

5.

As detailed below, on information and belief derived from (1) the factual basis of Robert Guidry's guilty plea in criminal case number 3:98cr00144-0, United States District Court for the Middle District of Louisiana (hereinafter "Guidry's guilty plea"), (2) the Superseding Indictment against Edwin Edwards, Stephen Edwards, Cecil Brown, Andrew Martin, Bobby Johnson, Gregory Tarver, and Ecotry Fuller in criminal case number 98-165, United States District Court for the Middle District of Louisiana, Section B-2 (hereinafter the "Edwards Indictment"), and (3) the Bill of Information for Conspiracy to Commit Extortion charged against Richard D. Shetler in criminal case number 98-142-A-M3, United States District Court for the Middle District of Louisiana (hereinafter the "Shetler Bill"), Copeland avers that there existed a scheme to corrupt the entire process for issuing riverboat gaming licenses under the Act (the "overarching corrupt conspiracy"). As detailed below, Treasure Chest and Robert Guidry joined, participated in, and engaged in overt acts in furtherance of the overarching corrupt conspiracy.

**The Guidry Scheme**

6.

During its existence from 1992 through early 1996, the Louisiana Riverboat Gaming Commission (the "Commission") was composed of seven members, all of whom were appointed by Edwin W. Edwards while he was the Governor of the State of Louisiana. The

Act enabled the Gaming Commission to issue rules providing for and determining certain enumerated matters pertaining to riverboat gaming activities.

7.

The Act did not give the Commission the authority to grant riverboat gaming licenses. Rather, the Act gave that power to the Riverboat Gaming Enforcement Division of the Gaming Enforcement section of the office of State Police, Public Safety Services, Department of Public Safety and Corrections (the "Division"). Under the Act, the Division was granted the exclusive authority to "Issue, deny, condition, or restrict licenses and permits" to conduct riverboat gaming activities ("licenses"). LSA-R.S. 4:518(2). The Division was authorized to issue no more than 15 licenses. LSA-R.S. 4:525. Pursuant to this authority, the Division was empowered to conduct investigations and hearings, from which it alone was to determine the suitability of the applicant to be awarded a riverboat gaming license.

8.

Although the Act gave the Division the sole power to issue licenses, the Commission nevertheless issued a set of rules providing for the issuance of Certificates of Preliminary Approval ("certificates") by vote of its members. These certificates purportedly demonstrated that the holders thereof were acceptable to the Commission and therefore should be candidates for actual licensure.

9.

On December 11, 1992, AIGA submitted its application to the Commission for a certificate, and submitted a second application form on February 22, 1993 containing supplemental information. The AIGA application proposed a riverboat route and related operations at the Kenner Laketown Harbor Park on the shores of Lake Pontchartrain. In conjunction with its application, AIGA submitted a check in the amount of $30,000.00, comprised of a $25,000.00 application fee and a $5,000.00 evaluation fee. On February 14, 1993, AIGA submitted to the Division the filing fee of $50,000.00 required to fund the Division's background investigation of applicants for a license. The AIGA application was the first submitted to the Commission that proposed to conduct riverboat gaming in Kenner, Louisiana, and was among the first submitted to the Division for approval.



10.

In connection with its application, AIGA retained a sophisticated group of gaming professionals, with extensive prior experience in casino operations in New Jersey and Nevada, both to coordinate activities necessary to obtain a certificate and license and to manage its proposed riverboat gaming operation. Plaintiff incurred approximately $2.2 million in expenses in preparing and processing AIGA's application for a license. Had plaintiff been aware of Guidry and the Treasure Chest's participation in the overarching corrupt conspiracy, plaintiff would not have incurred the expenses associated with the AIGA application.

11.

On or about February 9, 1993, Guidry formed Treasure Chest Casino, Incorporated (hereinafter "Treasure Chest, Inc."). Upon information and belief, Robert J. Guidry was the President and/or Chairman of the Board of Treasure Chest, Inc.

12.

On information and belief derived from the Edwards Indictment, on February 9, 1993 Guidry also paid Stephen Edwards $25,000.00 for legal services relating to the preparation of the Treasure Chest license application. Further, on information and belief, as the New Orleans Times-Picayune reported on December 5, 1994, "A Guidry-owned video poker company has paid Stephen Edwards $20,000," and "Treasure Chest paid $9,000 to a merchandising company of which Stephen Edwards was a director until he sold his interest in a settlement with the Ethics Commission, which was investigating whether the Governor's children could do business with riverboats." On information and belief, as the New Orleans Times-Picayune reported on December 9, 1997, "In all, Guidry paid Stephen Edwards $75,000 for his work in Guidry's various companies."

13.

Treasure Chest, Inc. submitted its application to the Commission on March 8, 1993, approximately three months after the AIGA application was submitted. The Treasure Chest, Inc. application proposed to locate its gaming riverboat at Kenner's Laketown Harbor Park. On March 26, 1993, the Gaming Commission held a public hearing in Baton Rouge, La. on the Treasure Chest, Inc. application to operate a gaming riverboat; this hearing occurred fewer

than three weeks after Treasure Chest, Inc. filed its application, thereby granting priority to the Treasure Chest, Inc. application over the application filed substantially earlier by AIGA. Treasure Chest, Inc. later filed a modification to its application for a certificate, which proposed re-locating the Treasure Chest, Inc.'s gaming riverboat from the Laketown Harbor Park site to Rivertown, U.S.A., on the banks of the Mississippi River in Kenner.

14.

On June 4, 1993, a public hearing was held in Baton Rouge, La. at which AIGA made a presentation to the Commission on its application for a certificate.

15.

The Commission held another meeting in Baton Rouge, La. on June 18, 1993. By that date, it had approved eight applications for certificates, although none of these eight approved applications involved proposals to locate a gaming riverboat in Kenner. At this meeting, the Chairman of the Commission stated that he had "been asked by the Governor to make one comment on his behalf, and that is that the City of Kenner has expressed that it really desires only one boat and that boat to be located on the river." In addition, at this meeting, the Commission rescinded the resolution that it had adopted on June 4th, which had stated that "a change of waterway" would be "more than a modification and requires a new application." The Commission then adopted a motion "that would allow subsequent changes to applications or status of those applications leaving basically ... discretion as to whether new or not at the discretion of the Chairman with the consent of the Commission." The Commission then voted on eight applications for certificates and approved seven of them; the Treasure Chest, Inc. application for a certificate for its Rivertown location was one of the applications that was approved. As a result, AIGA's application to operate a gaming riverboat at the Laketown Harbor Park site on the shores of Lake Pontchartrain was never considered or voted on by the Commission.

16.

On information and belief, as the New Orleans Times-Picayune reported on June 5, 1998, Governor Edwards "did more than appoint the members of Louisiana's Riverboat Gaming Commission. He also sent clear messages about which bidders he favored. For

example, Dr. Louis James, a former board member, has said he was called to the Governor's Mansion the day before the board was to award the last seven licenses in 1993. James has said Edwards gave him a typewritten list of about a dozen casino boats, including three that involved friends of Edwards."

17.

As detailed above, Treasure Chest Casino, L.L.C. was formed on August 27, 1993. On or about August 30, 1993, Boyd Kenner, a wholly owned subsidiary of Boyd Gaming, a publicly traded corporation domiciled in Las Vegas, Nevada, entered into a casino management agreement with Treasure Chest. Under this agreement Boyd Kenner would be paid a management fee representing ten (10%) percent of the Treasure Chest's net operating profit. In addition, on or about August 30, 1993, Boyd Kenner, Boyd Gaming and Treasure Chest entered into a subscription agreement wherein Boyd Kenner agreed to advance to Treasure Chest $10 million cash upon the granting of a riverboat gaming license to Treasure Chest. The commitment to advance those funds was guaranteed by Boyd Gaming. Subsequently, Boyd Kenner acquired a fifteen (15%) percent interest in Treasure Chest in exchange for a cash payment of $15 million.

18.

On November 13, 1993, subsequent to the approval by the Commission of the Treasure Chest, Inc. application for its Rivertown location, Treasure Chest sought permission to modify the previously filed application to move the site of its proposed route and operations to Lake Pontchartrain. The Commission granted this request over AIGA's objections. Despite the fact that it had been Treasure Chest, Inc. that had applied for the Certificate of Preliminary Approval, the Commission issued a certificate to Treasure Chest Casino, L.L.C. on March 15, 1994.

19.

On information and belief derived from the factual basis of Robert Guidry's guilty plea and/or the Edwards Indictment, Andrew Martin ("Martin"), a close friend, confidant, and associate of then-governor Edwin Edwards, held the title of "Executive Assistant" to Edwin Edwards during Edwards' fourth term as Governor. Beginning no later than April, 1994,

Martin solicited bribes and extortion payments on behalf of Edwin Edwards, and further demanded and received from Guidry and/or Treasure Chest monthly net payments to himself, Edwin Edwards, and Stephen Edwards of approximately $30,000.00 each, in exchange for Martin's, Edwin Edwards', and Stephen Edwards' influence and assistance with the Treasure Chest licensing procedure.

20.

On information and belief derived both from the factual basis of Guidry's guilty plea and/or the Edwards Indictment, in or about April 1994, Robert Guidry, following a favorable decision regarding gaming suitability in connection with a video poker company Guidry owned, had conversations with Andrew Martin concerning the status of Guidry's efforts to obtain approval for his riverboat license from the LSP Gaming Division. At that time, Martin told Guidry that the Treasure Chest was not assured of getting LSP approval. Martin, however, stated that he could help Guidry with the licensing procedure pending before the LSP Gaming Division, but indicated by rubbing his fingers together that it would cost Guidry money for the assistance. Martin stated words to the effect that Governor Edwin Edwards owed him favors, and that he (Martin) would "cash in all my green stamps" to help Guidry. Martin further told Guidry that their assistance, to quote the Edwards indictment, "would cost Guidry 3% of gross revenue as per Louisiana statute, to be divided 1% each between Martin, Edwin Edwards, and Stephen Edwards."

21.

On information and belief, at the time Martin first contacted Guidry, the State Police had not set a date for the hearing on Treasure Chest's application, which was a prerequisite for obtaining a license.

22.

On information and belief derived both from the factual basis of Guidry's guilty plea and/or the Edwards Indictment, in or about April or May 1994, Robert Guidry had other conversations with Andrew Martin in which Martin revised his demand on Guidry. Martin, stating words to the effect that, "you only go around once, I gotta get what I can get," stated that he and Edwin Edwards would accept approximately $100,000 per month to be split

between Martin, Edwin Edwards, and Stephen Edwards, and that payments should begin after Edwin Edwards finished his term as Governor. Guidry agreed to this arrangement, provided that Edwin Edwards himself would confirm the deal with Guidry.

23.

On information and belief derived from the factual basis of Guidry's guilty plea and/or the Edwards Indictment, Guidry met with Martin and Edwin Edwards in a hotel meeting room. Guidry and Edwin Edwards had a conversation while Martin guarded the door. Edwin Edwards asked Guidry if he agreed with the deal proposed by Martin. When Guidry indicated he did, Edwin Edwards responded that they had a deal and assured Guidry that Guidry would get his licensing hearing.

24.

On information and belief, as the New Orleans Times-Picayune reported on December 9, 1997, "During Guidry's effort to license the Treasure Chest, Governor Edwards urged State Police to grant the proposal a licensing hearing, State Police sources have said, a critical step in the approval process."

25.

The State Police held a hearing into Treasure Chest's application in Baton Rouge, La. on May 17, 1994. At this hearing, the following exchange took place between Captain Mark Oxley of the Division and Robert Vosbein, counsel for Treasure Chest, who was under oath:

Capt. Oxley: And are you testifying that there are no elected public officials doing business with Treasure Chest?

Mr. Vosbein: That's correct.

This statement was made by Mr. Vosbein as agent for Treasure Chest and/or Guidry; on information and belief, it was based on information supplied to him by Treasure Chest and/or Guidry. Treasure Chest's representations, through its agent Mr. Vosbein, violated LSA-R.S. 27:70 C. in failing to disclose Treasure Chest's relationship with Edwin Edwards, which was prohibited by LSA-R.S. 27:96 A.

26.

At this same hearing, Captain Oxley and Lieutenant Colonel Kenneth Norris of the Division asked Robert Vosbein and Robert Guidry, both of whom were under oath, the following:

Capt. Oxley: Is or was anyone actually involved in the applicant's business operations in any position or manner who is not listed in the application, who has not since been disclosed and who should be disclosed now?

Mr. Guidry: Would you ask that question again please?

Mr. Vosbein: You're talking about this application?

Capt. Oxley: We're talking about Treasure Chest Casino.

Mr. Guidry: Would you ask it again, please?

Capt. Oxley: Yes, sir. Is or was anyone actually involved in the applicant's business operations in any position or manner and who is not listed in the application? Or has there been anyone not since disclosed that should be disclosed to the Division now?

Mr. Vosbein: There is no such person.

Mr. Guidry: I agree with that.

Capt. Oxley: Is there anyone involved in Treasure Chest Casino who could not fulfill the requirements for a finding of suitability to the best of your knowledge?

Mr. Guidry: No, sir, no one.

Mr. Vosbein: Not to the best of my knowledge.

Capt Oxley: To the best of your knowledge, is there any information or material fact that has not been furnished to State Police, that has not otherwise come to light that may yet be uncovered by the Division or others that may tend to cast doubt or reflect negatively on the qualifications of the applicant or anyone with an interest which you should bring forward at this point in time to the attention of the Division?

Mr. Guidry: No, sir, no one.

Mr. Vosbein: Not to my knowledge.

Capt. Oxley: Thank you.

Lt. Booth: Point of clarification, please, Captain. Your first question dealing with disclosures, was that as to persons or firms? I misunderstood the answer.

Capt. Oxley: That was anyone, I suppose you could say person or persons in a legal sense, or in any other sense. And you answered negatively. Correct?

Mr. Guidry: That's right.

Lt. Booth: No individual or entity. Is that correct?

Mr. Vosbein: That's correct.

Lt. Booth: Okay. Thank you.

Mr. Guidry's testimony, which failed to reveal his association with Edwin Edwards as set forth herein, was in violation of LSA-R.S. 27:70 C.

27.

In conjunction with his submittal of the Treasure Chest application for a license, Guidry executed an "Affidavit of Full Disclosure" on February 26, 1993, wherein Guidry averred, in pertinent part:

> ... except as reported in the Application, I have no agreements or understandings with any person or entity and no present intent to pay any sums of money or give anything of value as, including but without limitation, a finder's fee or commission to any person or entity related to the acquisition of any interest in the Application ...

Pursuant to LSA-R.S. 27:70 C., Guidry had a continuing duty to render a full and accurate disclosure of his association with Edwin Edwards as set forth herein. Upon information and belief, Guidry has never disclosed this association, and has therefore violated his duty under LSA-R.S. 27:70 C.

28.

On May 17, 1994, the Division granted a license to Treasure Chest. On information and belief, Treasure Chest would not have received a license but for the overarching corrupt conspiracy.

29.

Plaintiff avers that, but for the overarching corrupt conspiracy, AIGA would have obtained a license to conduct gaming activities on a riverboat pursuant to the Act, and was suitable to obtain such a license; AIGA, in fact, was granted a video gaming owner's license by the State of Louisiana in June 1994 and a gaming license by the State of Colorado in March 1995. Further, had AIGA known of the overarching corrupt conspiracy, it would not have expended the funds necessary to prepare and submit its application.

30.

On information and belief derived from the factual basis of Guidry's guilty plea and/or the Edwards Indictment, in or about December, 1995, Guidry contacted Andrew Martin regarding his problem with obtaining State Fire Marshal approval for his entertainment barge at the Treasure Chest site. Guidry thereafter met with Martin and, at that meeting, Martin told Guidry that he (Martin) could assist with obtaining Fire Marshal approval. In exchange for his help with approval, Martin demanded that he be given a 2% interest in the net profits of the Treasure Chest and a high ranking employment position with the Treasure Chest after leaving office as Edwin Edwards' Executive Assistant. These payments were in addition to the payments Guidry previously agreed to make to Martin, Edwin Edwards, and Stephen Edwards. Guidry agreed to this arrangement. Shortly thereafter, Guidry received Fire Marshal approval for the entertainment barge.

31.

On information and belief derived from the factual basis of Guidry's guilty plea and/or the Edwards Indictment, commencing in February 1996 and continuing through April, 1997, Guidry made monthly cash payments in the approximate amount of $100,000.00, to be split evenly among Edwin Edwards, Stephen Edwards, and Martin, as payment for their influence and assistance with the Treasure Chest licensing procedure before the LSP Gaming Division. From February 1996 through approximately October 1996, Guidry paid the full $100,000.00 to Martin. Thereafter, Guidry began paying the Edwardses their shares directly, and paid Martin his share separately, often by leaving the cash payments in trash cans or dumpsters for Martin to retrieve.



32.

On information and belief derived from the factual basis of Guidry's guilty plea and/or the Edwards Indictment, on or about November 6, 1996, Guidry cashed a check in the amount of $65,000.00. On the same day, during a telephone conversation recorded by the Federal Bureau of Investigation ("FBI"), Guidry and Edwin Edwards made plans to meet each other along with Stephen Edwards. At the meeting, Guidry delivered the cash to Edwin Edwards and Stephen Edwards as part of the payoff agreement.

33.

On information and belief derived from the factual basis of Guidry's guilty plea and/or the Edwards Indictment, on or about November 13, 1996, during a telephone conversation recorded by the FBI, Martin arranged a meeting between himself, Guidry, and Edwin Edwards to take place on the following Monday in Baton Rouge, in order to discuss the proposed arrangement which Martin sought to execute with Guidry regarding employment with the Treasure Chest and to discuss Martin's receipt of a 2% interest in the net profits from the Treasure Chest in exchange for his assistance with the Fire Marshal.

34.

On information and belief derived from the factual basis of Guidry's guilty plea and/or the Edwards Indictment, on or about November 19, 1996, during a telephone conversation, Edwin Edwards told Robert Guidry that Andrew Martin wanted to execute a "contract" to document Guidry's secret obligation to give Martin a 2% ownership in the Treasure Chest in exchange for Martin's assistance in obtaining Guidry's license.

35.

On information and belief derived from the factual basis of Guidry's guilty plea and/or the Edwards Indictment, on or about November 21, 1996, during a telephone conversation, Andrew Martin and Edwin Edwards discussed the arrangement which Martin wanted Robert Guidry to execute. Edwards informed Martin that Guidry had "kept his word" to all of them, referring to Guidry's agreement to pay them secretly. Edwards further warned Martin that they didn't want to push Guidry too hard and thereby anger him, giving him an excuse to change his mind, and according to Edwards, "risk what's happening," which was, to quote the

Edwards Indictment, "a reference to the payoff split in which Guidry was funneling casino proceeds to Edwin Edwards, Stephen Edwards, and Martin as part of their agreed payoff."

36.

On information and belief derived from the factual basis of Guidry's guilty plea and/or the Edwards Indictment, on or about January 9, 1997, Martin expressed to Edwin Edwards his understanding that Robert Guidry had agreed to give him a contract to "go to work for him" (referring to Guidry) after Edwin Edwards left office as Governor of Louisiana. Edwin Edwards made reference to the fact that " . . . if it wouldn't be for Andrew [Martin] he [Guidry] wouldn't have a boat . . .," referring to the Treasure Chest. Martin reminded Edwards that he [Martin] previously approached Edwards on Guidry's behalf for "all my green stamps from all that [sic] times I helped you [Edwards] in the past...." During the conversation, Martin told Edwards that his financial interest in obtaining the payments and 2% of the Treasure Chest from Guidry was his "retirement plan." Edwin Edwards went on to tell Martin that he knew Guidry paid Stephen Edwards $100,000.00 for Guidry's license, and further told Martin that even though Guidry had hired Stephen Edwards, they were "all . . . in the thing together." At that time, Edwin Edwards stated: " . . . it's not a question of whether you or Andrew or Stephen or me. This is something we worked out all for ourselves," referring to the licensing of the Treasure Chest and the receipt of cash from Guidry as payment for their assistance in helping Guidry obtain his license.

37.

On information and belief derived from the factual basis of Guidry's guilty plea and/or the Edwards Indictment, on or about April 8, 1997, Guidry cashed a check in the amount of $65,000.00. On the same day, during a recorded telephone conversation, Edwin Edwards and Stephen Edwards agreed to meet Guidry at the Highland Road Café in Baton Rouge, Louisiana. At the meeting, Guidry delivered the cash to Edwin Edwards and Stephen Edwards as part of their agreed payoff.

38.

On information and belief, the Treasure Chest's net operating profits have exceeded $100 million for calendar years 1996 and 1997.

39.

On or about October 27, 1997, Boyd Louisiana, L.L.C., a Nevada limited liability company ("Boyd Louisiana"), along with another wholly owned subsidiary of Boyd Gaming, purchased the interest in Treasure Chest not owned by Boyd Kenner for approximately $113 million from the selling members, namely Robert J. Guidry, Dick J. Guidry, Robert A. Vosbein, Pam Olson, Robert J. Guidry Family Trust, and Dick J. Guidry Family Trust. The Treasure Chest's "intangible license rights," which had been obtained solely as a result of the overarching corrupt conspiracy, were valued at $85 million of the total purchase price. On information and belief, defendant Robert J. Guidry individually received $73 million from this transaction; the remaining $12 million was distributed among the other selling members. As a result of this transaction, Treasure Chest became and remains a wholly owned subsidiary of Boyd Gaming.

40.

Boyd Gaming's 1998 10K Statement, filed with the United States Securities and Exchange Commission, states that net revenues in Boyd Gaming's Central Region "increased 34% during the quarter ended June 30, 1998 compared to the quarter ended June 30, 1997 primarily as a result of the acquisition of Treasure Chest in October 1997. . . ." Boyd Gaming's 1998 10K Statement continues that "Treasure Chest produced net revenues for the Company of $31.2 million during the quarter ended June 30, 1998 . . . ." Further, Boyd Gaming's 1999 10K Statement provides that "Treasure Chest produced net revenues for the Company of $124 million during 1998 versus $26 million during the prior year."

**The Shetler Scheme**

41.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, Richard D. Shetler ("Shetler") was hired in June 1993 by Players Lake Charles Riverboat Casino, Inc. ("Players"), as a consultant on a three (3) year retainer for approximately $60,000 per year, and upon the opening of the riverboat his salary would increase to $100,000 per year.

42.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, on December 6, 1993, Players was granted a license to operate, and did open, a riverboat casino in Lake Charles, La.

43.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, pursuant to a "Compact" signed by Louisiana Governor Edwin W. Edwards and approved by the U.S. Division of Indian Affairs, Washington, D.C., the Coushatta Indian Tribe had received approval to open a casino on its Reservation, located approximately 50 miles from Lake Charles. During 1993/1994, the Coushatta Tribe sought approval from the U.S. Division of Indian Affairs to build the casino on the newly acquired 104 acres of land located near the Reservation. In order for the Tribe to get this approval, the Governor of Louisiana had to concur that these 104 acres were "contiguous" to the Reservation.

44.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, Players sought authorization from the Louisiana Riverboat Gaming Commission to purchase the Star Riverboat Casino in New Orleans, assume its license, and transfer the Star riverboat to a berth next to Players' original riverboat in Lake Charles. This transfer was approved by the Gaming Commission in February 1995.

45.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, Shetler's still valid contract with Players was superseded on December 1, 1994, by a seven (7) year retainer for $126,000 per year, complete with a $250,000 bonus and $200,000 loan.

46.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, from payments received by Players and related entities, Shetler gave Stephen Edwards cash and other property for Stephen Edwards and Edwin Edwards in the approximate amount of $550,000.

47.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, as explained herein, to quote the Shetler Bill, "from approximately April 1993 through April 1997, in the Middle District of Louisiana and elsewhere, Richard D. Shelter did knowingly, willfully and unlawfully combine, conspire, confederate, and agree with Stephen Edwards and Edwin Edwards to unlawfully obstruct, delay, and affect commerce by extortion, that is, by obtaining property, namely payments from Players, with Players' consent, induced by fear of economic loss, and under color of official right."

48.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, in April or May 1993, Stephen Edwards told two Players officials to hire Shetler as a consultant. Edwards stated that if Players wanted to get its license approved by the Louisiana State Police, Players would have to pay Shetler $300,000; if Players wanted to have a monopoly in Lake Charles, it would have to pay Shetler $600,000. On or about June 6, 1993, Players hired Shetler as a consultant on terms including a three-year retainer at $100,000 per year.

49.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, in or about August 1993, Shetler recorded a telephone conversation he had with Stephen Edwards. During the conversation, they discussed a $50,000 bonus Players was going to pay to Shetler to "look at these other sites" for gaming riverboats. Stephen Edwards explained to Shetler the bonus was a "way for them to pay you because they know that if they are paying you and you're happy, then you'll keep me from fucking with them."

50.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, during the same August 1993 recorded conversation, Shetler and Stephen Edwards discussed other contracts which various associates and family members of Stephen Edwards were to obtain in connection with Players.

51.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, commencing in May 1994 and continuing through and including September 1995, Shetler caused another individual to pay approximately $75,000 for windows, air conditioning units, kitchen appliances, and a metal shed to be delivered and installed in Stephen Edwards' house and other residences.

52.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, in July or August 1994, Shetler, upon the instructions of Stephen Edwards, related to Players that, in return for separate payments of $250,000 and $200,000, Governor Edwin Edwards would take official action to hinder or prevent the opening of the Coushatta Indian Tribe Casino, and Stephen Edwards would keep other riverboats from establishing in Lake Charles.

53.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, on or about November 23, 1994, in return for official action taken by Governor Edwards regarding the Coushatta Tribe's Casino, Shelter purchased in his name from Don Shetler Chevrolet, Inc., Crowley, LA. a $24,078 1994 Chevrolet Suburban. The car was then taken for use at Governor Edwards' condominium in Vail, Colorado.

54.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, on or about December 1, 1994, in response to Shetler's demands, Players revised his contract, replacing it with a seven year retainer for $126,000 per year, complete with a $250,000 bonus and a $200,000 loan.

55.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, in January 1995, Shetler, upon the instructions of Stephen Edwards, related to Players that, in return for $250,000 per year, Governor Edwards would approve the transfer of the Star Riverboat.

56.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, in January 1995, Shetler entered into an agreement with another company with an economic interest in the approval of the Star transfer, whereby he was to receive 37.5 cents per passenger off the two Players boats.

57.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, in or about February 1995, in connection with the Star transfer, Players agreed to pay a legal retainer to Stephen Edwards for $15,000 per month. Players, thereafter, paid a total of $150,000 pursuant to this agreement.

58.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, on or about February 8, 1995, the Gaming Commission approved both the Star transfer and the establishment of the Crown Casino riverboat in Lake Charles.

59.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, in or about August 1995, representatives of Players met with Edwin Edwards at the Governor's Mansion. The purpose of the meeting was to discuss a proposed Players riverboat casino in Shreveport. During the meeting, Edwards protested that although people said it was necessary for gaming companies to do business with his friends, relatives, and associates, that was not, in fact, true. Edwards then stated to the Players representatives that there were local people who could advance their business ventures, while at the same time gesturing with his finger toward an associate of his who was sitting nearby.

60.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, on or about September 27 - 29, 1995, Richard D. Shetler accompanied Stephen Edwards and his wife and an interior decorator to various furniture showrooms in Dallas, Texas. The Edwardses selected and received furniture totaling approximately $74,267, a fireplace mantle at $2,250, and a chandelier for $1,957. Shetler paid for these items.

61.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, on or about September 5 through 8, 1995, Shetler cashed six checks totaling $20,000, payable to "cash." He thereafter made a $20,000 cash payment to Stephen Edwards for Governor Edwin Edwards.

62.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, on or about February 25, 1997, at their law offices, Stephen Edwards told his father Edwin Edwards that Shetler would come tomorrow "with your money."

63.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, the following day, February 26, 1997, Stephen Edwards met in his law office with Shetler. Stephen Edwards asked Shetler how much money he brought, and Shetler replied "47." They discussed that amount of revenue the riverboat made and the number of customers who had boarded the riverboat during the period. They then discussed possible methods through which Shetler could secretly purchase a $25,000 van for Stephen Edwards, who stated that the van deal could be structured so Shetler could use it "once a year just like the deal (referring to the Suburban) you had with my dad." Since the Chevrolet Suburban was at the Vail condo, Stephen Edwards told Shetler that "for the purposes of legitimacy, I think what you ought to do is make plans of calling ... for you to go up there and spend some time with him, or go up and use the place when he ain't there ... but you really ought to go up there at least once."

64.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, on or about March 13, 1997, Shetler brought approximately $4,634 in cash to Stephen Edwards' office for Edwin Edwards. After entering the office, he told Stephen Edwards that he had put the money "in the bottom drawer," stating that the money was for "your Dad."

65.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, on or about March 18, 1997, Richard D. Shetler purchased in Stephen Edwards' name from Don Shetler Ford, Inc., Sulphur, LA., a 1997 Ford Club Van.

66.

On information and belief derived from the Shetler Bill and/or the Edwards Indictment, from August 1996 through April 1997, Shetler delivered approximately $50,000 in cash for Edwin W. Edwards.

**Count One -- Racketeering Influenced and Corrupt Organizations Act**

67.

On information and belief, Edwin W. Edwards, Stephen Edwards, Andrew Martin, Robert Guidry, Treasure Chest, and other unnamed persons and entities (collectively, "RICO persons") constituted an association-in-fact enterprise ("RICO enterprise") as defined in the Racketeering Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, et seq. ("RICO").

68.

On information and belief, the RICO enterprise was engaged in and its activities affected interstate and foreign commerce.

69.

On information and belief, the RICO persons conducted and participated in the conduct of the affairs of the RICO enterprise through a pattern of racketeering activity in East Baton Rouge and other parishes, comprised of repeated acts of bribery (in violation of 18 U.S.C.§ 1952 and LSA - R.S. 14:118), extortion (in violation of 18 U.S.C. § 1951, LSA - R.S. 14:66 and LSA - R.S. 14:120), wire fraud (in violation of 18 U.S.C. § 1343), and mail fraud (in violation of 18 U.S.C. § 1341)(collectively, "predicate acts") extending over a period of years, in violation of 18 U.S.C. § 1962(c).

70.

On information and belief, the RICO persons, through a pattern of racketeering activity, acquired and/or maintained an interest in and/or control of enterprises engaged in, and

the activities of which affected, interstate and foreign commerce, namely entities involved in riverboat gaming in Louisiana, in violation of 18 U.S.C. § 1962(b).

71.

On information and belief, the RICO persons conspired to violate 18 U.S.C. §§ 1962(b) and 1962(c), in violation of 18 U.S.C. § 1962(d).

72.

Copeland was injured in his business and property, which injury was proximately caused by reason of the RICO persons' violations of 18 U.S.C. §§ 1962(b), 1962(c) and 1962(d), entitling him to recover threefold the damages he has sustained and the cost of the instant suit, including a reasonable attorney's fee, pursuant to 18 U.S.C. § 1964(c). Certain of the means and methods by which the defendants and their associates conducted and participated in the conduct of the affairs of the RICO enterprise are detailed in the following paragraphs.

73.

On information and belief, the RICO enterprise, which began prior to defendant Edwin Edwards' fourth and final term as Governor, centered around Edwin Edwards and the office of the Governor of Louisiana, and further depended upon the political and economic power, influence, control and notoriety of Governor Edwards to operate and to succeed in its purposes and objectives.

74.

On information and belief, the enterprise continued in existence through and beyond the conclusion of Edwin Edwards' final term as Governor, until and including the date of this Complaint. Thus, the RICO enterprise and its associates continued to exploit the political and economic power, influence, control, and notoriety of Edwin Edwards to operate and succeed in its purposes and objectives.

75.

On information and belief, Edwin Edwards and Stephen Edwards were the center or nucleus of the RICO enterprise. Other members and associates of the RICO enterprise would and did participate in various aspects of the RICO enterprise's purposes, objectives, and ventures, as sanctioned by Edwin Edwards and Stephen Edwards.



76.

On information and belief, to avoid detection by law enforcement and unmasking before the public, Edwin Edwards went to great lengths to ensure that his participation in the RICO enterprise and its racketeering activity remained hidden and insulated by having the other members and associates of the RICO enterprise perform overt acts in furtherance of the RICO enterprise's racketeering activity.

77.

The RICO persons fraudulently concealed their illegal activities, and plaintiff neither knew nor, in the exercise of due diligence, could reasonably have known of the offenses committed by the members of the RICO enterprise.

78.

On information and belief, the members and associates of the RICO enterprise would and did use their close relationships with Edwin Edwards and Stephen Edwards, thereby trading upon the Edwin Edwards name, notoriety, and power, in order to exercise influence and leverage over the victims of the RICO enterprise.

79.

On information and belief, commencing in or about 1993 and continuing through 1994, Edwin Edwards, on several occasions, assisted certain riverboat applicants in obtaining licenses from the Division by, among other things, demanding that the Division schedule speedy licensing hearings for those applicants he favored.

80.

On information and belief, on or about April 23, 1997, Edwin Edwards was interviewed by a Special Agent of the FBI and a Special Agent of the Internal Revenue Service (the "IRS") concerning the riverboat licensing process. Edwin Edwards stated that, in his opinion, legislators "got their friends on the Commission" to award Certificates of Preliminary Approval to certain riverboat applicants. Edwin Edwards stated that he appointed the Co-Chairman of the Gaming Commission at the request of a state legislator. Edwin Edwards also stated that he appointed other members of the Gaming Commission at the request of legislators who were close political allies of Edwin Edwards. Edwin Edwards also admitted to giving a

member of the Gaming Commission a list containing the riverboat applicants he wanted to receive certificates.

81.

Defendant Robert J. Guidry and/or Treasure Chest, are liable unto plaintiff Copeland for damages resulting from the RICO persons' violations of 18 U.S.C. §§1962(b),(c) and (d), including treble damages, attorneys' fees, court costs, litigation expenses, and all other legal and equitable relief.

**Count Two -- Unfair Trade Practices**

82.

The actions of defendants Robert J. Guidry and/or Treasure Chest, as outlined above, were unfair, immoral, unscrupulous, and violated public policy; defendants' actions were also deceptive. As a result, defendants Guidry and/or Treasure Chest are liable to plaintiff, a business competitor of Treasure Chest, for the unfair, deceptive, and illegal trade practices outlined above pursuant to the Louisiana Unfair Trade Practices and Consumer Protection Law, LSA-R.S. 51:1401, *et seq.* ("LUTPA").

83.

Upon information and belief, Treasure Chest has failed to notify the Division and/or the Gaming Control Board of the actions outlined above, which constitutes a violation of the Louisiana Gaming Control Law (including without limitation a violation of LSA-R.S. 27:70). This noncompliance is an independent violation of the LUTPA, and continues each day Treasure Chest fails to disclose to the Gaming Control Board the facts surrounding Treasure Chest's acquisition of its license.

84.

Defendants Robert J. Guidry and/or Treasure Chest are liable under the LUTPA for all damages sustained by the plaintiff, including without limitation his out of pocket costs, lost profits, attorneys' fees and costs, the value of Treasure Chest's gaming license, and the value of Treasure Chest's success.

**Count Three -- Fraud**

85.

As detailed above, Robert J. Guidry and/or Treasure Chest obtained a certificate and license by misrepresentations and/or suppressions of the truth concerning the overarching corrupt conspiracy, as well as their participation in extortion; these misrepresentations and/or suppressions were made with the intent to obtain an unjust advantage in obtaining a certificate and license. Robert J. Guidry and/or Treasure Chest are therefore liable for fraud under La. Civ. Code art. 2315.

86.

Robert J. Guidry and/or Treasure Chest fraudulently concealed the formation of and their participation in the overarching corrupt conspiracy, and all acts taken in furtherance thereof, in order to avoid or prolong discovery thereof and in an attempt to prejudice the rights of the victims, including plaintiff, of the overarching corrupt conspiracy and the constituent elements thereof. Plaintiff learned of Robert J. Guidry and/or Treasure Chest's fraudulent conduct within one year of the filing of this Petition.

87.

Robert J. Guidry and/or Treasure Chest are liable unto plaintiff for the fraud effected by the overarching conspiracy and the damages to plaintiff resulting therefrom, including without limitation his lost profits, attorney fees, costs, the value of Treasure Chest's gaming license, and the value of Treasure Chests's success.

**Count Four -- Unjust Enrichment**

88.

Guidry and/or Treasure Chest are liable to Copeland for their unjust enrichment. As detailed above, the license awarded to Treasure Chest as a result of the overarching corrupt conspiracy should have been awarded to AIGA. Defendants have reaped enormous profits under the license, while Copeland (1) has both had to forego the profits he would have made under the license, and (2) has never recouped his out-of-pocket costs and expenses incurred in applying for it. Consequently, defendants have been unjustifiably enriched, and Copeland has been impoverished.

89.

As a result of defendants' unjust enrichment, Copeland is entitled, without limitation, to recoup his out-of-pocket costs and lost profits or, alternatively, the profits made by the defendants, pursuant to La. Civ. Code art. 2298. He is also entitled to recover the value of Treasure Chest's gaming license and the value of Treasure Chest's success.

**Solidary Liability**

90.

Pursuant to 18 U.S.C. § 1962 and Louisiana Civil Code Article 2324, defendants are each jointly and severally liable unto plaintiff.

91.

**Respondeat Superior**

Because all of the above-referenced acts undertaken by Robert Guidry were in the course and scope of his position with Treasure Chest and were done with actual and/or apparent authority provided to Guidry by Treasure Chest, Treasure Chest is liable to plaintiffs for these acts through the doctrines of *respondeat superior* and/or La. Civ. Code article 2320. Guidry's actions were rooted in his position with Treasure Chest and were incidental to its activities, and were done with Treasure Chest's consent.

**Jury Demand**

92.

Plaintiff prays for trial by jury.

**WHEREFORE**, premises considered, plaintiff prays that after due proceedings be had, there be judgment against defendants Treasure Chest Casino, L.L.C. and Robert J. Guidry, for all damages, both pecuniary and nonpecuniary, suffered as a result of defendants' actions as set forth herein, including plaintiff's out of pocket costs and all lost profits, as well as the value of the Treasure Chest's gaming license and the value of Treasure Chest's success, legal interest, attorneys' fees, litigation costs, court costs, treble damages, and for all other

appropriate legal and equitable relief.

Respectfully submitted,

**SLATER LAW FIRM**

Benj. R. Slater, Jr., Bar No. 12126
Benj. R. Slater, III, Bar No. 12127, T.A.
A. Elise Brown, Bar No. 19500
Donald J. Miester, Jr., Bar No. 20294
S. Joseph Welborn, Bar No. 25928

650 Poydras Street
Suite 2600
New Orleans, LA 70130
Telephone: (504) 523-7333
Facsimile: (504) 528-1080
**ATTORNEYS FOR PLAINTIFF ALVIN C. COPELAND**

**PLEASE SERVE:**

1. **Treasure Chest Casino, L.L.C., through its registered agent for service of process:**
   Paul S. West
   One American Place
   Ninth Floor
   Baton Rouge, Louisiana 70825

   -and-

2. **Robert J. Guidry**
   3817 Spencer Street
   Harvey, Louisiana 70058

CIVIL
☑ 01-DAMAGES
☐ 02-CONTRACT
☐ 03-PRISONER SUIT
☐ 04-EXECUTORY PROCESS
☐ 05-SUIT ON NOTES
☐ 06-EVICTION
☐ 07-WORKMENS COMPENSATION
☐ 08-JUDICIAL REVIEW
☐ 09-
☐ 10-INJUNCTION MANDAMUS
☐ 11-COMM. PROP. PARTITIONS
☐ 12-PUBLIC SERV. COMM.
☐ 13-OTHER PARTITIONS
☐ 14-OTHER
☐ 15-D.E.Q.
☐ 16-
☐ 17-
☐ 18-
☐ 19-
☐ 20-

31

# AFFIDAVIT

**State of Louisiana**
**Parish of Jefferson**

**BEFORE ME,** the undersigned notary public, duly commissioned in and for this parish and state, personally came and appeared:

**ALVIN C. COPELAND**

who, upon being duly sworn, did depose and state that he has personal knowledge of the following facts:

1. I am a competent person residing in Jefferson Parish, Louisiana. I am over 21 years of age. The facts set forth in this affidavit are within my own knowledge.

2. I am the former sole shareholder of the stock of American International Gaming Association ("AIGA"). AIGA was a Louisiana corporation whose principal office was located in Jefferson Parish, Louisiana.

3. AIGA applied for authorization to conduct gaming activities on a riverboat in accordance with the provisions of the Louisiana Riverboat Economic Development and Gaming Control Act (the "Act").

4. On December 11, 1992, AIGA submitted its application to the Louisiana Riverboat Gaming Commission (the "Commission") for a Certificate of Preliminary Approval (a "Certificate") for a proposed riverboat route and other operations at the Kenner Laketown Harbor Park on the shores of Lake Pontchartrain. AIGA submitted a second application form on February 22, 1993 containing supplemental information. AIGA's application for a Certificate contained all of the information and documentation required by the Commission's rules.

5. On February 14, 1993, AIGA applied for a license to conduct riverboat gaming operations (a "License") under the Act from the Riberboat Gaming Division of the Louisiana Sate Police (the "Division") and submitted to the Division the filing fee of $50,000 required to fund its background investigation into License applicants. AIGA's application for a License contained all of the information and documentation required by the Act and the rules of the Division.

6. On June 4, 1993, the Commission held a public hearing at which AIGA made a presentation on its application for a Certificate. The Commission voted on eight applications

EXHIBIT "C"

00131035800 1

for Certificates at the June 18th meeting and approved seven applications; the Commission did not grant AIGA a Certificate on June 18th, and in fact never granted AIGA a Certificate.

7. The Division never held a hearing into AIGA's application for a License, and never notified it that its application had been denied or was going to be denied. To date, however, AIGA has never received a License, and has never been told the reasons why it has not obtained one. Treasure Chest Casino is operating at the location specified in AIGA's License application, and has done so since 1994.

8. AIGA was a suitable applicant for a Certificate, and should have received a Certificate under the rules of the Commission.

9. AIGA was a suitable applicant for a License, and was not unqualified under the Act and the Division's rules. AIGA, in fact, received a video gaming owner's license form the state of Louisiana in June, 1994, and secured a gaming license from the state of Colorado in March, 1995. Had the Division conducted an independent evaluation of the competing applicants, AIGA should have received a License.

10. AIGA was dissolved effective December 5, 1996. The AIGA liquidator transferred all of AIGA's assets to me at that time, including the case *AIGA v. Louisiana Riverboat Gaming Commission, et al.*, bearing number 400-750 on the docket of the 19th Judicial District Court in Baton Rouge, LA.

Date: January 28th, 2000

(Signature of Alvin C. Copeland)

Sworn to and subscribed before me on this 28th day of January, 2000.

Notary Public

EXHIBIT "C"

**19TH JUDICIAL DISTRICT COURT**

**PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

| | | |
|---|---|---|
| **ALVIN C. COPELAND** | * | **DOCKET NO.** |
| **VERSUS** | * | **DIVISION " "** |
| **TREASURE CHEST CASINO, L.L.C., and ROBERT J. GUIDRY** | * | **JURY TRIAL REQUESTED** |
| | * | |

**FILED:** ____________________ ______________________________
**DEPUTY CLERK**

**MEMORANDUM IN SUPPORT OF**
**EX PARTE MOTION TO TRANSFER CASE AND CONSOLIDATE**

In this action plaintiff Alvin C. Copeland has sued defendants Treasure Chest Casino, L.L.C. and Robert J. Guidry. Copeland has alleged a variety of causes of action against these two defendants in connection with the issuance of a license to conduct gaming activities on a riverboat to Treasure Chest in 1994. Copeland notes that this suit is therefore related to an action already pending before Division "A" of this Court, namely *Alvin C. Copeland v. The Louisiana Gaming Control Board, et al.*, bearing docket number 400-750. This previously pending suit alleges separate causes of action against the Louisiana Gaming Control Board and the Louisiana State Police Riverboat Gaming Division as a result of certain statutory and constitutional violations in connection with the issuance of riverboat gaming licenses.

Accordingly, in the interest of judicial efficiency, Copeland suggests that there is good cause for this suit to be transferred to Division "A" and consolidated for all purposes with the previously filed and pending suit under Local Rule IV, Section 5.

Respectfully submitted,

**SLATER LAW FIRM**

Benj. R. Slater, Jr., Bar No. 12126
Benj. R. Slater, III, Bar No. 12127, T.A.
A. Elise Brown, Bar No. 19500
Donald J. Miester, Jr., Bar No. 20294
S. Joseph Welborn, Bar No. 25928
650 Poydras Street
Suite 2600
New Orleans, LA 70130
Telephone: (504) 523-7333
Facsimile: (504) 528-1080
**ATTORNEYS FOR PLAINTIFF ALVIN C. COPELAND**

1999 SEP 15 PM 2:34
DOUG WELBORN
DEPUTY CLERK OF COURT
CERTIFIED TRUE COPY

19TH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

| | | |
|---|---|---|
| ALVIN C. COPELAND | * | DOCKET NO. 464607 |
| VERSUS | * | DIVISION "D" |
| TREASURE CHEST CASINO, L.L.C., and ROBERT J. GUIDRY | * | JURY TRIAL REQUESTED |
| | * | COST OK Amt.____ |

FILED: ____________________ ____________________ DEPUTY CLERK

SEP 15 1998
BY____ DY. CLERK OF COURT

**EX PARTE MOTION TO TRANSFER CASE AND CONSOLIDATE**

**NOW INTO COURT**, through undersigned counsel, comes plaintiff Alvin C. Copeland, and upon suggesting to the Court that he has this day filed an original proceeding against defendants Treasure Chest Casino, L.L.C. and Robert J. Guidry; that this suit is related to an action already pending before Division "A" of this Court, namely *Alvin C. Copeland v. The Louisiana Gaming Control Board, et al.*, bearing docket number 400-750; and that in the interest of judicial efficiency, there is good cause for this suit to be transferred to Division "A" and consolidated with the previously filed and pending suit no. 400-750, now moves to transfer this suit under Local Rule IV, Section 5, and consolidate it for all purposes with civil action no. 400-750, all as more particularly described in the attached memorandum.

Respectfully submitted,

**SLATER LAW FIRM**

Benj. R. Slater, Jr., Bar No. 12126
Benj. R. Slater, III, Bar No. 12127, T.A.
A. Elise Brown, Bar No. 19500
Donald J. Miester, Jr., Bar No. 20294
S. Joseph Welborn, Bar No. 25928

650 Poydras Street
Suite 2600
New Orleans, LA 70130
Telephone: (504) 523-7333
Facsimile: (504) 528-1080
**ATTORNEYS FOR PLAINTIFF ALVIN C. COPELAND**

35

**19TH JUDICIAL DISTRICT COURT**

**PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

| | | |
|---|---|---|
| **ALVIN C. COPELAND** | * | **DOCKET NO.** |
| **VERSUS** | * | **DIVISION " "** |
| **TREASURE CHEST CASINO, L.L.C., and ROBERT J. GUIDRY** | * | **JURY TRIAL REQUESTED** |
| | * | |

**FILED:** ____________________ ______________________________ **DEPUTY CLERK**

**ORDER**

Considering the foregoing Ex Parte Motion to Transfer Case and Consolidate, **IT IS HEREBY ORDERED** pursuant to 19th Judicial District Court Rule IV that this action, styled *Alvin C. Copeland v. Treasure Chest Casino, L.L.C., and Robert J. Guidry,* (1) be transferred to Division "A" of the 19th Judicial District Court, and (2) consolidated for all purposes with the previously filed and pending case *Alvin C. Copeland v. The Louisiana Gaming Control Board, et al.*, bearing docket number 400-750, Division "A."

Thus done and signed in Baton Rouge, Louisiana, this ___ day of _________, 1999.

[signature]
JUDGE ROBERT D. DOWNING, DIVISION "A"
(TRANSFEREE DIVISION)

______________________________
JUDGE FOR THE DIVISION TO WHICH THIS CASE HAS BEEN RANDOMLY ASSIGNED
(TRANSFEROR DIVISION)

CERTIFIED TRUE COPY DEPUTY CLERK OF COURT

19TH JUDICIAL DISTRICT EAST BATON ROUGE PARISH, LA 1999 SEP 15 PM 2:31 DOUG WELBORN DEPUTY CLERK OF COURT

THIS MATTER HAS BEEN SET FOR CONTRADICTORY HEARING ON THE 15 DAY OF June
9:30 Am [signature]
JUDGE, 19th JUDICIAL DISTRICT COURT
SIGNED THIS 12 DAY OF Sept, 1999

1 0 1 4 1 1 5 5 0

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 464607 DIV. "D"

COST OK Amt. 10.60
DOCKET
OCT - 8 1999
BY ___ DY. CLERK OF COURT

ALVIN C. COPELAND

VERSUS

TREASURE CHEST CASINO, L.L.C. and ROBERT GUIDRY

FILED:____________________ ____________________
DEPUTY CLERK

POSTED

**MOTION FOR EXTENSION OF TIME WITHIN WHICH TO PLEAD**

**NOW INTO COURT,** through undersigned counsel, comes Robert Guidry, made defendant herein, who upon showing to the court that he was served on September 29, 1999 with the Petition for Damages in the above captioned proceedings and upon further showing that he has not requested any other extensions of time within which to plead, herein moves the court for an extension of time within which to plead of fifteen (15) days from the date responsive pleadings are due, October 14, 1999, up to and including October 29, 1999; mover further avers that no prejudice will result to any party arising out of this extension of time within which to plead. Undersigned counsel for mover has contacted opposing counsel who has no objection for the requested extension.

RESPECTFULLY SUBMITTED:

LANNY R. ZATZKIS, T.A. (#13781)
KAREN D. McCARTHY (#14193)
YVETTE A. D'AUNOY (#22761)
ANDREW N. LEE (#24154)
ZATZKIS & ASSOCIATES
700 Camp Street
New Orleans, Louisiana 70130
Telephone: (504) 523-2266
Attorneys for Robert Guidry

CERTIFIED TRUE COPY
01,91,50
DEPUTY CLERK OF COURT

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing Motion for Extension of Time within which to Plead on all known counsel of record in this proceeding by U.S. mail, properly addressed by first class postage prepaid mail and/or facsimile on this the 8th of October, 1999.

19TH JUDICIAL DISTRICT COURT EAST BATON ROUGE PARISH
FILED
1999 OCT -8 PM 2
DEPUTY CLERK OF COURT
DOUG WELBORN
CLERK OF COURT

REC'D C.P.
OCT - 8 1999

REC'D C.P.
OCT 14 1999

37

1 0 1 1 1 1 5 6 0

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 464607 DIV. "D" DOCKET

ALVIN C. COPELAND

VERSUS

TREASURE CHEST CASINO, L.L.C. and ROBERT GUIDRY

FILED:____________________ ____________________
DEPUTY CLERK

**ORDER**

Considering the foregoing motion for an extension of time within which to plead and in consideration that no prior request for extension of time within which to plead has been filed, the court herein orders that defendant, Robert Guidry, be granted an extension of fifteen (15) days within which to file responsive pleadings ~~up to and including October 29, 1999~~ from Oct. 8, 1999.

BATON ROUGE, LOUISIANA, this 13th day of Oct, 1999.

[signature]
JUDGE

CERTIFIED TRUE COPY
0494561
DEPUTY CLERK OF COURT
19TH JUDICIAL DISTRICT
EAST BATON ROUGE PARISH, LA
1999 OCT -8 PM 2:28
DOUG WELBORN

38



19TH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DIVISION "D"

**ALVIN C. COPELAND** **DOCKET NUMBER: 464,607**

**VERSUS**

**TREASURE CHEST CASINO, L.L.C., AND ROBERT J. GUIDRY**

OCT 12 1999

**MOTION FOR EXTENSION OF TIME**

**NOW INTO COURT**, through undersigned counsel, come defendant, Treasure Chest Casino, L.L.C., who move this Honorable Court for a fifteen (15) day extension of time within which to file responsive pleadings to the suit filed by plaintiff, Alvin C. Copeland. In support of this Motion, movers respectfully show that they have not previously requested an extension and it will not unduly delay the proceedings.

Treasure Chest Casino, L.L.C. was personally served on September 27, 1999. Undersigned counsel requests an additional fifteen (15) days, or until October 27,1999, within which to respond for all defendants.

**WHEREFORE**, Defendants pray for a fifteen (15) day extension of time within which to file a response to the lawsuit filed by Alvin C. Copeland.

99 OCT 12 PM 2:21

Respectfully Submitted,

Paul S. West, LA Bar Roll No. 13375, T.A.
Donald R. Cravins, Jr., LA Bar Roll No. 25631
Charles R. Penot, Jr., LA Bar Roll No. 01530
***McGlinchey Stafford***
**A Professional Limited Liability Company**
Ninth Floor, One American Place
Baton Rouge, Louisiana 70825
Telephone: (504) 383-9000
Facsimile: (504) 343-3076

REC'D C.P. OCT 15 1999

39

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and complete copy of the foregoing Motion for Extension of Time has been served, via facsimile transmission and United States Mail, proper postage pre-paid, on the following:

Benjamin R. Slater, Jr.
Benjamin R. Slater, III
A. Elise Brown
Donald J. Meister
S. Joseph Welborn
***Slater Law Firm***
650 Poydras Street
Suite 2600
New Orleans, Louisiana 70130

Baton Rouge, Louisiana on this 12 day of October, 1999.

Paul S. West

**19TH JUDICIAL DISTRICT COURT**

**PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

**DIVISION "D"**

**ALVIN C. COPELAND** **DOCKET NUMBER: 464,607**

**VERSUS**

**TREASURE CHEST CASINO, L.L.C., AND ROBERT J. GUIDRY**

---

**ORDER GRANTING MOTION FOR EXTENSION OF TIME**

**CONSIDERING THE FOREGOING** Motion for Extension of Time filed by the Treasure Chest Casino, L.L.C.,

**IT IS HEREBY ORDERED** that Defendants be granted a fifteen (15) day extension of time, or until October 27, 1999, within which to file responsive pleadings to the lawsuit filed by Alvin C. Copeland in the above captioned matter.

**ORDER SIGNED** on the 14 day of Oct, 1999 in Baton Rouge, Louisiana.

CERTIFIED TRUE COPY
00300
BY ______ DEPUTY CLERK

Judge, Nineteenth Judicial District Court

99 OCT 12 PM 2:21
19TH JUDICIAL DISTRICT
EAST BATON ROUGE PARISH, LA
DEPUTY CLERK OF COURT
CLERK OF COURT E.B.R. PARISH

91116046600

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 464607 DIV. "D" DOCKET

ALVIN C. COPELAND

VERSUS

TREASURE CHEST CASINO, L.L.C. and ROBERT GUIDRY

Amt. 25.50 NOV 15 1999 DY. CLERK OF COURT

FILED:____________________ ____________________
DEPUTY CLERK

## MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO TRANSFER AND CONSOLIDATE

**NOW INTO COURT**, through undersigned counsel, comes Robert Guidry, defendant herein, who hereby objects to the plaintiff, Alvin C. Copeland's motion to transfer and consolidate this action with the prior filed action, Alvin C. Copeland v. The Louisiana Riverboat Commission and the Riverboat Gaming Enforcement Division of the Enforcement Section of the Office of State Police, Publice Safety Services, Department of Public Safety and Corrections, No. 400,750, Division "A".

As is more fully set forth below, the defendant, Robert Guidry objects on the following grounds:

1.) This motion to transfer and consolidate is improperly before this Division of Court, as Division "A", the Division of the first filed action is vested with the authority to transfer and consolidate pursuant to La.CCP articles 1561 and 253.2, as well as Local Rule IV, Section 5.

2.) Even if this Division of Court did have the power to transfer and consolidate this action to the first filed action, there is an insufficient basis for this Court to find that common issues of law and fact predominate which precludes consolidation under La.-CCP article 1561(A).

3.) Even if this Court finds common issues of law and fact predominate, consolidation should not be ordered because consolidation in this case will cause jury confusion, prevent a fair and impartial trial, give one party (the plaintiff herein) an undue advantage, and prejudice the rights any party (the defendants herein, as well as the defendants in the first filed action.) Therefore, nondiscretionary grounds requiring denial of consolidation under La.--CCP article 1561 preclude consolidation.

The defendant Robert Guidry has reviewed the Memorandum in Opposition to Consolidation of Cases submitted on behalf of co-defendant Treasure Chest, L.L.C. and adopts by reference their objections to the plaintiff's Motion to Transfer and Consolidate this action with the prior filed action, and supplements said memorandum with the following:

FAX COPY FILED 11/10/99
ORIGINAL FILED 11/15/99
FILE COPY INTO RECORD

9116046601

**1.** **<u>The plaintiff's motion to transfer and consolidate is improperly before this Division of the Nineteenth Judicial District Court and is procedurally improper.</u>**

The Motion to Transfer and Consolidate filed by the Plaintiff is improperly before this Division of the Nineteenth Judicial District Court. La. CCP art. 1561(A), governing consolidation of cases, provides:

> When two or more separate actions are pending in the same court, **the section or division of the court in which the first filed action is pending may order consolidation of the actions for trial after a contradictory hearing**, and upon a finding that common issues of fact and law predominate.

Under the plain language of the Code of Civil Procedure, this Division of court may not order consolidation, as this division of the Court is not the "division of the court in which the first filed action is pending". In order for this case and the first-filed case to be consolidated, the court in which the first filed action (Division "A" of the 19th Judicial District Court) is pending must order consolidation after contradictory hearing. Therefore an Order issued by this Division consolidating this action with the first filed action would be without effect. Moreover, La.-CCP article 1561 does not vest this Division of court with the power to consolidate this case with an earlier filed action, but leaves that power in Division "A" where the first filed action is pending.

This Court should dismiss the plaintiff's Motion to Transfer and Consolidate as said motion has been filed in the wrong division of court. Likewise, hearing on transfer and consolidation in this Division of Court prior to contradictory hearing in Division "A" would be improper and clearly in contravention of Article 1561.

The plaintiff has also moved for an order granting transfer of this case with the first filed action. With respect to the transfer requested by plaintiff, La. CCP article 253.2 provides in pertinent part:

> After a case has been assigned to a particular section or division of the court, it may not be transferred from one section or division to another section or division within the same court, unless agreed to by all parties, **or unless it is being transferred to effect a consolidation for purpose of trial pursuant to Article 1561.**

Article 253.2, also amended in 1997, generally prohibits transfer of cases from one division of court to another unless the transfer falls within the express exceptions provided for. Article 253.2 allows for transfer **"pursuant to Article 1561"**, which article clearly provides that the division in which the first filed action is pending is solely responsible for ordering

9111604660?

consolidation.

2. Finally, Rule IV, Section 5 of the Civil Rules of the Nineteenth Judicial District Court (which the plaintiff cites in his motion) clearly provides that the procedure for transfer and consolidation requires the judge where the first filed action is pending to approve the transfer first, before the judge where the later filed action is pending, prior to consolidation:

> After a case has been allotted, it may be transferred for good cause from one Division to another by an order **signed first by the judge presiding over the Division to which the case is being transferred and then by the judge presiding over the Division from which the case is being transferred**; or, upon an order rendered ex proprio motu by the Court sitting en banc; If the transfer is made of one or more cases to effect a consolidation for purposes of trial, the case or cases with the higher docket number shall be transferred to the Division in which the case with the lowest docket number was allotted.

In this case, the transfer must first be signed by the Judge presiding over Division "A" which is the Division ***to which*** the second case is to be transferred, and then by this Court, which is the Division ***from which*** the second case is to be transferred. Therefore, under the specific procedural rules of the Nineteenth Judicial District, an order transferring this case to Division "A" must first be signed by Judge Downing, the judge presiding over Division "A".

The defendant notes that if there is any conflict with Local Rule IV and La. CCP arts. 1561 and 253.2, the conflict must be resolved in favor of the Code of Civil Procedure. However, both the Code of Civil Procedure and the Local Rules instruct that the Judge presiding over the division in which the first filed action is pending is given the power to consider transfer and consolidation first.

**Both the Louisiana Code of Civil Procedure and Local Rule IV place the threshold determination for transfer and consolidation with the Division of Court where the first filed action is pending**. Therefore, the plaintiff's motion to transfer and consolidate is improperly before this Division of the Nineteenth Judicial District Court. Hearing and judgment on the issue of transfer and consolidation should first be heard by Judge Downing in Division "A". Therefore, hearing on transfer and consolidation in this Division is improper as being in contravention of Article 1561 and 253.2 of the Louisiana Code of Civil Procedure as well as Local Rule IV, Section 5.

**2. Even if this Court was vested with the power to order transfer and consolidation prior to Division "A", consolidation of the two cases is not warranted by La.--CCP article 1561(A) and 1561 (B).**

91116046004

The plaintiff's assertion that the first-filed action is "related to" this action is, at best, misleading. The actions involve different defendants, different facts, employ different modes of procedure and bear little "relation" to one another.

The first filed action is entitled Alvin C. Copeland v. The Louisiana Riverboat Commission and the Riverboat Gaming Enforcement Division of the Enforcement Section of the Office of State Police, Publice Safety Services, Department of Public Safety and Corrections, No. 400,750, Division "A". In the first filed action, plaintiff seeks:

(1) an appeal from an administrative action;

(2) a request for a declaratory judgment;

(3) a request for monetary damages against the State for constitutional violations; and

(4) a request for all monies Plaintiff paid to the State.

In this action, the later filed action, the plaintiff seeks damages against Treasure Chest, L.L.C. and Robert Guidry based on an alleged complex RICO scheme, violations of the Louisiana Unfair Trade Practices Act found at LSA-R.S. 51:401 et. seq., as well as claims of fraud and unjust enrichment.

The first filed action was instituted as an appeal to the Louisiana Riverboat Gaming Commission's approving the relocation of the site for the Treasure Chest riverboat in Kenner, Louisiana in 1993. Moreover, a Motion for Summary Judgment has been filed by the Defendants in the first filed action and is set for hearing in Division "A" for November 29, 1999.

This action, on the other hand, is based upon allegations arising out of the pending federal criminal action United States of America v. Edwin Edwards et al, Criminal Docket No. 98-165-B-M2 in the United States District Court for the Middle District of Louisiana, scheduled for trial on January 10, 2000. The plaintiff has relied on the Superseding Indictment against Edwin Edward, Stephen Edwards, Cecil Brown, Andrew Martin, Bobby Johnson, Gregory Tarver, and Ecotry Fuller submitted in the criminal matter ("the Edwards indictment") as well as newspaper articles in alleging the defendants herein were part of an alleged criminal conspiracy to corrupt the licensing process for riverboat gaming in the State of Louisiana. Robert Guidry, defendant in this civil action, is a government witness in the pending federal criminal action. (Defendant Guidry has filed on November 8, 1999 a Motion to Stay with Incorporated Memorandum or in the alternative, Motion to Continue Hearing on Plaintiff's Motion to Consolidate). The

45

defendants, as well as the relief prayed for, the theories of law upon which their relief is based, as well as the facts on which the plaintiffs rely are markedly different, and far short of the requirement in La.--CCP art. 1561 that common issues of fact and law ***predominate*** the two cases.

More importantly, plaintiff's bare assertion that the actions are "related" does not meet the more demanding legal requirements set forth in La.CCP art. 1561. As addressed in Treasure Chest's memo, under 1561(A), the mere fact that common issues of fact and law do not predominate in the two cases ***requires*** denial of the plaintiff's motion.

Even if this Court does find that common issues of law and fact predominate, the nondiscretionary grounds requiring denial of consolidation as set forth in 1561(B) would require denial of plaintiff's motion.

La.-CCP art. 1561(B) provides:

B. Consolidation **shall not** be ordered if it would do any of the following:
(1) Cause jury confusion.
(2) Prevent a fair and impartial trial.
(3) Give one party an undue advantage.
(4) Prejudice the rights of any party.

Defendant Robert Guidry submits that, in addition to all those reasons set forth in Treasure Chest's memorandum, he will be severely prejudiced by plaintiffs consolidating this suit with a suit which has been pending for six years.

Mr. Guidry was served with this action on September 29, 1999, almost six years after the plaintiff's filing the first suit. Robert Guidry was never a defendant in the first filed action. The defendant, who has not filed responsive pleadings in this matter, reserves his right to argue that some or all of the plaintiff's claims have been prescribed and/or perempted. The plaintiffs attempt to transfer and consolidate is obvious legal maneuvering to "relate back" the plaintiff's claims in this action to the plaintiff's claims in the first filed action in a thinly veiled attempt to circumvent the prescription and peremption statutes. In order to consolidate the two actions, this Court must find that common issues of law and fact predominate the two cases. Granting this motion to consolidate will place defendant Guidry in the position of establishing his defenses in the context of litigation that has been ongoing since 1993. By effectively adding Mr. Guidry into longstanding litigation against different defendants seeking different types of relief under

different facts and different theories of law, the plaintiff will confuse and complicate its RICO action against Guidry and Treasure Chest with its long-standing administrative action against the Louisiana Riverboat Gaming Commission.

Moreover, as Guidry has not been made a defendant to the first filed action, he will be prejudiced by the prior rulings of the Court in which he could not and did not participate. The plaintiff will be given another tactical advantage over Mr. Guidry if they are permitted to inject him into ongoing litigation where he has had no opportunity to be heard, while the plaintiff has had every opportunity to develop the record in its favor and against the interests of Robert Guidry.

As Treasure Chest noted in its memorandum, the consolidation will allow the plaintiff to "gang-up" his claims to make his separate cases appear stronger than each may stand on its own individual merits.

As noted above, La.--CCP art. 1561 (B) provides nondiscretionary grounds for denial of consolidation even if common issues of law and fact do predominate. The plaintiff's motion to consolidate is a transparent attempt to gain a tactical advantage over the several defendants in both actions and burden the defendants with the responsibility of separating the different causes of action against the different defendants.

Defendant, Robert Guidry, avers that consolidation will cause jury confusion, prevent a fair and impartial trial, give one party, the plaintiff, an undue advantage, and prejudice his rights for those reasons given above. Therefore, under La.--CCP art. 1561(B), consolidation should be denied.

WHEREFORE, defendant, Robert Guidry prays that this Court dismiss the plaintiff's motion to consolidate as having been filed in the wrong Division of the Nineteenth Judicial Court, as Division "A" is the proper division to have a contradictory hearing and to order consolidation. Defendant further prays that if this Court does consider plaintiff's ex parte Motion to Transfer and Consolidate, that the Court deny consolidation of this action and the first

91116046606

filed action pursuant to La.--CCP art. 561.

RESPECTFULLY SUBMITTED:

LANNY R. ZATZKIS, T.A. (#13781)
KAREN D. McCARTHY (#14193)
YVETTE A. D'AUNOY (#22761)
ANDREW N. LEE (#24154)
ZATZKIS & ASSOCIATES
700 Camp Street
New Orleans, Louisiana 70130
Telephone: (504) 523-2266
Attorneys for Robert Guidry

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing Memorandum in Opposition to Plaintiff's Motion to Transfer and Consolidate on all known counsel of record in this proceeding by U.S. mail, properly addressed by first class postage prepaid mail and/or facsimile on this the 10th of November, 1999.

19TH JUDICIAL DISTRICT
EAST BATON ROUGE PARISH, LA
OF COURT
CERTIFIED TRUE
304970
DEPUTY CLERK AND RECORDER FOR
CLERK OF COURT E.B.R. PARISH

48

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 172 of 221

9 1 1 1 7 2 0 2

**19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

**NO. 464607** **DIV. "D"** **DOCKET**

COST OK Amt. 30 ck# 5613 NOV 08 1999 BY DY CLERK OF COURT

**ALVIN C. COPELAND**

**VERSUS**

**TREASURE CHEST CASINO, L.L.C. and ROBERT GUIDRY**

**FILED:**___________________ ___________________________

**DEPUTY CLERK**

CSB

**MOTION TO STAY WITH INCORPORATED MEMORANDUM AND/OR MOTION TO CONTINUE HEARING ON PLAINTIFF'S MOTION TO CONSOLIDATE**

**NOW INTO COURT**, through undersigned counsel, comes Robert Guidry, made defendant herein, who hereby requests that a stay be ordered in this action until final adjudication in the currently pending federal criminal proceeding United States of America v. Edwin Edwards et al, Criminal Docket No. 98-165-B-M2 in the United States District Court for the Middle District of Louisiana, and with respect represents:

I.

This plaintiff herein has instituted a civil RICO action herein, along with related state law claims, against the defendants herein, Treasure Chest, L.L.C. and Robert Guidry, for alleged damages arising from the defendants' participation in an alleged criminal conspiracy in the seeking and obtaining of a license to operate a riverboat gaming vessel in Kenner, Louisiana. The plaintiff herein was an unsuccessful applicant for a riverboat gaming vessel.

II.

Currently pending in the United States District Court for the Middle District of Louisiana is the criminal proceeding United States of America v. Edwin Edwards et al., Criminal Docket No. 98-165-B-M2, which is scheduled for trial on January 10, 2000. The criminal prosecution alleges crimes committed, including participation in a criminal conspiracy, by various defendants, including former Governor Edwin Edwards, in the application and licensing process for riverboat gaming vessels in the State of Louisiana, including the licensure of Treasure Chest, L.L.C. The defendant herein, Robert Guidry, the former majority owner of Treasure Chest, L.L.C. is a government witness in the criminal action.

REC'D C.P. NOV 15 1999

REC'D C.P. NOV - 9 1999

49

III.

In two other civil lawsuits instituted against Robert Guidry and The Treasure Chest, L.L.C., seeking damages in connection with the application and licensing of riverboat gaming vessels, the United States Attorney has requested and obtained a stay for the reason that the related civil proceedings would interfere and impede with the criminal prosecution of the trial scheduled for January 10, 1999. (Astoria Entertainment, Inc. v. Edwin Edwards et al, United States District Court for the Eastern District of Louisiana, no. 98-3359, Section "K"; Astoria Entertainment v. Edward J. DeBartolo, Jr. et al, Civil District Court for the Parish of Orleans, State of Louisiana, no. 98-20315, Section "B"). The United States Attorney requested and obtained stays on the grounds that under the broad rules of civil discovery, responses to discovery requests propounded by the plaintiffs would require the disclosure of information which the criminal defendants are not entitled to obtain pursuant of Rule 16 of the Federal Rules of Criminal Procedure.

IV.

In a Minute Entry dated April 21, 1999 in the federal civil suit Astoria Entertainment, Inc. v. Edwin Edwards et al, United States District Court for the Eastern District of Louisiana, no. 98-3359, Section "K", Judge Duval reasoned in his granting the Government's Motion to Stay:

> The Government has moved this Court to stay this matter because there is a pending indictment returned in the United States District Court for the Middle District styled, United States of America v. Edwin Edwards et al., Cr. Doc no. 98-165-B-M2, upon which the instant civil case is based. Indeed, the plaintiff has incorporated by reference the Middle District indictment into its Civil RICO Statement. The Government contends that because the scope of civil discovery is far greater than in criminal discovery, there is a great potential that the integrity of the criminal prosecution may be impaired by Astoria's prosecution of its civil case. Thus, the Government contends that it is imperative that this matter be stayed pending the conclusion of the criminal trial. Furthermore, the plaintiff in this matter does not oppose such a stay.
>
> **The Court believes that it must stay these proceedings because of this overlap and potential conflict and notes that it has the authority to stay such civil proceedings pending resolution of criminal investigations**. Campbell v. Eastland, 307 F.2d 478 (5th Cir. 1962) cert denied, 371 U.S. 955 (1963) (Emphasis added.) **Attached.**

The Defendant submits that the reasons given by Judge Duval apply with equal force to the instant matter, because the allegations in Astoria's civil RICO action greatly resemble the allegations of the plaintiff herein, both of which are based on the Edwards indictment in the criminal matter. Furthermore, to deny a stay in this action after the stays in the aforementioned

civil suits are in effect would create an inconsistency prejudicial to all parties in this action.

V.

In this matter, a Petition for Damages has been filed alleging wrongful conduct of the defendants herein, as well as the defendants in the criminal matter, including former Governor Edwin Edwards. The Petition for Damages filed herein relies on the Superseding Indictment against Edwin Edward, Stephen Edwards, Cecil Brown, Andrew Martin, Bobby Johnson, Gregory Tarver, and Ecotry Fuller sumitted in the criminal matter ("the Edwards indictment"). The plaintiff has alleged the defendants herein, along with the defendants in the criminal matter, engaged in an unlawful conspiracy in violation of RICO. **The defendant herein, Robert Guidry, will be required to answer allegations concerning facts and issues contained in the Edwards indictment not yet tried in the federal criminal action**. To require Mr. Guidry, a government witness, to admit or deny the allegations of the Petition filed herein and subject him to the liberal rules of civil discovery would seriously impair the integrity of the pending criminal prosecution.

VI.

Upon information and belief, an answer to the The Petititon for Damages as well as responses to discovery requests may require the disclosure of information which the criminal defendants are not entitled to obtain pursuant of Rule 16 of the Federal Rules of Criminal Procedure. Therefore, any such disclosure will interfere with and impede the federal criminal trial scheduled for January 10, 1999.

VII.

Defendant, Robert Guidry, requests a stay pending final adjudication in the criminal matter. This stay shouldl be effective immediately, and should remain in full force and effect through all delays for appeal, and retrials of the criminal litigation.

VIII.

The plaintiff herein has been contacted and does not object to the stay insofar as the stay delays responsive pleading and discovery of the defendants herein until conclusion of the criminal trial. However, the plaintiff objects insofar as the plaintiff seeks consolidation of this action with a prior-filed action entitled Alvin C. Copeland v. The Louisiana Riverboat Gaming Commission et al., in the 19th Judicial District Court for the Parish of East Baton Rouge, no.



400,750, Division "A". The stay requested herein seeks that this court retain jurisdiction over the case until the stay is lifted. Hearing on plaintiff's Motion to Consolidate is scheduled for November 15, 1999.

IX.

In view of the fact that counsel for defendants were under the impression until November 3, 1999 that counsel for plaintiffs had no objection to the stay they have not prepared an opposition to the Motion to Consolidate presently pending. Therefore, defendant, Robert Guidry requests that, in the event this Court denies this Motion to Stay, which would stay the currently pending Motion to Consolidate, that said Motion to Cosolidate filed by the plaintiff be continued for at least two weeks in order that an opposition may be prepared and timely filed.

WHEREFORE, the Defendant prays that this Honorable Court issue an Order staying these proceedings, effective immediately and remaining in full force and effect until there is a final adjudication, including all delays for appeal and retrials in the criminal matter United States of America v. Edwin Edwards et al, Criminal Docket No. 98-165-B-M2 in the United States District Court for the Middle District of Louisiana. In the alternative, in the event this Court denies this Motion to Stay, which would stay the pending Motion to Consolidate, Defendant prays that this court continues the hearing on the currently pending Motion to Consolidate for at least two weeks in order that an opposition may be prepared and timely filed.

CERTIFIED TRUE COPY
3 4 1 1 3 2
99 NOV -8 AM 9:52
DEPUTY CLERK
CLERK OF COURT E.B.R. PARISH

RESPECTFULLY SUBMITTED:

LANNY R. ZATZKIS, T.A. (#13781)
KAREN D. McCARTHY (#14193)
YVETTE A. D'AUNOY (#22761)
ANDREW N. LEE (#24154)
ZATZKIS & ASSOCIATES
700 Camp Street
New Orleans, Louisiana 70130
Telephone: (504) 523-2266
Attorneys for Robert Guidry

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 464607 DIV. "D" DOCKET

ALVIN C. COPELAND

VERSUS

TREASURE CHEST CASINO, L.L.C. and ROBERT GUIDRY

FILED:____________________ ____________________
DEPUTY CLERK

## ORDER

Considering the foregoing Motion to Stay with Incorporated Memorandum and/or Motion to Continue Hearing on Plaintiff's Motion to Consolidate:

**IT IS ORDERED** that a stay issue for these proceedings, effective immediately and remaining until there is a final adjudication, including all delays for appeal and retrials in the criminal matter United States of America v. Edwin Edwards et al, Criminal Docket No. 98-165-B-M2 in the United States District Court for the Middle District of Louisiana.

DENIED

**IN THE ALTERNATIVE, IT IS ORDERED** that the hearing on the Plaintiff's Motion to Consolidate scheduled for November 15, 1999 is continued until the ________ day of ____ __________, 1999, at ________ o'clock.

BATON ROUGE, LOUISIANA, this 7 day of Nov, 1999.

CERTIFIED TRUE COPY 3/4/11 1233 DEPUTY CLERK OF COURT

99 NOV -8 AM 9:53 DEPUTY CLERK OF COURT DOCKET CLERK OF COURT E.B.R. PARISH

[signature]
JUDGE



**19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

**NO. 464607** **DIV. "D"** **DOCKET**

**ALVIN C. COPELAND**

**VERSUS**

**TREASURE CHEST CASINO, L.L.C. and ROBERT GUIDRY**

**FILED:**______________________ ______________________________

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing Motion to Stay with Incorporated Memorandum and/or Motion to Continue Hearing on Plaintiff's Motion to Consolidate on all known counsel of record in this proceeding by U.S. mail, properly addressed by first class postage prepaid mail and/or facsimile on this the 5th of November, 1999.

CERTIFIED TRUE COPY
3 4 1 1 3 4
DEPUTY CLERK OF COURT

99 NOV -8 AM 8:53
DEPUTY CLERK
CLERK OF COURT

1 2 1 0 3 0 3 9 0

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

POSTED

NO. 464607 DIV. "D" DOCKET

ALVIN C. COPELAND

COST OK Amt 35.00

VERSUS

DEC - 2 1999

TREASURE CHEST CASINO, L.L.C. and ROBERT GUIDRY

DY CLERK OF COURT

FILED:____________________ ____________________

DEPUTY CLERK

## JOINT MOTION FOR ENTRY OF CONSENT JUDGMENT

**NOW INTO COURT**, through undersigned counsel, come Defendants, Treasure Chest, L.L.C. and Robert Guidry, who hereby request that a stay be ordered as follows, and with respect represent:

**IT IS STIPULATED AND AGREED** as evidenced by the signatures hereinbelow that all parties either consent or have no objection to a stay in these proceedings for a period of one-hundred and twenty (120) days commencing from November 15, 1999, up to and including March 14, ~~1999~~ 2000.

RESPECTFULLY SUBMITTED:

BENJAMIN R. SLATER, JR. (#12126)
BENJAMIN R. SLATER, III (#12127)
A. ELISE BROWN, (#19500)
DONALD J. MEISTER, JR. (#20294)
S. JOSEPH WELBORN (#25928)
650 Poydras Street
Suite 2600
New Orleans, Louisiana
Telephone: (504)-523-7333
**Attorneys for Plaintiff, Alvin C. Copeland**

LANNY R. ZATZKIS, T.A. (#13781)
KAREN D. McCARTHY (#14193)
YVETTE A. D'AUNOY (#22761)
ANDREW N. LEE (#24154)
ZATZKIS & ASSOCIATES
700 Camp Street
New Orleans, Louisiana 70130
Telephone: (504) 523-2266
**Attorneys for Defendant, Robert Guidry**

CERTIFIED TRUE COPY 066498 DEPUTY CLERK OF COURT

19TH JUDICIAL DISTRICT EAST BATON ROUGE PARISH, LA FILED 1999 DEC -2 PM 2:35 DEPUTY CLERK & RECORDER FOR DOUG WELBORN CLERK OF COURT E.B.R. PARISH

REC'D CP DEC 09 1999

REC'D C.P. DEC - 2 1999

CSB Slater 12/10

53

4 1 2 1 0 3 0 3 9 - 1

PAUL S. WEST (#13375)
DONALD R. CRAVINS, JR. (#25631)
Ninth Floor, One American Place
Baton Rouge, Louisiana 70825
Telephone: (225) 383-9000
**Attorneys for Defendant, Treasure Chest, L.L.C.**

19TH JUDICIAL DISTRICT
EAST BATON ROUGE PARISH, LA
FILED
DEC -2 PM 2:35
DOUG WELBORN
CERTIFIED TRUE COPY
066499
DEPUTY CLERK OF COURT

56

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 464607 DIV. "D" DOCKET

ALVIN C. COPELAND

VERSUS

TREASURE CHEST CASINO, L.L.C. and ROBERT GUIDRY

FILED:____________________ ____________________________

DEPUTY CLERK

**CONSENT JUDGMENT**

Considering the foregoing Joint Motion for Entry of Consent Judgment:

**IT IS ORDERED, ADJUDGED AND DECREED** that a stay issue in these proceedings for a period of one-hundred and twenty (120) days commencing from November 15, 1999, up to and including March 14, 2000.

BATON ROUGE, LOUISIANA, this 7th day of Dec, 1999.

JUDGE

CERTIFIED TRUE COPY
065500
DEPUTY CLERK OF COURT

I hereby certify that on this day a notice of the above judgement was mailed by me, with sufficent postage affixed, to: all CR

Done and signed on 12-9-99

E. Knight
Deputy Clerk of Court

19TH JUDICIAL DISTRICT
EAST BATON ROUGE PARISH, LA
FILED
1999 DEC -2 PM 2:35
DEPUTY CLERK & RECORDER FOR
DOUG WELBORN
CLERK OF COURT E.B.R. PARISH

19TH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DIVISION "D"

ALVIN C. COPELAND NUMBER: 464,607

VERSUS

TREASURE CHEST CASINO, L.L.C., AND ROBERT J. GUIDRY

## JUDGMENT

The Motion for Consolidation filed by Alvin C. Copeland came before the Court on Monday, November 15, 1999.

Present were:

1. Benjamin R. Slater, III on behalf of Alvin C. Copeland;
2. Paul S. West and Donald R. Cravins, Jr. on behalf of Treasure Chest Casino, LLC;
3. Lanny R. Zatzkis and Andrew N. Lee on behalf of Robert J. Guidry; and
4. Michael A. Patterson on behalf of the State of Louisiana through the Louisiana Control Board, the Riverboat Gaming Enforcement Division of the Gaming Enforcement Section of the Office of State Police, Public Safety Services, and the Department of Public Safety and Corrections.

Having considered the law and the evidence:

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED**, that the Motion for Consolidation filed by Alvin C. Copeland is DENIED.

**THUS RENDERED** in open court on November 15, 1999 and

**THUS DONE AND SIGNED** on this 20 day of Dec, 1999 in Chambers in Baton Rouge, Louisiana.

Honorable Janice Clark, Judge
19th Judicial District Court

I hereby certify that on this day a notice of the above judgement was mailed by me, with sufficent postage affixed, to: all COR

Done and signed on 12-23-99

E. Knight
Deputy Clerk of Court

19TH JUDICIAL DISTRICT EAST BATON ROUGE PARISH, LA FILED DEC 16 PM 3:30 DEPUTY CLERK OF COURT

0 0 3 2 3 0 5 6 4 0 1

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 464607 DIV. "D" DOCKET #5781 CSB

ALVIN C. COPELAND

VERSUS

POSTED MAR 20 2000

COST OK Amt. 129.00 MAR 20 2000 BY CLERK OF COURT

TREASURE CHEST CASINO, L.L.C. and ROBERT GUIDRY

FILED:__________________ ________________ DEPUTY CLERK

## MOTION TO STAY WITH INCORPORATED MEMORANDUM

**NOW INTO COURT**, through undersigned counsel, comes Defendant, Robert Guidry, who hereby requests that a stay be ordered in this action until the return of a jury verdict in the currently pending federal criminal proceeding United States of America v. Edwin Edwards et al, Criminal Docket No. 98-165-B-M2 in the United States District Court for the Middle District of Louisiana, plus an additional fifteen (15) days for the defendants to file responsive pleadings, and with respect represents:

I.

The plaintiff herein has instituted an action against the defendants herein, Robert Guidry and Treasure Chest, L.L.C., for alleged damages arising from the defendants' alleged wrongfully seeking and obtaining of a license to operate a riverboat gaming vessel in the State of Louisiana.

II.

Currently underway in the United States District Court for the Middle District of Louisiana is the criminal proceeding United States of America v. Edwin Edwards et al., Criminal Docket No. 98-165-B-M2, which commenced on January 10, 2000. The defendant herein, Robert Guidry, the former majority owner of Treasure Chest, L.L.C., is a government witness in the criminal action. Mr. Guidry has testified in the aforementioned criminal trial as part of the prosecution's case-in-chief. However, Mr. Guidry remains under subpoena and has been subject to a sequestration order by the court to refrain from commenting on any issues related to the aforementioned criminal trial.

III.

Previously, the parties herein entered into a Consent Judgment staying these proceedings

REC'D C.P. MAR 20 2000

59

COPY FILED 3-14-00
ORIGINAL FILED 3-20-00

REC'D C.P. MAR 27 2000

up to and including March 14, 2000, which was signed by this Court on December 7, 1999. The parties entered into the aforementioned stipulation to allow a reasonable time for the conclusion of the federal criminal trial. However, the federal criminal trial will not conclude prior to the lapse of the stay.

IV.

Fred Harper of the United States Attorney's office, in a letter dated March 2, 2000 to counsel for plaintiffs requesting the plaintiffs herein enter into joint agreement extending the stay until the conclusion of the federal criminal trial (attached), represented:

> All of the factors leading to the issuance of the first voluntary stay still exist and will continue to exist for some time into the future. While Mr. Guidry has testified, he is still under subpoena and is still subject to the sequestration order issued by the federal court in the criminal matter, as are all of the other witnesses who have been called or will be called.

V.

The Defendant avers that commencement of this civil proceeding requiring the Defendant to file responsive pleadings while the federal criminal trial proceeds will or may violate the oral subpoena and/or the sequestration order, which may interfere with or impede the federal criminal trial. Defendant further avers that an extension of the stay until after the return of the jury verdict plus an additional fifteen days will remedy the potential for conflict between the civil and criminal proceedings.

VI.

The Defendant, Robert Guidry, therefore requests that this Honorable Court extend the stay until the return of a jury verdict in the federal criminal trial plus an additional fifteen days for the Defendants to prepare responsive pleadings.

WHEREFORE, the Defendant, Robert Guidry, prays that the plaintiff be ordered to appear and show cause on March 27, 2000 at 9:00 o'clock a.m. why this Honorable Court should not issue an Order staying these proceedings, effective immediately and remaining in full force and effect until the return of a jury verdict plus an additional fifteen (15) days for the defendants to file responsive pleadings, in the criminal matter United States of America v. Edwin Edwards et al, Criminal Docket No. 98-165-



B-M2 in the United States District Court for the Middle District of Louisiana.

RESPECTFULLY SUBMITTED:

LANNY R. ZATZKIS, T.A. (#13781)
KAREN D. McCARTHY (#14193)
YVETTE A. D'AUNOY (#22761)
ANDREW N. LEE (#24154)
ZATZKIS & ASSOCIATES
700 Camp Street
New Orleans, Louisiana 70130
Telephone: (504) 523-2266
Attorneys for Robert Guidry

Please serve:
**Alvin C. Copeland**
through his attorney of record:
BENJAMIN R. SLATER, III
650 Poydras Street
Suite 2600
New Orleans, Louisiana

**Treasure Chest, L.L.C.**
through its attorney of record:
PAUL S. WEST
Ninth Floor
One American Place
Baton Rouge, Louisiana 70825

61

0 0 5 2 3 0 5 0 0 0

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 464607 DIV. "D" DOCKET

ALVIN C. COPELAND

VERSUS

TREASURE CHEST CASINO, L.L.C. and ROBERT GUIDRY

FILED:__________________ ______________________
DEPUTY CLERK

**ORDER**

DENIED

**IT IS ORDERED** that the plaintiff, Alvin Copeland, appear and show cause on March 27, 2000, at 9:00 o'clock a.m. why this Court should not extend the stay for these proceedings, effective immediately and remaining until the return of a jury verdict in the criminal matter United States of America v. Edwin Edwards et al, Criminal Docket No. 98-165-B-M2 in the United States District Court for the Middle District of Louisiana, plus an additional fifteen (15) days for the defendants herein to file responsive pleadings

BATON ROUGE, LOUISIANA, this 21st day of March, 2000.

CERTIFIED TRUE COPY 0 1 1 1 6 5 DEPUTY CLERK OF COURT

DENIED

00 MAR 20 AM 8:40 DEPUTY CLERK DOUG WELBORN CLERK OF COURT E.B.R. PARISH

JUDGE

62

63

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 464607 DIV. "D" DOCKET

ALVIN C. COPELAND

VERSUS

TREASURE CHEST CASINO, L.L.C. and ROBERT GUIDRY

APR 05 2000

FILED:____________________ ____________________ BY

DEPUTY CLERK

**JOINT MOTION FOR ENTRY OF CONSENT JUDGMENT**

**NOW INTO COURT**, through undersigned counsel, come plaintiff, Alvin C. Copeland, and defendants, Treasure Chest, L.L.C. and Robert Guidry, who hereby request that a stay be ordered as follows, and with respect represent:

**IT IS STIPULATED AND AGREED** that all parties consent to a stay in these proceedings until the return of a jury verdict in the current criminal proceeding titled United States of America v. Edwin Edwards et al, Criminal Docket No. 98-165-B-M2 in the United States District Court for the Middle District of Louisiana, plus an additional fifteen (15) days.

**IT IS STIPULATED AND AGREED** that all parties have agreed to enter into the foregoing Consent Judgment following the recommendation of the Honorable Judge Frank J. Polozola, after a conference held on April 4, 2000, before Judge Polozola and the parties herein.

CERTIFIED TRUE COPY 020722 DEPUTY CLERK OF COURT

RESPECTFULLY SUBMITTED:

19TH JUDICIAL DISTRICT
EAST BATON ROUGE PARISH, LA
FILED
2000 APR -5 AM 10: 37
DOUG WELBORN

BENJAMIN R. SLATER, JR. (#12126)
BENJAMIN R. SLATER, III (#12127)
A. ELISE BROWN, (#19500)
DONALD J. MEISTER, JR. (#20294)
S. JOSEPH WELBORN (#25928)
650 Poydras Street
Suite 2600
New Orleans, Louisiana
Telephone: (504)-523-7333
**Attorneys for Plaintiff, Alvin C. Copeland**

REC'D C.P.
APR 11 2000

0 0 1 2 0 5 9 5

LANNY R. ZATZKIS, T.A. (#13781)
KAREN D. McCARTHY (#14193)
YVETTE A. D'AUNOY (#22761)
ANDREW N. LEE (#24154)
ZATZKIS & ASSOCIATES
700 Camp Street
New Orleans, Louisiana 70130
Telephone: (504) 523-2266
**Attorneys for Defendant, Robert Guidry**

PAUL S. WEST (#13375)
DONALD R. CRAVINS, JR. (#25631)
Ninth Floor, One American Place
Baton Rouge, Louisiana 70825
Telephone: (225) 383-9000
**Attorneys for Defendant, Treasure Chest, L.L.C.**

CERTIFIED TRUE COPY
020721
DEPUTY CLERK OF COURT

19TH JUDICIAL DISTRICT
EAST BATON ROUGE PARISH, LA
FILED
2000 APR 5 AM 10:37
DY CLERK & RECORDER FOR
DOUG WELBORN
CLERK OF COURT

65

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 464607 DIV. "D" DOCKET

ALVIN C. COPELAND

VERSUS

TREASURE CHEST CASINO, L.L.C. and ROBERT GUIDRY

FILED:____________________ ____________________
DEPUTY CLERK

**ORDER**

Considering the foregoing Joint Motion for Entry of Consent Judgment:

**IT IS ORDERED, ADJUDGED AND DECREED** that a stay issue in these proceedings until the return of a jury verdict in the current criminal proceeding titled United States of America v. Edwin Edwards et al, Criminal Docket No. 98-165-B-M2 in the United States District Court for the Middle District of Louisiana, plus an additional fifteen (15) days.

BATON ROUGE, LOUISIANA, this 5th day of April, 2000.

____________________
JUDGE

CERTIFIED TRUE COPY
020720
DEPUTY CLERK OF COURT

19TH JUDICIAL DISTRICT
EAST BATON ROUGE PARISH, LA
FILED
2000 APR 5 AM 10:37
DEPUTY CLERK & RECORDER FOR
DOUG WELBORN
CLERK OF COURT

0 5 5 0 0 5 3 4 0

19TH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DIVISION "D"

464,607

ALVIN C. COPELAND

VERSUS

TREASURE CHEST CASINO, L.L.C., AND ROBERT J. GUIDRY

DOCKET NUMBER: 464,607

COST OK Amt. 14[00] CASH
MAY 22 2000
BY DY. CLERK OF COURT

## UNOPPOSED MOTION FOR EXTENSION OF STAY ORDER

**NOW INTO COURT**, through undersigned counsel, come defendant, Treasure Chest Casino, L.L.C., who hereby requests that the stay currently in place in this matter be extended for a period of sixty (60) days from today's date. Treasure Chest Casino, L.L.C. respectfully represents that neither Robert Guidry nor Alvin C. Copeland have any objection to the extension of the stay. The extension was requested by the United States Attorney's office in conjunction with the *U.S. v. Edwards* matter.

Respectfully Submitted,

Paul S. West, LA Bar Roll No. 13375, T.A.
Charles R. Penot, Jr., LA Bar Roll No. 01530
***McGlinchey Stafford***
**A Professional Limited Liability Company**
Ninth Floor, One American Place
Baton Rouge, Louisiana 70825
Telephone: (504) 383-9000
**ATTORNEYS FOR DEFENDANT, TREASURE CHEST CASINO, LLC**

AGREED TO BY:
Lanny R. Zatzkis, T.A. (#13781)
Karen D. McCarthy (#14193)
Yvette A. D'Aunoy (22761)
Andrew N. Lee (#24154)
700 Camp Street
New Orleans, Louisiana 70130
Telephone: (504) 523-2266
**ATTORNEYS FOR DEFENDANT, ROBERT GUIDRY**

AGREED TO BY:
Benjamin R. Slater, Jr. (#12126)
Benjamin R. Slater, III (#12127)
A. Elise Brown (#19500)
Donald J. Meister, Jr. (#20294)
S. Joseph Welborn (#25928)
Poydras Street, Suite 2600
New Orleans, Louisiana 70130
Telephone: (504) 523-7333
**ATTORNEYS FOR PLAINTIFF, ALVIN C. COPELAND**

REC'D C.P.
MAY 26 2000

67

19TH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DIVISION "D"

ALVIN C. COPELAND | DOCKET NUMBER: 464,607

VERSUS

TREASURE CHEST CASINO, L.L.C.,
AND ROBERT J. GUIDRY

---

**ORDER EXTENDING STAY**

Considering the foregoing Unopposed Motion for Extension of Stay Order::

**IT IS ORDERED, ADJUDGED AND DECREED**, that the stay currently pending in these proceedings be extended for a period of sixty (60) days from the date of this order.

Baton Rouge, Louisiana this ____ day of ________________, 2000.

______________________________
Honorable Janice Clark, Judge
19th Judicial District Court

THIS MATTER HAS BEEN SET FOR CONTRADICTORY HEARING ON THE 19 DAY OF June 9:30 AM 2000

JUDGE, 19th JUDICIAL DISTRICT COURT
May 23, 2000
DATE

68

0 5 3 0 0 3 0 0 0

19TH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DIVISION "D"

POSTED
MAY 23 2000

ALVIN C. COPELAND

DOCKET NUMBER: 464,607

COST OK Amt. 20
MAY 22 2000
BY DY. CLERK OF COURT

VERSUS

TREASURE CHEST CASINO, L.L.C.,
AND ROBERT J. GUIDRY

## MOTION FOR EXTENSION OF TIME

**NOW INTO COURT**, through undersigned counsel, come defendants, Treasure Chest Casino, L.L.C., and Robert J. Guidry who move this Honorable Court for an extension of time within which to file responsive pleadings to the suit filed by plaintiff, Alvin C. Copeland. The extension will extend until 20 days after the latest of the determination of the Unopposed Motion to Extend Stay or the expiration of any stay order issued by the Court. In support of this Motion, mover respectfully shows that a stay is currently pending but the stay will expire on May 24th, 2000. Although Treasure Chest has previously requested an extension in this matter, due to the present circumstances regarding the stay order, an extension will not unduly delay these proceedings.

**WHEREFORE**, Defendants pray for a extension of time within which to file a response to the lawsuit filed by Alvin C. Copeland which will extend until 20 days after the latest of the determination of the Unopposed Motion to Extend Stay or the expiration of any stay order issued by the Court.

Respectfully Submitted,

Paul S. West, LA Bar Roll No. 13375, T.A.
Donald R. Cravins, Jr., LA Bar Roll No. 25631
Charles R. Penot, Jr., LA Bar Roll No. 01530
*McGlinchey Stafford*
**A Professional Limited Liability Company**
Ninth Floor, One American Place
Baton Rouge, Louisiana 70825
Telephone: (504) 383-9000
Facsimile: (504) 343-3076

REC'D C.P.
MAY 26 2000

REC'D C.P.
MAY 23 2000

69

AGREED TO BY:
Lanny R. Zatzkis, T.A. (#13781)
Karen D. McCarthy (#14193)
Yvette A. D'Aunoy (22761)
Andrew N. Lee (#24154)
700 Camp Street
New Orleans, Louisiana 70130
Telephone: (504) 523-2266
**ATTORNEYS FOR DEFENDANT, ROBERT GUIDRY**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and complete copy of the foregoing Motion for Extension of Time has been served, via facsimile transmission and United States Mail, proper postage pre-paid, on the following:

Benjamin R. Slater, Jr.
Benjamin R. Slater, III
A. Elise Brown
Donald J. Meister
S. Joseph Welborn
***Slater Law Firm***
650 Poydras Street
Suite 2600
New Orleans, Louisiana 70130

Baton Rouge, Louisiana on this 22 day of May, 2000.

Paul S. West

70

**19TH JUDICIAL DISTRICT COURT**
**PARISH OF EAST BATON ROUGE**
**STATE OF LOUISIANA**
**DIVISION "D"**

**ALVIN C. COPELAND** **DOCKET NUMBER: 464,607**

**VERSUS**

**TREASURE CHEST CASINO, L.L.C.,**
**AND ROBERT J. GUIDRY**

---

**ORDER GRANTING MOTION FOR EXTENSION OF TIME**

**CONSIDERING THE FOREGOING** Motion for Extension of Time filed by the Treasure Chest Casino, L.L.C. and Robert J. Guidry,

**IT IS HEREBY ORDERED** that Defendants be granted an extension of time, within which to file a response to the lawsuit filed by Alvin C. Copeland which will extend until 20 days after the latest of the determination of the Unopposed Motion to Extend Stay or the expiration of any stay order issued by the Court.

**ORDER SIGNED** on the 24 day of May, 2000 in Baton Rouge, Louisiana.

**Judge, Nineteenth Judicial District Court**

Respectfully Submitted,

Paul S. West, LA Bar Roll No. 13375, T.A.
Donald R. Cravins, Jr., LA Bar Roll No. 25631
Charles R. Penot, Jr., LA Bar Roll No. 01530
***McGlinchey Stafford***
**A Professional Limited Liability Company**
Ninth Floor, One American Place
Baton Rouge, Louisiana 70825
Telephone: (504) 383-9000
Facsimile: (504) 343-3076

AGREED TO BY:
Lanny R. Zatzkis, T.A. (#13781)
Karen D. McCarthy (#14193)
Yvette A. D'Aunoy (22761)
Andrew N. Lee (#24154)
700 Camp Street
New Orleans, Louisiana 70130
Telephone: (504) 523-2266
**ATTORNEYS FOR DEFENDANT, ROBERT GUIDRY**

21

19TH JUDICIAL DISTRICT COURT

PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

DIVISION "D"

COST OK Amt. 15.00
JUN 19 2000
BY DY. CLERK OF COURT 4605

ALVIN C. COPELAND

DOCKET NUMBER: 464,607

VERSUS

TREASURE CHEST CASINO, L.L.C.,
AND ROBERT J. GUIDRY

*MOTION TO ENROLL ADDITIONAL COUNSEL*

**NOW COMES,** Winston G. DeCuir, attorney at law for the law firm of DeCuir and Clark, L.L.P., who suggests to this Honorable Court that he has been retained by the defendant herein, Robert J. Guidry, as additional counsel and desires that this Court allows the law firm of DeCuir and Clark, L.L.P. to enroll as additional counsel on behalf of the defendant Robert J. Guidry.

CERTIFIED TRUE COPY 026202 DEPUTY CLERK OF COURT

Respectfully submitted:

BY: ______________________
LANNY R. ZATZKIS
Attorney for Robert J. Guidry
700 Camp Street, 2nd Floor
New Orleans, LA 70130-3702
Telephone: (504) 523-2266
Telecopier: (504) 593-9921

BY: ______________________
WINSTON G. DECUIR, SR.
LA. BAR ROLL # 04795
Attorney for Robert J. Guidry
1961 Government Street
Baton Rouge, LA 70806
Telephone: (225) 346-8716
Telecopier: (225) 336-1950

FILED 00 JUN 19 AM 8:45 DEPUTY CLERK OF COURT EAST BATON ROUGE PARISH

REC'D C.P.
JUN 23 2000

*ORDER*

Considering the above and foregoing Motion:

**IT IS HEREBY ORDERED,** that Winston G. DeCuir, Sr., and the law firm of DeCuir and Clark, L.L.P. be enrolled as additional counsel for the defendant Robert J. Guidry be directed to additional counsel at the following address: Winston G. DeCuir, Sr., DeCuir and Clark, L.L.P., Attorneys At Law, at 1961 Government Street, Baton Rouge, Louisiana 70816.

Thus done and signed in Baton Rouge, Louisiana, this 20 day of June, 2000, in Baton Rouge, Louisiana.

______________________
JUDGE - 19TH JUDICIAL DISTRICT COURT

72

*CERTIFICATE OF SERVICE*

I do hereby certify that a copy of the above and foregoing Motion to Enroll has been mailed, postage pre-paid to Mr. Paul S. West, Attorney At Law, at Post Office Box 3016, Baton Rouge, LA 70821; and Mr. Benjamin R. Slater, III, Attorney At Law, at 650 Poydras Street, Ste. 2600, New Orleans, LA 70130, both attorneys for the plaintiff, Alvin Copeland, by placing same with the United States Postal Service.

Thus done this 19th day of June, 2000, in Baton Rouge, Louisiana.

WINSTON G. DECUIR, SR.

0 0 0 7 2 7 1 0 0

**19TH JUDICIAL DISTRICT COURT**

**PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

**DIVISION "D"**

**ALVIN C. COPELAND** **DOCKET NUMBER: 464,607**

**VERSUS**

**TREASURE CHEST CASINO, L.L.C., AND ROBERT J. GUIDRY**

POSTED JUN 26 2000

## ORDER EXTENDING STAY

This matter came on for hearing on the 19th day of June, 2000. The Court heard from representatives of all parties.

Considering the foregoing Unopposed Motion for Extension of Stay Order and having determined that all parties agree to the extension;

**IT IS ORDERED, ADJUDGED AND DECREED**, that the stay currently pending in these proceedings be extended ~~until September 30, 2000.~~ 90 days hereof.

Baton Rouge, Louisiana this 19 day of June, 2000.

Honorable Janice Clark, Judge
19th Judicial District Court

FILED JUN 19 2000
DY. CLERK OF COURT

REC'D C.P. JUN 23 2000

74



**U.S. Department of Justice**

*United States Attorney's Office*
*Eastern District of Louisiana*

Fred P. Harper, Jr.
Assistant U.S. Attorney
*Deputy Chief, Criminal Division*

*Hale Boggs Federal Building*
*501 Magazine Street, Second Floor*
*New Orleans, Louisiana 70130*

*Telephone: (504) 680-3066*
*Facsimile: (504) 589-3594*

June 8, 2000

FILED
JUN 19 2000
DY. CLERK OF COURT

Paul S. West, Esq.
McGlinchey Stafford
Post Office Box 3016
Baton Rouge, Louisiana 70821

Benjamin R. Slater, III, Esq.
Slater Law Firm
650 Poydras Street, Suite 2600
New Orleans, Louisiana 70130

**Re: United States v. Edwin W. Edwards, *et al.***
**Criminal Action Number 98-165-B-M2**

Dear Messars. West and Slater:

In accordance with our conversations during the week of June 4, 2000, the government would like the present stay in the lawsuit captioned Alvin C. Copeland v. Treasure Chest Casino, LLC and Robert Guidry, #464607, Division D, 19th Judicial District Court for the Parish of East Baton Rouge, to remain in effect for an additional 120 days from June 1, 2000. This request is in accordance with stays granted in other civil actions regarding parties who were also defendants/witnesses in the prosecution of United States v. Edwin W. Edwards, et al. Based upon the government's meetings with the Court as well as United States Probation Officers in the Middle District of Louisiana who are preparing pre-sentence reports for Judge Polozola, the government believes that the criminal proceedings will be sufficiently concluded in 120 days and that no further stays or delays regarding various civil actions will be necessary.

As we have in the past, the government is interested in attempting to expedite the conclusion of the criminal proceedings and does not seek to delay the presentation of civil cases. However, the government has taken a consistent position and Judge Polozola has repeatedly ruled that any other proceedings which could impact the criminal proceedings should be stayed long enough for the criminal proceedings to be concluded. We hope that the parties and the Court in your case will agree, upon appropriate motions, to stay your case for the time period requested by this letter.

75

in the same matter.

III.

Therefore, movers request an extension of time to file responsive pleadings until fifteen (15) days following this Court's ruling on Guidry's Motion to Disqualify Plaintiff's Counsel.

77

WHEREFORE, Defendants, Treasure Chest Casino, LLC and Robert Guidry, respectfully request that this Court sign an order granting Defendants an extension of time until fifteen (15) days following this Court's ruling on Guidry's Motion to Disqualify Plaintiff's Counsel.

RESPECTFULLY SUBMITTED,

LANNY R. ZATZKIS, T.A. (#13781)
KAREN D. McCARTHY (#14193)
YVETTE A. D'AUNOY (#22761)
ANDREW N. LEE (#24154)
ZATZKIS & ASSOCIATES
700 Camp Street
New Orleans, Louisiana 70130
Telephone: (504) 523-2266
Attorneys for Robert Guidry

WINSTON DECUIR (Bar # 04795)
LINDA LAW CLARK (Bar #22305)
1951 Government Street
Baton Rouge, Louisiana 70806
Telephone: (225) 346-8716
Attorneys for Robert Guidry

PAUL WEST (#13375)
Ninth Floor, One American Place
Baton Rouge, Louisiana 70825
Telephone: (225) 383-9000
Attorney for Defendant, Treasure Chest, LLC

CERTIFIED TRUE COPY
060692
DEPUTY CLERK OF COURT

19TH JUDICIAL DISTRICT
EAST BATON ROUGE PARISH, LA
FILED
2000 SEP 29 PM 2:24
DEPUTY CLERK OF COURT
DOUG WELBORN

**CERTIFICATE OF SERVICE**

I hereby certify that I have served a copy of the foregoing Motion for Extension of Time within which to Plead on all known counsel of record in this proceeding by U.S. mail, properly addressed by first class postage prepaid mail and/or facsimile on this the 29th of September, 2000.

78

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

**NO. 464607** **DIV. "D"** **DOCKET**

**ALVIN C. COPELAND**

**VERSUS**

**TREASURE CHEST CASINO, L.L.C. and ROBERT GUIDRY**

**FILED:**____________________ ____________________________
**DEPUTY CLERK**

**ORDER**

Considering the foregoing motion for an extension of time within which to plead:

**IT IS ORDERED** that defendants, Treasure Chest, LLC and Robert Guidry, be granted an extension of time until fifteen (15) days following the Court's decision on Robert Guidry's Motion to Disqualify Plaintiff's Counsel within which to file responsive pleadings.

DENIED

BATON ROUGE, LOUISIANA, this 2nd day of Oct, 2000.

JUDGE

CERTIFIED TRUE COPY
060693
DEPUTY CLERK OF COURT

19TH JUDICIAL DISTRICT
EAST BATON ROUGE PARISH, LA
FILED
2000 SEP 29 PM 2:25
DEPUTY CLERK
DOUG WELBORN
CLERK OF COURT

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 201 of 221

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 464607 DIV. "D" DOCKET

ALVIN C. COPELAND

VERSUS

TREASURE CHEST CASINO, L.L.C. and ROBERT GUIDRY

FILED:____________________ ______________________________
DEPUTY CLERK

## ORDER

Considering the foregoing motion for an extension of time within which to plead:

**IT IS ORDERED** that plaintiff, Alvin Copeland, appear and show cause on the ______ day of __________________, 2000, at ______ a.m why defendants Motion for Extension of Time Within Which to Plead, should not be granted an extension of time until fifteen (15) days following the Court's decision on Robert Guidry's Motion to Disqualify Plaintiff's Counsel within which to file responsive pleadings.

BATON ROUGE, LOUISIANA, this _______ day of __________________, 2000.

______________________________
JUDGE

PLEASE SERVE:
**Alvin C. Copeland**
through his attorney of record:
BENJAMIN R. SLATER, III
650 Poydras Street
Suite 2600
New Orleans, Louisiana

CERTIFIED TRUE COPY
DEPUTY CLERK OF COURT
19TH JUDICIAL DISTRICT
EAST BATON ROUGE PARISH, LA
FILED
2000 SEP 29 PM 2: 25
DEPUTY CLERK & RECORDER FOR
DOUG WELBORN
CLERK OF COURT



19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 464607 DIV. "D" DOCKET

ALVIN C. COPELAND

VERSUS

TREASURE CHEST CASINO, L.L.C. and ROBERT GUIDRY

FILED:____________________ ____________________

DEPUTY CLERK

POSTED OCT - 9 2000

COST OK Amt. ✓

SEP 29 2000

BY____________ DY. CLERK OF COURT

**MOTION TO DISQUALIFY COUNSEL**

**NOW INTO COURT,** through undersigned counsel, comes Defendant, Robert Guidry, who moves this court to disqualify plaintiff's counsel, Benjamin R. Slater, III ("Slater") and the Slater Law Firm from representing plaintiff, Alvin Copeland, in the above captioned matter. Defendant moves to disqualify pursuant to Rule 3.7 of the Rules of Professional Conduct, which provides that a lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness. Slater was a key figure in Copeland's attempt to obtain a riverboat gaming license and was part of Copeland's efforts to prevent or delay the State from issuing a riverboat gaming license to the Treasure Chest. Upon information and belief, Slater has personal knowledge of material facts of many events during the relevant time periods raised in plaintiff's petition. As is more fully set forth in the attached memorandum, Slater is a necessary witness in this action. Therefore, Defendant herein, Robert Guidry, respectfully requests the Court disqualify Slater and the Slater firm from acting as counsel in this action, as Slater is a necessary witness, and should therefore not undertake the representation of Copeland in this matter, in accordance to Rule 3.7 of the Rules of Professional Responsibility.

**WHEREFORE,** Defendant, Robert Guidry, prays that a rule nisi issue herein ordering Plaintiff to appear and show cause at a date and time to be set by the Court why Plaintiff's counsel of record, Benjamin R. Slater, III and the Slater Law Firm should not be disqualified

from representing Plaintiff in this action.

RESPECTFULLY SUBMITTED:

LANNY R. ZATZKIS, T.A. (Bar #13781)
KAREN D. McCARTHY (Bar #14193)
YVETTE A. D'AUNOY (Bar #22761)
ANDREW N LEE (Bar #24154)
ZATZKIS & ASSOCIATES
700 Camp Street
New Orleans, Louisiana 70130
Telephone: (504) 523-2266
Attorneys for Robert Guidry

WINSTON DECUIR (Bar # 04795)
LINDA LAW CLARK (Bar #22305)
1951 Government Street
Baton Rouge, Louisiana 70806
Telephone: (225) 346-8716
Attorneys for Robert Guidry

RALPH CAPITELLI (Bar # 3858)
CAPITELLI & WICKER
1100 Poydras Street
Energy Center Suite 2950
New Orleans, Louisiana 70163
Telephone: (504) 582-2425
Attorney for Robert Guidry

ARTHUR A. LEMANN, III (Bar #8296)
ARTHUR A. LEMANN, III & ASSOCIATES
936 Lafayette Street, Suite 100
New Orleans, Louisiana 70113
Telephone (504) 473-9826
Attorney for Robert Guidry

CERTIFIED TRUE COPY
060697
DEPUTY CLERK OF COURT

19TH JUDICIAL DISTRICT
EAST BATON ROUGE PARISH, LA
FILED
2000 SEP 29 PM 2:23
DOUG WELBORN

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 204 of 221

**19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE**

**STATE OF LOUISIANA**

**NO. 464607** **DIV. "D"** **DOCKET**

**ALVIN C. COPELAND**

**VERSUS**

**TREASURE CHEST CASINO, L.L.C. and ROBERT GUIDRY**

**FILED:**____________________ ____________________________
**DEPUTY CLERK**

**IT IS ORDERED** that a rule nisi issue herein ordering Plaintiff to appear and show cause on the 16th day of Oct, 2000, at 9:30 a.m/p.m why Plaintiff's counsel of record, Benjamin R. Slater, III and the Slater Law Firm should not be disqualified from representing Plaintiff in this action.

JUDGE
Oct. 3, 2000

Please serve:

**Alvin C. Copeland**
through his attorney of record:
BENJAMIN R. SLATER, III
650 Poydras Street
Suite 2600
New Orleans, Louisiana

CERTIFIED TRUE COPY
0506983
DEPUTY CLERK OF COURT

19TH JUDICIAL DISTRICT
EAST BATON ROUGE PARISH, LA
FILED
2000 SEP 28 PM 2:23
DEPUTY CLERK & RECORDER
DOUG WELBORN
CLERK OF COURT

J 1 0 1 1 3 0 1 4 4

19TH JUDICIAL DISTRICT COURT FOR THE PARISH OF EAST BATON ROUGE

STATE OF LOUISIANA

NO. 464607 DIV. "D" DOCKET

ALVIN C. COPELAND

VERSUS

TREASURE CHEST CASINO, L.L.C. and ROBERT GUIDRY

FILED:____________________ ____________________
DEPUTY CLERK

**MEMORANDUM IN SUPPORT OF MOTION TO DISQUALIFY COUNSEL**

This action is brought by plaintiff, Alvin Copeland ("Copeland"), alleged successor of American International Gaming Association, Inc. ("AIGA"), for damages allegedly resulting from AIGA not being awarded a license by the State of Louisiana to operate a riverboat gaming vessel. Copeland is represented by the Slater Firm, with Benjamin R. Slater, III ("Slater") designated as trial counsel. Upon information and belief, Slater and the Slater Law Firm have represented Copeland for many years, and specifically have represented him in connection with Copeland's attempts to obtain a riverboat gaming license in the State of Louisiana, detailed below. Slater also was a key figure in Copeland's efforts to delay or prevent the Division from issuing a license to the Treasure Chest Casino, L.L.C. ("the Treasure Chest"). Therefore, Defendant herein, Robert Guidry, respectfully requests the Court disqualify Slater and the Slater Law Firm, as Slater is a necessary witness, as detailed hereinbelow, and should therefore not undertake the representation of Copeland in this matter, in accordance to Rule 3.7 of the Rules of Professional Responsibility.

The thrust of plaintiff's petition is that AIGA would have received a riverboat gaming license, and the Treasure Chest would not have received a license but for the wrongful actions of an "overarching corrupt conspiracy" which included former Governor Edwin Edwards, Stephen Edwards, and former Governor's aide Andrew Martin. (See Paragraph 28 and 29 of the Plaintiff's petition.)

Slater will be a key fact witness in this case. Slater not only represented Copeland in court proceedings, but was the point man in Copeland's efforts in administrative hearings and meetings to obtain a riverboat gaming license. Slater's personal knowledge of the events leading

84

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 206 of 221

up to the award of a riverboat gaming license to the Treasure Chest, as well as the State's constructive denial of a license to AIGA are crucial to support or deny Copeland's claims. Slater's personal knowledge of events and communications based on his longstanding participation in the riverboat application and licensing process on behalf of AIGA cannot be provided by any other person, including the Plaintiff himself. Likewise, Slater was in communication with members of the State agencies in charge of the licensing process, and therefore has personal knowledge of events and evidence to support and/or refute Copeland's claims.

**FACTUAL BACKGROUND**

During the relevant time period, in order to obtain a license to operate a gaming riverboat, a potential licensee would apply for two separate regulatory approvals. First, the potential licensee would apply to the Riverboat Gaming Commission (hereinafter "the Commission"), a seven member panel appointed by the Governor of the State of Louisiana which evaluated applicants for the 15 available gaming licenses in Louisiana provided for under state law. See La. R.S. 4:511. The Commission would give approval for the route, duration, and stops of its riverboat excursions from a berth site approved by the Commission. The Commission and its staff received detailed applications and heard presentations from all of those applicants. The Commission would then issue a "Certificate of Preliminary Approval" at its discretion.

The Riverboat Gaming Commission awarded 15 Certificates of Preliminary Approval to applicants: eight were awarded in March of 1993 and the remaining seven were awarded on June 18, 1993. Treasure Chest received one of the Certificates of Preliminary Approval on June 18, 1993. **AIGA, along with twenty-eight other applicants, did not receive a Certificate of Preliminary Approval from the Commission.**

Additionally, the Riverboat Gaming Division of the Louisiana State Police (the "Division") would conduct a separate investigation prior to issuance of the license. The Division would focus its investigation of the potential licensee for character "suitability", and, if approved, would issue a license. See La.R.S. 4:515 et seq. for the powers of the Division. "Suitability" means that the applicant is a person of good character, honesty, and integrity, whose activities, reputation, habits and associations do not pose a threat to the public interest of the State of Louisiana, as well as other criteria established to determine the suitability of the potential



licensee to operate a riverboat gaming vessel. See La.R.S. 4:530. AIGA, along with twenty-eight other applicants, did not receive a license from the Division to operate a riverboat gaming vessel.

The plaintiff, Alvin Copeland, has alleged he is the successor to AIGA, which was one of thirty-five applicants that sought to obtain a license from the State of Louisiana to operate a riverboat gaming vessel. Copeland alleges AIGA first submitted an application to the Riverboat Gaming Commission on December 11, 1992, and submitted a second application form on February 22, 1993, containing supplemental information. (Paragraph 9 of the petition.) Copeland alleges AIGA sought to operate the riverboat in Kenner's Laketown Harbor Park.

The Treasure Chest, L.L.C. was a successful applicant for a riverboat gaming license and was awarded one of the 15 available licenses on May 17, 1994. Defendant Robert Guidry was the majority shareholder of Treasure Chest, L.L.C. Boyd Kenner, Inc., which managed the casino operations at all times, was a minority shareholder of The Treasure Chest Casino, L.L.C. The Treasure Chest, L.L.C. was subsequently conveyed in its entirety to Boyd Gaming, Inc. in 1997, the parent corporation of Boyd Kenner, Inc.

Copeland's only nexus to Guidry was that both Guidry and Copeland submitted applications on behalf of Treasure Chest and AIGA, respectively, to the Riverboat Gaming Commission and to the Division to locate their riverboats in the City of Kenner. However, the City of Kenner recommended the Treasure Chest which applied for a location approved by the City of Kenner.

The Treasure Chest also applied to the Division for a riverboat gaming license in 1993. Following the Division's licensing hearing, the Treasure Chest was awarded a riverboat gaming license in May of 1994.

Although Copeland's corporation, AIGA, never received either a Certificate of Preliminary Approval from the Commission or a riverboat gaming license from the Division, he now seeks reimbursement from Guidry of all of his out of pocket costs, the value of the Treasure Chest's riverboat gaming license, and lost profits based on his unsupported opinion that AIGA would have received a license.

**Slater is a necessary witness**

Upon information and belief, Slater represented AIGA and Copeland throughout the application and licensing process, including at hearings before the Commission and the Division.

including Copeland and McCormick, and the State Police. The defendant will also need to discover exactly what Slater's role was, as well as Copeland's, in the State Police's delaying the Treasure Chest's licensing hearing. Upon information and belief, Slater has personal knowledge of the communications between AIGA's representatives and representatives of the State Police, including his own.

**Copeland revives his attack on the Treasure Chest riverboat gaming license.**

In November of 1998, Copeland sent Treasure Chest a letter threatening to file suit against Treasure Chest and Guidry if its demands weren't met. Exhibit "M". Treasure Chest, now owned entirely by Boyd Gaming, Inc., did not concede to Treasure Chest's demands.

On January 21, 1999, Copeland amended his petition a third time in his action against the Commission and the Division originally filed on November 23, 1993, once again praying for the riverboat gaming license held by the Treasure Chest. Copeland argued:

> Plaintiff submits that the Division should be required to hold a hearing into his suitability to conduct gaming operating on a riverboat, and should therefore award him the license previously granted to the Treasure Chest. (Paragraph 31 of Plaintiff's Third Supplemental and Amending Petition.)

Copeland also sought a declaratory judgment declaring that the license awarded to the Treasure Chest was null and void and that the State violated Copeland's constitutional rights. Copeland sought monetary damages including lost past and future profits. In a recent decision in April of 2000, Judge Robert Downing, in section "A" of the 19th Judicial District Court denied Copeland his requested relief and dismissed Copeland's entire suit, with the exception of the return of unused fees paid to the Division by Copeland.

It is safe to assume that Slater will be the crucial witness to testify concerning Copeland's legal challenges to the Commission's authority and Copeland's attempt to strip the Treasure Chest of its license.

There are many other general issues related to the allegations of the plaintiff for which Slater will need to testify. For instance, Slater has pled that Copeland "neither knew nor, in the exercise of due diligence, could reasonably have known of the offenses committed by the members of the RICO enterprise." (Paragraph 77 of the plaintiff's petition.) It will be necessary for the defendants to question Slater whether or not he performed a due diligence investigation in discovering his claims. Specifically, it will be important to determine when Slater first

discovered that Guidry had ersations with Martin and Edward ] if and when he learned that Edwards contacted the State Police. As Slater was involved in discussions with the State Police during the same time period as the alleged offenses, Slater becomes a key witness, especially in light of the fact that Slater was urging the State Police to delay scheduling a hearing until AIGA could have a hearing of their own.

Secondly, Copeland's petition alleges that he would have received a license, and the Treasure Chest would not have, but for the alleged offenses of the "overarching corrupt conspiracy". Copeland, is in effect alleging that Copeland's proposal was better than the Treasure Chest's, and that Copeland was more qualified to own and operate a riverboat gaming vessel than Guidry. Guidry, who had years of experience in the marine industry and employed a sophisticated gaming company to manage the casino operation, and who possessed sound financial resources and success, vehemently denies this allegation. Copeland, whose fried chicken business had gone bankrupt and who had no relevant experience in the marine industry (other than speedboat racing), was a far less attractive candidate. The criteria used to determine whether the candidate was qualified was set forth in the Louisiana Economic Development and Gaming Control Act. Upon information and belief, Slater was familiar with the quality of AIGA's application, as well as the Treasure Chest's, and the statutory criteria used to evaluate the applicants.

This case involves a myriad of complex issues of law and fact involving the complex regulatory scheme for the awarding of riverboat gaming licenses. Applicants such as Copeland and Guidry employed attorneys and others to represent them in conducting due diligence and making presentations to the Commission and the Division. The Defendant, Robert Guidry, will conduct discovery of Copeland's agents for their personal knowledge concerning the facts. The issues presented in Copeland's petition are issues involving complex regulatory law known to Slater, and applied by him in Copeland's efforts to obtain a riverboat gaming license. Additionally, Slater was responsible for communicating with the State Police and the Commission. Other than Copeland himself, there is no other person who knows more about Copeland's attempts to obtain a riverboat gaming license and his effort to derail Guidry's license application than Slater himself. In the federal criminal trial, the U.S. attorney called James Perdigao, Treasure Chest's attorney, as a fact witness to explain the licensing procedure and the

Treasure Chest's pursuits in the application and licensing process. Knowing that Mr. Perdigao and other attorneys at Adams and Reese were likely to be witnesses in these proceedings because of their role in the licensing process, Mr. Guidry sought independent counsel. Mr. Copeland should do the same.

The defendant will depose Slater and will call him as a witness. Slater is a key necessary witness, not merely a potential witness. Therefore, the defendant respectfully requests that Slater be disqualified as attorney for plaintiff.

LAW AND ARGUMENT

Because **Slater will be called as a witness in this case** and is clearly a necessary witness, under the plain language of Rule 3.7 of the Rules of Professional Conduct, Slater shall not act as an advocate for the defendants in this case. After establishing that the general rule applies, undersigned counsel respectfully submits that this Honorable Court has no other choice but to disqualify Slater from representing Copeland in this case unless an applicable exception applies. As will be shown in the subsequent discussion, none of the exceptions to the general rule are applicable here. The general rule, as well as the exceptions are set forth in Rule 3.7(a) of the Rules of Professional Conduct, reproduced below.

**Rule 3.7. Lawyer as witness**

**(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:**
**(1) The testimony relates to an uncontested issue;**
**(2) The testimony relates to the nature and value of legal services rendered in the case; or**
**(3) Disqualification of the lawyer would work substantial hardship on the client.**

**...**

**THE EXCEPTIONS TO THE GENERAL RULE PROHIBITING AN ATTORNEY FROM ACTING AS BOTH AN ADVOCATE AND A WITNESS ARE INAPPLICABLE HERE.**

Once it becomes clear that any attorney representing a party is likely to be called as a necessary witness, the general rule applies. See Exnicios v. Saunders, 448 So. 2d 751 (La. Ct. App. 4th Cir. 1984). As previously discussed, the general rule applies here. Therefore, Slater must be disqualified unless an exception to the general rule can be found.

Rule 3.7(a) of the Rules of Professional Conduct provides for three exceptions to the general rule that a lawyer shall not act as an advocate at a trial in which the lawyer is likely to be

a necessary witness: (1) where the testimony relates to an uncontested issue; (2) where the testimony relates to the nature and value of legal services rendered in the case; (3) where the disqualification of the lawyer would work a substantial hardship on the client.

In the instant case, none of the exceptions are applicable. First, Slater's testimony will not be related to an uncontested issue. Undersigned counsel expects to elicit testimony from Slater regarding all of his communications with the Commission and/or Division, as well as Kenner City officials and state officials. Counsel will also question Slater as to all facts which he believes supports the conclusion that AIGA would have received a riverboat gaming license, even though AIGA never received a Certificate of Preliminary Approval or was investigated for "suitability" by the State Police. Slater is a key fact witness to the events surrounding the State Police's decision to grant the Treasure Chest a licensing hearing, and deny a licensing hearing to AIGA.

Once it is established that a lawyer is likely to be called as a necessary witness, absent an applicable exception, the Court has no choice but to disqualify that attorney from representing a party at trial. It has been repeatedly held that the Louisiana Rules of Professional Conduct have the force and effect of substantive law. Succession of Wallace, 574 So. 2d 348 (La. 1991); Scurto v. Siegrist, 598 So. 2d 507 (La. Ct. App. 1st Cir. 1992) writ dented 600 So. 2d 683 (La. 1992) ; Soderquist v. Kramer, 595 So. 2d 825 (La. Ct. App. 2d Cir. 1992); Lyons v. Lyons, 371 So. 2d 221 (La. Ct. App. 1990); Cromwell v. Commerce Energy & Bank of Lafayette, 528 So. 2d 759 (La. Ct. App. 3d Cir. 1988).

In discussing the predecessor provision to Rule 3.7, the Louisiana Fourth Circuit Court of Appeal stated: "These rules are unequivocal and regardless of the good faith of the parties, they must prevail." Gutierrez v. Travelers Insurance, 358 So. 2d 349, 351 (La.. Ct. App. 4th Cir.. 1978) (emphasis added) . Similarly, the Court would later state: "we are compelled to apply the provisions of the Code of Professional Responsibility as written." Hero Lands Company v. Borello, 459 So. 2d 658 (La. Ct. App. 4th Cir. 1984) (emphasis added).

At this juncture, undersigned counsel would like to point out to the Court that the Rules of Professional Conduct provide two separate standards, one applicable when 'the attorney has advance notice of his status as a witness and another applicable when the attorney has already undertaken representation and discovers that he/she may be called as a mere witness. Compare

La. Rule of Prof. Conduct 3 and La. Rule of Prof. Conduct 3. Rule 3.7(a) applies when the attorney has advance notice that he/she is likely 'to be called as a necessary witness. See Exnicios v. Saunders, 448 So. 2d 751 (La. Ct. App. 4th Cir.. 1984) and Lyons v. Lyons, 571 So. 2d 221 (La. Ct. App. 3d Cir. 1990). Conversely, Rule 3.7(c) applies when the attorney has already undertaken representation of a client and finds he/she may be called as a witness. See Lilly v. Angelo, 523 So. 2d 899 (La. Ct. App. 4th Cir. 1988).

Counsel for the defendants may try to argue that Rule 3.7(c) and not Rule 3.7 (a) is applicable here, citing Lilly v. Angelo, 523 So 2d 899 (La. Ct. App. 4th Cir. 1988). However, any reliance on that case is misplaced here as Lilly v. Angelo is clearly distinguishable from the instant one.

In Lilly v. Angelo, 'the attorney for the plaintiff was notified by opposing counsel that he was to be called as a witness on the day of trial. 523 So. 2d at 904. Therefore, Rule 3.7(c) was applicable, not Rule 3.7(a). Id. Unlike Lilly, here, undersigned counsel files the instant motion prior to answer, at the first opportunity, before discovery takes place. To hold that Rule 3.7(a) is not applicable here is tantamount to holding that Rule 3.7(a) is never applicable.

Furthermore, jurisprudence indicates that an attorney may not accept representation of a client knowing he/she is likely to violate the general rule that a lawyer shall not act as both an advocate and necessary witness and then later complain when disqualification occurs. see Exnicios v. Saunders, 448 So. 2d 751 (LA. Ct. App. 4th Cir. 1984); and Lyons v. Lyons, 571 So. 2d 220-221 (La. Ct. App. 3d Cir. 1990).

In Saunders, the plaintiff unsuccessfully argued that his attorney should not have been disqualified from representing him even though his attorney was a witness in the case. 449 So. 2d 752. As a lawyer himself, the plaintiff in Saunders was charged with knowledge that he, in his capacity as his attorney, might be disqualified. Id. In response to the plaintiff's argument, the Saunders Court stated: "the plaintiff assumed the risk that he might be forced to replace his attorney with other counsel. if his attorney's testimony could not be dispensed with by stipulation or otherwise." Id.

Similarly, Slater cannot argue that he did not know he was a necessary witness and cannot argue that he should not be disqualified because he has already accepted representation of the Plaintiffs. Slater is being given as much advance notice as possible of his status as a necessary

97

Case 3:10-cv-00603-BAJ-DLD Document 4 10/07/10 Page 213 of 221

U.S. Department of Ju...

*United States Attorney*
*Eastern District of Louisiana*

*New Orleans, Louisiana 70130*

March 2, 2000

Mr. Benjamin R. Slater, III
Mr. Donald J. Miester, Jr.
Slater Law Firm
Suite 2600 Poydras Center
650 Poydras Street
New Orleans, La. 70130

Re: Copeland v. Treasure Chest Casino, L.L.C., et. al.

Dear Messrs. Slater and Miester:

This letter is a follow up to our earlier discussions regarding the above entitled matter and the voluntary stay of those proceedings by the parties pending the completion of the federal criminal trial, U.S. v. Edwin W. Edwards, et. al., which is currently in progress in the Middle District of Louisiana before U.S. District Judge Frank J. Polozola.

My understanding is that the voluntary stay of the above entitled proceedings pending before La. District Court Judge Janice Clark expires in mid-March 2000. Please be advised that the criminal trial cited above will not conclude prior to the date set for the expiration of the stay in the state civil case. All of the factors leading to the issuance of the first voluntary stay still exist and will continue to exist for some time into the future. While Mr. Robert Guidry has testified, he is still under subpoena and is still subject to the sequestration order issued by the federal court in the criminal matter, as are all of the other witnesses who have been called or will be called.

For the reasons noted herein, please advise at your earliest opportunity, whether or not the stay will be extended by joint agreement of the parties to this civil litigation. If a voluntary agreement to extend the stay is not going to be executed or an extension of the stay is not granted by the state court prior to the expiration of the current stay, I will have no choice but to file for a stay of these state civil proceedings with Judge Polozola. As you are aware, every pending civil suit, involving any of the parties/witnesses in the criminal proceedings has been stayed voluntarily or by order of the federal court.

Finally, as you are undoubtedly aware, I am working out of an off-site office in Baton Rouge, La. My phone number is 225-389-0581 and fax number is 225-389-0572. Kindly confirm any

RECEIVED TIMEMAR. 14. 10:11AM

LETTER TO Mr. Benjamin R. Slater, III.
Mr. Donald J. Miester, Jr.
Page 2

extension of the stay to me in writing via fax. If you have any questions or wish to discuss this matter, please do not hesitate to call.

Sincerely,

Fred P. Harper, Jr.
Deputy Chief, Criminal Division
U.S. Attorney's Office, Eastern District of La.

** TOTAL PAGE.02 **

RECEIVED TIMEMAR. 14. 10:11AM

Upon information and belief, Slater assisted in preparing the application, including the detailed forms required of the applicants by the Commission and/or Division. Slater was responsible for guiding AIGA through the application and licensing process. The first step in the application process was to submit an application to the Commission detailing the proposal for the riverboat. **Copeland alleges he spent 2.2 million dollars in expenses in preparing and processing AIGA's application for a license.** (See paragraph 10 of Copeland's petition.) Slater is a potential witness because Slater has personal knowledge of the events surrounding the preparation and submission of Copeland's application, the expenses relative thereto, including attorneys' fees. Slater has personal knowledge of any reasons to support the contention that Copeland would have received the license based on AIGA's application. (See paragraph 29 of Copeland's petition.)

Additionally, as part of the application process, the applicants communicated with local officials representing the locality in which the riverboat would be located to gain support for the proposal. The Commission would also hold meetings throughout the State. Upon information and belief, Slater was present at some meetings at which Copeland was not present, making Slater a necessary witness in this action. The applicants also typically established contacts with architects and engineers, professionals in the marine industry, gaming consultants, and those responsible for construction of the riverboat and docking facilities. Slater's personal knowledge based on his contacts with these professionals will be crucial to support or refute the Plaintiff's allegation that it would have received a riverboat gaming license. All of the applicants, including AIGA and the Treasure Chest, made presentations to the Commission in support of their application. On information and belief, Slater played a key role in AIGA's presentation to the Commission.

On June 18, 1993, the Commission awarded seven Certificates of Preliminary Approval to various applicants by a vote of its seven members in an open hearing, including the Treasure Chest, bringing the total number of Certificates of Preliminary Approval issued by the Commission to 15. The Commission voted unanimously in favor of awarding the Treasure Chest a Certificate of Preliminary Approval. Upon information and belief, Slater was present at this hearing. The Commission did not vote on AIGA's application, and AIGA therefore did not receive a Certificate of Preliminary Approval.

Although the plaint[illegible]as not alleged that Guidry participa[illegible]n the overarching corrupt conspiracy relative to the issuance of the Certificate of Preliminary Approval, his petition makes factual allegations about the former Governor sending clear messages to members of the Commission about which applicants he favored. Therefore, the defendants herein will need to question Slater about his knowledge of the various applicants' communications with the members of the Commission, and communications with the Governor. The Defendants intend to depose Slater concerning his or Copeland's communications with the members of the Commission, the Governor or any other persons having a connection to the application and licensing process.

**Slater represents Copeland in AIGA's efforts to derail the licensing of the Treasure Chest.**

In addition, Slater's firm represented Copeland in numerous attempts to derail Guidry's efforts to obtain a riverboat gaming license. As detailed below, Slater continuously sought to prevent the Division from issuing a license to the Treasure Chest. Following the issuance of the Certificate of Preliminary Approval by the Commission to the Treasure Chest, the Treasure Chest was being investigated by the Division for suitability, whereas AIGA was not under consideration for a license to operate at the Laketown location.

With its original application, The Treasure Chest planned to have its berth at Laketown on Lake Pontchartrain. However, in March of 1993, Kenner city officials announced that they wished to have a gaming riverboat located in Rivertown, on the banks of the Mississippi River. The Treasure Chest, working in cooperation with Kenner city officials, modified its application by changing the proposed docking berth site to Rivertown in April of 1993. At the time the Commission issued the Certificate of Preliminary Approval to the Treasure Chest, on June 18, 1993, the Treasure Chest was to have its docking berth at Rivertown. Only after the U.S. Coast Guard and the U.S. Corps of Engineers found the Rivertown location was unsafe as a berth site in October of 1993, did the Treasure Chest re-modify its application to place the riverboat's berth site in Laketown, located on the shores of Lake Pontchartrain.

Shortly after the Commission approved Treasure Chest's modification, AIGA filed suit in East Baton Rouge Parish, naming the Commission and the Division as defendants. Attached is a copy of the petition in that case, styled a Petition for Appeal of Action taken by the Louisiana Riverboat Gaming Commission and for a Declaratory Judgment. Slater, who was affiliated with



Monroe & Lemann law firm at the time, was counsel of record in that action. AIGA argued the Commission's original grant of a CPA to Treasure Chest on June 18, 1993 was "void and/or unlawful" on several grounds (See Paragraphs 41 and 42 of Exhibit "A".) AIGA also argued that the Commission wrongfully granted the modification to Laketown on November 13, 1993 and the Commission's action should be rendered as "void and/or unlawful" (See Paragraph 43 of Exhibit "A"). AIGA prayed that the Court reverse the decision of the Commission to grant a CPA to Treasure Chest, and alternatively, to reverse the decision of the Commission to grant the modification of the CPA to the Laketown location, as well as alternative relief in the form of a judgment declaring certain rules promulgated by the Commission be applied to the issuance of the CPA, with the effect of voiding the Treasure Chest's Certificate of Preliminary Approval. The Court did not grant Copeland his prayed for relief. Copeland's action against the Commission and Division was decided only in April of 2000, dismissing all of Copeland's claims, with the exception of the return of fees paid by Copeland to the State.

Following the Commission's granting of a CPA to the Treasure Chest, and constructive denial of a CPA to AIGA, Copeland employed a new strategy. The facts outlined below indicate that Copeland engineered a highly organized effort with the goal of obtaining a riverboat gaming license, despite the Commission's action, by:

(1) influencing the State Police to investigate AIGA and grant AIGA a license, even though the Commission had not granted AIGA a Certificate of Preliminary Approval.

(2) preventing, or at least delaying, the State Police's granting of a license to the Treasure Chest.

As part of the application process, Guidry sought to obtain a license from the Division, a branch of the State Police. The crucial next step in that process was to have a public hearing to determine if the potential licensee was deemed "suitable", as defined by the statute, following an investigation by the Division. A hearing on the Treasure Chest's application was scheduled for December 17, 1993. According to the applicable statute, the Division was bound to either grant or deny the license within ten days of the hearing, based on whether the applicant was "suitable", as defined by the statute. It was especially important to Guidry that the licensing process go forward, as the entire Treasure Chest project was held up as long as he did not receive a license. Construction at the Laketown site could not start until the Treasure Chest received a license. Additionally, Guidry was spending large sums on the construction of a riverboat in anticipation

of receiving a license.

However, on December 16, 1993, the day before the scheduled licensing hearing, disaster struck Guidry and the Treasure Chest project. Without advance warning, the State Police informed Guidry that they found he was no longer "suitable" and that they would revoke his license to own and operate A-Ace video poker company. Guidry was ordered to shut down all of the video poker machines owned by A-Ace and have them returned to A-Ace within 72 hours. The State Police's finding was devastating to Guidry, not only because he would lose his video poker license, and therefore his business, but also because Guidry was being examined for "suitability" by the State Police for his riverboat gaming license. His eligibility for a riverboat gaming license was severely jeopardized. The December 17 licensing hearing for the Treasure Chest was canceled.

Defendant avers that Copeland, knowing of Guidry's problems with the State Police concerning A-Ace and the suitability hearing for Treasure Chest having been postponed, offered to buy the riverboat Guidry was having constructed, provided Guidry abandon Treasure Chest's pursuit of the riverboat gaming license in Kenner. Copeland sought to end the Treasure Chest's attempt to obtain a license, through a finding that Guidry was "unsuitable" to own and operate a video poker company which would certainly carry over to Guidry's eligibility to own and operate a riverboat gaming vessel. AIGA, at this time, had not received a Certificate of Preliminary Approval nor was it being investigated by the State Police for suitability, yet it was still actively pursuing a riverboat gaming license with the riverboat's docking berth site to be located in Laketown.

Upon information and belief, Copeland operated video poker machines in his restaurants which were owned by A-Ace. He tried to rescind his contracts with A-Ace and become an operator himself. (Copeland alleges that he received a video poker license in June of 1994 in Paragraph 28 of his petition.) The State Police's action against A-Ace and Guidry was not merely an opportunity for Copeland to profit in the riverboat gaming arena, but to gain lucrative contracts in the video poker business as well, including contracts for video poker machines operating in Copeland's restaurants.

Guidry refused to settle with the State Police or admit that he was unsuitable to operate A-Ace in any way. Guidry challenged the State Police's finding that he was unsuitable to own

and operate his video poker company, and attacked the State Police's meritless claims. First, Guidry filed for and received an injunction preventing the State from shutting down the A-Ace video poker machines, as previously ordered by the State Police.

Shortly thereafter, Guidry filed an action in the 19th Judicial District Court for the Parish of East Baton Rouge to challenge the State's revocation of the A-Ace video poker license. Judge Janice Clark ordered a separate administrative hearing to resolve the dispute by creating a neutral forum, to be presided over by an independent judge agreed on by the parties. The parties chose Judge Tom Tanner. After a hearing on March 30 and 31 of 1994, Judge Tanner absolved Guidry of all wrongdoing, found that the State did not have grounds for its finding of unsuitability, that Guidry was "suitable" to own a video poker company, and that his video poker license should not be revoked. Guidry successfully defeated the State Police's action to revoke A-Ace's video poker gaming license, and was in fact found "suitable" by Judge Tanner. The State Police did not appeal Judge Tanner's ruling finding Guidry suitable.

The events during the period of time after the Tanner hearing, in April and May of 1994, are especially crucial relative to Mr. Slater's disqualification. Following Judge Tanner's decision, the State Police delayed setting a licensing hearing for the Treasure Chest, despite Tanner's unequivocal finding that Guidry was suitable, and despite repeated requests by counsel for the Treasure Chest to schedule a licensing hearing. The construction of Guidry's riverboat was nearing completion, but he could not get a license because the State Police would not schedule a hearing. Additionally, construction at the Laketown site could not begin until the Treasure Chest was issued a license. It was no secret that some members of the State Police were fighting Guidry's licensing efforts at every step, and now they prevented his receiving a riverboat gaming license through procedural inaction.

At the time, in April and May of 1994, AIGA had not been granted a Certificate of Preliminary Approval by the Commission, and the Court had not rescinded the Certificate of Preliminary Approval granted to Guidry. Additionally, the Division had not completed its investigation of Copeland's "suitability" if any such investigation was in fact underway. However, on April 29, 1994, Slater wrote the State Police and demanded that they give AIGA a public hearing "held on or prior to the date that Treasure Chest Casino will be scheduled for hearing on its application." (See Exhibit "B", April 29, 1994 letter from Slater to Howard

Elliot). The State Police informed the Treasure Chest by letter dated May 3, 1994 that it scheduled a licensing hearing for May 17, 1994 on Treasure Chest's application. Donald Miester of the Slater firm followed up Slater's letter, threatening "possibly seeking court intervention" if their demands for a licensing hearing weren't met. (See Exhibit "C", letter from Donald Miester to Stephen Quidd dated May 9, 1994.) The State Police did not concede to Slater's demands, citing the fact that a background investigation of AIGA was not even close to completion, and that a full investigation of the Treasure Chest was complete. (See Exhibit "D", letter from Stephen Quidd to Donald Miester dated May 10, 1994.) This correspondence shows that Slater was personally in communication with the State Police in its attempt to derail the Treasure Chest's receiving a licensing hearing. Both letters from the Slater firm make reference to earlier discussions between Slater and the State Police. This written correspondence from Slater's firm indicates it was Slater, not Copeland, who communicated directly with the State Police during this crucial period, and that Slater had conversations with representatives of the State Police. Mover believes no one other than Slater can give testimony to all of the efforts made on behalf of Copeland.

Copeland's petition herein is based on allegations Guidry met with Andrew Martin and Edwin Edwards, and agreed to make illegal payments to them and Stephen Edwards in exchange for their help in getting Guidry a licensing hearing. The meetings took place after the Tanner hearing in April, when the State Police refused to schedule a hearing. These events were the basis of the so-called "Treasure Chest scheme" in the highly publicized federal criminal trial U.S. v. Edwin Edwards et al. The defendant herein, Robert Guidry, testified at length in that criminal trial as a government witness relative to his conversations with Andrew Martin and Edwin Edwards concerning their assistance in getting the Treasure Chest a hearing. As Slater was in communication with the State Police during this crucial time, Slater's testimony as to what he knew and when he knew it is also crucial. Slater's written demand for a hearing came just days before Guidry was informed by the State Police that he would receive a hearing, and refers to conversations Slater had with representative of the State Police. Proper areas of inquiry are Slater's knowledge of the State Police's actions in Guidry's attempts to get a licensing hearing and the extent and substance of Slater's communication with the State Police. Slater will also be questioned concerning his knowledge of any communications between other agents of AIGA,